**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **EARL & PATRICIA DEES,** §<br>**Individually and On Behalf of All** §<br>**Others Similarly Situated,** §<br> §<br>**Plaintiff,** §<br> §<br>**vs.** §<br> §<br>**COLONIAL BANCGROUP, INC.;** §<br>**ROBERT E. LOWDER; SARAH H.** §<br>**MOORE, and T. BRENT HICKS,** §<br> §<br>**Defendants.** § | **Civil Action No.** 2 : 09CV104<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

Plaintiffs Earl & Patricia Dees ("Plaintiffs") allege the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Colonial BancGroup, Inc. ("Colonial" or the "Company"), as well as regulatory filings and reports, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein against Colonial and the Individual Defendants, after a reasonable opportunity for discovery.

- 1 -

## NATURE OF THE ACTION

1.    This is a securities class action on behalf of all persons or entities who purchased the publicly traded securities of Colonial between December 2, 2008 and January 27, 2009 inclusive (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). As set forth below, Defendants knowingly or recklessly made a series of material misrepresentations concerning the Company's participation in the Troubled Asset Relief Program ("TARP") during the Class Period.

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as Colonial's principal place of business is in Montgomery, Alabama, and many (if not substantially all) of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiffs Earl & Patricia Dees, as set forth in the accompanying Certification incorporated by reference herein, purchased the common stock of Colonial at artificially inflated prices during the Class Period and have been damaged thereby.

7.      Defendant Colonial is a Delaware corporation, with its principal executive offices located in Montgomery, Alabama.

8.      The Individual Defendants are as follows:

        (a)     Defendant Robert E. Lowder ("Lowder") was, at all material times, the Company's President and Chief Executive Officer, as well as a Director on the Company's Board of Directors.

        (b)     Defendant Sarah H. Moore ("Moore") was, at all material times, the Company's Chief Financial Officer.

        (c)     Defendant T. Brent Hicks ("Hicks") was, at all material times, the Company's Chief Accounting Officer.

9.      Because of the Individual Defendants' positions and responsibilities with the Company, they were privy to the adverse undisclosed information about the terms

under which the United States Treasury ("Treasury") was willing to provide $550 million in TARP funds to the Company by means of their receipt of drafts of those terms, discussions with the Treasury Department, attendance at management and/or Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Defendant Lowder, as alleged more fully herein, actually made false and misleading statements in the Press Release issued by the Company on December 2, 2008 on which this action is based in substantial part. In addition, defendant Hicks signed the Form 8-K filed with the Securities and Exchange Commission ("S.E.C.") on December 2, 2008, which is also alleged to have been materially false and misleading and to which the Decemeber 2 Press Release was attached.

10.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's December 2, 2008 public statements are the collective actions of this narrowly defined group of officers of the Company identified above. Each of the above officers of Colonial, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly

involved in the day-to-day operations of the Company at the highest levels and was privy to the negotiations with the Treasury Department concerning all of the terms under which the Treasury would provide $550 million in capital to the Company Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the terms of the cash infusion, and approved or ratified these statements, in violation of the federal securities laws. Accordingly, each of the Individual Defendants is therefore primarily liable for the misrepresentations alleged herein

11.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate, complete and truthful information with respect to the terms the Company would have to comply with in order to receive the funds., so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The misrepresentations and omissions during the Class Period alleged herein violated these specific requirements and obligations.

12.    As a result each of the Individual Defendants may be held liable as direct participants in the wrongs complained of herein.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

13.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the publicly traded securities of Colonial during the period December 2, 2008 through January 27, 2009, inclusive and who were damaged thereby (the "Class") Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

14.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Colonial common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of Class members . Record owners and other members of the Class may be identified from records maintained by Colonial or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

15.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class have been similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

16.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

17.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the terms under which the Treasury would provide $550 million to the Company;

    (c)    whether defendants acted knowingly or recklessly; and

    (d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

18.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively

small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

19.    Defendant Colonial is a bank holding company whose primary business is commercial and consumer banking.

20.    Like other financial institutions, over the past 12-18 months, Colonial's stock price and financial health has experienced significant stress. As has been widely reported, financial institutions, especially with significant exposure to loans made in the commercial and residential real estate markets, have been forced to write down the value of loan portfolios, collateralized debt obligations, and mortgage backed securities on their balance sheets.

