```
    IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
      MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION
```

```
EARL & PATRICIA DEES,        )
etc., et al.,                )
                             )        CIVIL ACTION NOS.
    Plaintiffs,              )           2:09cv104-MHT
                             )           2:09cv112-MHT
    v.                       )           2:09cv129-MHT
                             )           2:09cv132-MHT
COLONIAL BANCGROUP, INC;     )           2:09cv124-MHT
et al.,                      )           2:09cv148-MHT
                             )           2:09cv149-MHT
    Defendants.              )              (WO)
```

OPINION AND ORDER

This case is before the court on motions to appoint lead plaintiff and lead counsel filed by the Public Pensions Fund Group (PPFG) and the Parker-McGiffert Group. For the reasons that follow, PPFG's motion will be granted and Parker-McGiffert's motion denied.

1. The PSLRA provides that, after consolidating related actions, the court should, as soon as practicable, appoint the "most adequate plaintiff" to serve as lead plaintiff. The statute creates a "presumption" that the most adequate plaintiff is the

person or group that (a) has either filed the complaint or made a motion in response to a notice, (b) has the largest financial interest in the case, and (c) otherwise meets the adequacy and typicality requirements of Rule 23(a) of the Federal Rules of Civil Procure.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  PPFG has shown that it meets all three of these requirements.  First, it filed a timely motion for appointment as lead plaintiff.  Second, PPFG has submitted affidavits demonstrating that, throughout the class period, it allegedly suffered the greatest financial losses: approximately $ 1,756,214.  Finally, PPFG has shown that it meets the typicality and adequacy requirements of Rule 23(a), which will be discussed at greater length below.

    2.  Although a number of parties initially moved for appointment as lead plaintiff, all but PPFG and Parker-McGiffert have either withdrawn their motions or have conceded that PPFG has the greatest financial interest and is the presumptive lead plaintiff.  In fact, Stephen

Duncan and Wilson Knott, short-class plaintiffs in a position similar to that of Parker-McGiffert, expressly "support" PPFG's bid to become lead plaintiff.

3. Parker-McGiffert has argued that (a) PPFG should not be lead plaintiff because it is barred as a "professional plaintiff" and (b) Parker-McGiffert should be named as co-lead plaintiff because PPFG does not have a sufficient interest in the "short-class" or "TARP misrepresentation" claims to fairly and adequately represent those plaintiffs. Both of these arguments are unavailing.

(a) The PSLRA contains certain restrictions on "professional plaintiffs" serving as lead plaintiffs. Section 78u-4(a)(3)(B)(vi) provides:

> "Restrictions on professional plaintiffs
>
> Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions

>pursuant to the Federal Rules of Civil Procedure during any 3-year period."

Parker-McGiffert argues that, because the Arkansas Teacher Retirement System (ATRS), one of the members of PPFG, has served as lead plaintiff in at least eight cases within the last three years, PPFG should be banned from serving as lead plaintiff in this case.

This argument, however, fails in several respects. First, the PSLRA's restrictions on "professional plaintiffs" are clearly not mandatory. This court has the discretion to "permit" a party to serve as lead plaintiff, even where it exceeds the 5-in-3 restriction.

Second, although the statute does not define "professional plaintiff," it is clear that neither ATRS nor PPFG is the kind of plaintiff that Congress meant to restrict. The Congressional Conference Report explains that the restriction on professional plaintiffs was designed to target "professional plaintiffs who own a nominal number of shares in a wide array of public companies[,]" and thereby "permit lawyers readily to file

4

abusive securities class action lawsuits." H.R. Conf. Rep. No. 104-369 at 32 (1995), as reprinted in 1995 U.S.C.C.A.N. 730 at 731. These plaintiffs often pursue cases simply because of the "bounty" or "bonus" they may receive and in many cases "do not even read the complaint." Id at 732. But these are not the characteristics of large institutional investors, such as PPFG or ATRS, who often hold significant positions in companies and invest for the return, not the "bounty." In fact, the Conference Report clarifies that, "The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." Id. at 733. Therefore, the Report explains, "Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid

the unintended consequence of disqualifying institutional investors from serving more than five times in three years." Id. at 734.