21.    Colonial has been no stranger to the challenging environment facing financial institutions. For example, Colonial's outstanding loan portfolio contains significant numbers of loans in the Florida and Nevada real estate markets. Given the rapid decline in real estate prices in these markets, Colonial's loans which are secured by such assets have come under intense pressure, and in many cases borrowers on these loans have either gone into default or, for other reasons, Colonial has been forced to write down or write off the value of these stressed loan assets.

22.    The write-downs Colonial had been forced to take on real estate loans began to compromise Colonial's capital and reserve positions in the Summer and Fall of 2008. Colonial disclosed these write-downs and write-offs in a number of press releases and regulatory filings in 2008.

23.    Colonial, like other financial institutions, eagerly awaited action by the United States Congress, in conjunction with the President, to enact a rescue package for banks to utilize in shoring up their capital positions and/or in offloading troubled loans backed by mortgages on real properties in pricing free-falls. The entire nation literally waited with bated breath during August and September of 2008, in the midst of the Presidential Campaign, for action by the Congress.

24.    After several weeks of negotiations, Congress passed, and President Bush signed into law, legislation authorizing the Treasury and the Federal Deposit Insurance Corporation ("FDIC") to create and implement the TARP. TARP was designed to assist financial institutions, such as Colonial, in either (1) offloading troubled real-estate backed loans, or (2) infusing such institutions with new capital, in exchange for a combination of warrants and preferred and/or common stock in such institutions, in order to shore up the balance sheets of the institutions. TARP was funded with $700 billion in government money, to be paid in the form of two (2) $350 billion payments. The first $350 billion was released to Treasury and/or FDIC immediately upon passage of the TARP legislation.

25.     After passage of the TARP, financial institutions, including Colonial, began discussions with Treasury and the FDIC concerning the availability of TARP funds for their respective institutions, including the terms and conditions upon which Treasury and/or FDIC would insist for TARP funds to be available. As noted above, Treasury and/or FDIC, depending on each financial institution's situation, provided TARP money either in exchange for transfer of troubled assets or, more commonly, in exchange for a combination of warrants and/or stock. The specifics of Colonial's negotiations with Treasury and FDIC were not publicly disclosed.

26.     On November 13, 2008, at 11:49 ET, Colonial released a press release stating, in substantial part, the following: "The Colonial BancGroup, Inc. (NYSE: CNB - News) is making the following announcement in order to correct what it perceives to be misinformation in the market place. Colonial has, in fact, applied for participation in the TARP Capital Purchase Program. Its application was delivered to the FDIC in a timely manner. While assurances cannot be given as to the outcome of the application, Colonial has been given no information that would lead it to doubt that its application is not being processed through the normal channels. At this time, it is not possible to project when we will receive an answer to the application." From November 12 to November 14, Colonial's share price for common stock (trading under the symbol CNB) rallied from $1.76 to $2.66 on that news.

27.    During the trading day on December 2, 2008, Colonial issued a Press Release,

In that release, Colonial announced that it had received TARP funding approval and,

further, announced the detailed terms of the TARP funding:

> Colonial BancGroup, Inc. . . . has received preliminary
> approval to participate in the United States Treasury
> Department's capital purchase program. Colonial
> BancGroup will receive $550 million from the Emergency
> Economic Stabilization Act of 2008 aimed at enhancing the
> economy by restoring liquidity and increasing financing to
> businesses and consumers. The preliminary approval is
> subject to certain conditions and the execution of definitive
> agreements.
>
> In exchange for its investment, the Treasury will receive
> shares of Colonial BancGroup preferred stock which will
> pay a 5% dividend for the first five years. If the shares are
> not redeemed by Colonial within five years, Colonial will
> pay the government dividends at a 9% annual rate. The
> U.S. Treasury will also receive warrants to purchase shares
> of Colonial BancGroup common stock for 10 years.

28.    Continuing, the press release quoted Defendant Lowder at length, who extolled

the receipt of TARP funds and Colonial's prognosis in its wake: "We fully support

and applaud the actions by the U.S. Treasury Department to support stability, safety

and soundness of the nation's financial institutions," said Colonial BancGroup

Chairman, CEO and President Robert E. Lowder. "The $550 million in new capital

will enhance our capital cushion and will allow Colonial Bank to meet our customers'

financing needs with additional lending activity throughout our five state footprint."