Accordingly, courts have consistently utilized their discretion to allow institutional investors to serve as lead plaintiffs, even where they may have served in more than five cases within the previous three years. See, e.g., Kuriakose v. Fed. Home Loan Mortgage Co., 2008 WL 4974839 at *8 (S.D.N.Y. 2008) (Keenan, J.) (determining that institutional investors are "not subject to the PSLRA's strict ban on 'professional plaintiffs' who have served as lead plaintiff in more than five class actions in the previous three-year period"); Smith v. Suprema Specialties, Inc., 206 F. Supp. 2d 627, 641 (D. N.J. 2002) (Walls, J.) ("The majority of courts that have considered this issue have determined that the limitations do not apply to institutional investors."). This court will follow suit and exercise its discretion to allow PPFG to serve as lead plaintiff in this case.

(b) Parker-McGiffert also argues that, because PPFG purchased only a small amount of Colonial stock after the alleged TARP misrepresentation on December 2, 2008, it does not have a sufficient interest in pursuing the TARP misrepresentation claims and fails to satisfy the typicality and adequacy requirements of Rule 23(a). Parker-McGiffert therefore asks to be named as co-lead plaintiff on the TARP misrepresentation claims. Once again, the case law weighs against Parker-McGiffert's request.

First, the structure of PSLRA, and the need to appoint a lead plaintiff early in the litigation, creates a "statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories." Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) (Whyte, J.).

Second, PPFG's claims satisfy the typicality and adequacy requirements. "A class representative must possess the same interest and suffer the same injury as

7

the class members in order to be typical under Rule 23(a)(3)." Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004). PPFG is a large institutional investor that bought and sold stocks throughout the class period. It asserts injuries caused by the spectrum of alleged misrepresentations in this case; its interests and claims are typical.

The adequacy requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). "Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a fundamental one going to the specific issues in controversy." Id. (quotations omitted).

Parker-McGiffert has not provided proof of an actual conflict but has only suggested that a potential or

theoretical conflict may arise.  Such potential conflicts between different class members, who purchased and sold stock at different times within the class period, will frequently exist, but courts have consistently held that these potential conflicts are outweighed by the common interest of the class in proving the defendant's liability.  See, In re Enron Corp. Sec. Litig., 529 F. Supp. 2d 644, 714 (S.D. Tex. 2006) (Harmon, J.); In re Honeywell Int'l Inc. Sec. Litig., 211 F.R.D. 255, 261 (D. N.J. 2002) (Debevoise, J.) (approving class representative despite damages conflicts, which are "present in almost every large, complex securities case"); In re Vesta Ins. Group, Inc., Sec. Litig., 1999 WL 34831475 at *4 (N.D. Ala. 1999) (Acker, J.) ("There will always be theoretical intra-class conflicts ... [but] the court believes that the overriding goal of the class, and of its representatives, will virtually always be to demonstrate liability of the defendant.").  As such, Parker-McGiffert has failed to demonstrate the existence of any substantial conflict.  Likewise, as PPFG

has claimed losses resulting from the alleged TARP misrepresentations, the court has no reason to believe that PPFG will not adequately prosecute the action.

4. This order addresses only the establishment of a lead plaintiff and lead counsel. Should an <u>actual</u> conflict materialize in this case, nothing in this order prevents Parker-McGiffert or any one else from bringing this conflict to the attention of the court for relief appropriate under the PSLRA.

5. Finally, as to the appointment of lead counsel, the PSLRA establishes merely that, "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." § 78u-4(a)(3)(B)(v). PPFG has selected Labaton Sucharow LLP as lead counsel and Thomas, Means, Gillis & Seay, P.C. as liaison counsel. The court has reviewed the information provided concerning Labaton Sucharow and is confident that it has both the experience and the means to direct this complex securities litigation. The court

approves PPFG's selection of both lead counsel and liaison counsel.

***

Accordingly, it is hereby ORDERED as follows:

(1) The Public Pension Fund Group's motion to appoint lead plaintiff and lead counsel (doc. no. 82) is granted.

(2) The Public Pension Fund Group is appointed lead plaintiff; Labaton Sucharow LLP is appointed lead counsel; and Thomas, Means, Gillis & Seay, P.C. is appointed liaison counsel.

(3) The Parker-McGiffert Group's motion for appointment of lead plaintiff and lead counsel (doc. no. 76) is denied.

DONE, this the 7th day of May, 2009.

                                       /s/ Myron H. Thompson
                                  **UNITED STATES DISTRICT JUDGE**