29. In addition, on December 2, 2008, Colonial Bancorp filed a Form 8-K with the S.E.C. that was signed by Defendant Hicks and to which was attached the December 2, 2008 Press Release. The Form 8-K stated that:

> On December 2, 2008, the Colonial Bancgroup, Inc. (BancGroup) announced that it received preliminary approval from the U.S. Treasury Department to participate in its capital purchase program and receive $550 million under the Emergency Economic stabilization Act of 2008. The press release is attached as Exhibit 99.1.

30. These public statements on December 2, 2008 were a gross, deliberate, and intentional misrepresentation of the actual situation regarding Colonial's receipt of TARP funding from Treasury and the FDIC. In actual fact, Treasury and the FDIC had insisted that, as a material condition precedent to Colonial's receiving the $550 million in TARP funding, Colonial would be required to raise additional outside capital of $300 million. The requirement to raise $300 million in outside capital was never disclosed by Defendants until after the markets closed on January 27, 2009, prior to which time the market and purchasers of publicly traded Colonial securities in the market – Plaintiffs and the class members – relied on the information placed into the market by Colonial, that TARP funding had been preliminarily approved, subject only to the conditions described in the Press Release. The $300 million capital raise requirement was a material condition to the receipt of TARP funding, given the difficulties facing all financial institutions in raising capital and as evidenced by the

precipitous fall in Colonial's share price on January 28, 2009 after such disclosure was belatedly made on January 27, 2009.

31.    On December 2, 2008, Colonial's share price increased by approximately 50 percent from $2 per share to close at $3.08 per share, based on Colonial's announcement that it was to receive TARP funding.

32.    Colonial did not disclose the $300 million condition precedent regarding the TARP funding until after the market closed on January 27, 2009, at which time, Colonial issued a Press Release disclosing its earnings report for the fourth quarter of 2008, in which it stated:

> As previously announced, Colonial has received preliminary approval to receive $553 million from the U.S. Treasury's Capital Purchase Program (TARP). **Such participation is subject to Colonial's increasing equity by $300 million. "The Company is actively pursuing a variety of capital raising alternatives to increase equity by $300 million which would satisfy this condition of the TARP preliminary approval. The Company is currently in negotiations with several investors. One such investor group is SunTx Capital Partners of Dallas, Texas, with which the Company has signed a non-binding letter of intent with respect to a potential investment by SunTx Capital Partners and prospective co-investors of up to 24.9% of the Company's pro forma capitalization with a price range per share of $1.00 to $1.50, subject to the negotiations of a definitive agreement and obtaining of necessary approvals," said Mr. Lowder.**
>
> Colonial is working informally with its regulators to increase its capital ratios. The anticipated receipt of TARP capital and additional equity will greatly improve our capital position consistent with regulatory

> expectations. The capital raising activities are expected to
> be completed in the first quarter of 2009.

The Press Release was filed as an Exhibit to a Form 8-K Colonial filed with the

SEC on January 27, 2009, that was signed by Defendant Moore.

33.     Notably, the Company did not disclose that this was a new requirement but did

disclose that negotiations were underway for a venture capital fund to inject the

necessary capital through the purchase of (presumably treasury) shares with a value of

$1 to $1.50, evidencing that this was a known requirement that was withheld from the

investing public.  On January 28, 2009, the first trading day following this disclosure,

Colonial's stock price plummeted from $1.58 to $0.85 per share.

34.     Since January 27, Colonial has not announced any definitive agreement

regarding the $300 million capital raise.  The current stock price as of February 6,

2009 is approximately $0.80 per share.

## Applicability of Presumption of Reliance:
## Fraud on the Market Doctrine

35.     At all relevant times, the market for Colonial's securities was an efficient

market for the following reasons, among others:

        (a)     Colonial common stock met the requirements for listing, and was

listed and actively traded on the NYSE, a highly efficient and open market;

        (b)     As a regulated issuer, Colonial filed periodic public reports with

the SEC; and

(c)    Colonial regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

36.    As a result of the foregoing, the market for Colonial's publicly traded securities promptly digested current information regarding Colonial from all publicly available sources and reflected such information in the price of Colonial securities. Under these circumstances, all purchasers of Colonial's publicly traded securities during the Class Period suffered similar injury through their purchase of such securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

37.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint, as these statements are all statements of then present facts and were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein,

defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Colonial who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

38.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

39.    During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

41.    During the Class Period, Defendants materially misled the investing public, thereby artificially inflating the price of Colonial's publicly traded securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, as alleged herein.

42.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class, who suffered losses upon the revelation on January 27, 2009 of the $300 million capital raise requirement imposed by the Treasury.

43.    As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Colonial's agreement with the Treasury concerning the Company's receipt of TARP funds. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Colonial and its business, prospects and operations, thus causing the Company's publicly traded securities to be overvalued at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and the other members of the Class purchasing the

Company's publicly traded securities at prices that did not reflect to true financial condition of the Company and suffering losses when the price of Colonial common stock declined upon the revelations described herein, thus causing the damages to Plaintiffs and the members of the Class.

### Additional Scienter Allegations

44.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents.. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Colonial, their control over, and/or receipt and/or modification of Colonial's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Colonial's agreement with the Treasury for TARP funding, participated in the fraudulent scheme alleged herein. The Defendants, by virtue of their positions as senior officers of the Company, and the Company itself, were aware of the $300 million condition imposed on the Company's receipt of TARP funding at the time of the December 2 public statements, and therefore acted with knowledge and deliberation in failing to disclose that material

condition to the public on December 2, thus causing the December 2 public statements to be a materially false and misleading.

45.    The market for Colonial's publicly trade securities was open, well-developed and efficient at all relevant times.    Plaintiffs and other members of the Class purchased or otherwise acquired Colonial publicly traded securities relying upon the integrity of the market price of Colonial's securities and market information relating to Colonial, and have been damaged thereby when the price of Colonial common stock declined precipitously upon the revelations described herein.

46.    Plaintiffs and the members of the Class would not have purchased Colonial publicly traded securities at the prices they paid or received, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

47.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiffs and the other members of the Class have suffered damages in connection with their purchases of Colonial publicly trade securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

48.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

49.    The Individual Defendants acted as controlling persons of Colonial within the meaning of Section 20(a) of the Exchange Act as alleged herein.

50.    By reason of their positions and responsibilities as officers and/or directors of Colonial, and their ownership of Colonial stock, the Individual Defendants had the power and authority to cause Colonial to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiffs prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

B.    Awarding compensatory damages in favor of Plaintiffs and the members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiffs and the members of the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

_One of the Attorneys for Plaintiffs_

**OF COUNSEL:**

James E. Fleenor, Jr.

Wilson F. Green

**BATTLE FLEENOR GREEN**

   **WINN & CLEMMER LLP**

The Financial Center

505 North 20th Street, Suite 1150

Birmingham, Alabama 35203

Telephone:  (205) 397-8163

Fax:         (205) 397-8179

Email:      jfleenor@bfgwc.com

             wgreen@bfgwc.com

E. Clayton Lowe, Jr.

**LOWE & GRAMMAS LLP**

1952 Urban Center Parkway

Vestavia Hills, Alabama 35242

Telephone:  (205) 380-2400

Fax:         (205) 380-2408

Email:      clowe@lowegrammas.com

Kurt B. Olsen

**KLAFTER OLSEN & LESSER LLP**

1250 Connecticut Ave., N.W., Suite 200

Washington, DC  20036

Tel: (202) 261-3553

Fax: (202) 261-3533

Jeffrey A. Klafter
**KLAFTER OLSEN & LESSER LLP**
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
Tel: (914) 997-5656
Fax: (914) 997-2444


## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:

The Colonial Bancgroup, Inc.
C/O REGISTERED AGENT
Carrie McCollum
100 Colonial Bank Blvd, St B101
Montgomery, AL  36117

Robert E. Lowder
2080 Bell Road
Montgomery, AL  36117

Sarah H. Moore
124 Evergreen Drive
Deatsville, AL  36022

T. Brent Hicks
8101 Wyndridge Drive
Montgomery, AL  36117