IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re | ) | CIVIL ACTION NO. |
| COLONIAL BANCGROUP, INC. | ) | 2:09-CV-104-MHT |
| SECURITIES LITIGATION | ) | |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Tabor R. Novak, Jr. (NOV001)
tnovak@ball-ball.com
E. Ham Wilson, Jr. (WIL707)
hwilson@ball-ball.com
BALL, BALL, MATTHEWS &
NOVAK, P.A.
200 Interstate Park Drive
Suite 204
Montgomery, Alabama  36109
Telephone:  (334) 387-7680
Facsimile:  (334) 387-3222

*Co-Counsel for Defendant*
*PricewaterhouseCoopers LLP*

Elizabeth V. Tanis (Georgia Bar No. 697415)
etanis@kslaw.com;  admitted *pro hac vice*
Shelby S. Guilbert, Jr. (Georgia Bar No. 315101)
sguilbert@kslaw.com;  admitted *pro hac vice*
G. Patrick Montgomery (Georgia Bar No. 595906)
pmontgomery@kslaw.com;  admitted *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia  30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5140

Geoffrey M. Ezgar (California Bar No. 184243)
gezgar@kslaw.com; admitted *pro hac vice*
KING & SPALDING LLP
333 Twin Dolphin Dr.
Redwood Shores, CA 94065
Telephone:  (650) 590-0700
Facsimile:  (650) 590-1900

*Counsel for PricewaterhouseCoopers LLP*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ..............................................................................................................................5

I.     LEGAL STANDARDS .....................................................................................................5

II.    PLAINTIFFS' SECTION 11 CLAIMS AGAINST PwC SHOULD BE
DISMISSED BECAUSE PLAINTIFFS HAVE NOT SUFFICIENTLY
ALLEGED THAT PwC MADE ANY ACTIONABLE MATERIAL
MISSTATEMENTS OR OMISSIONS ..............................................................................6

       A.    As a Matter of Law, PwC Cannot Be Liable for Statements that PwC Did
Not Prepare or Certify.................................................................................................6

       B.    The Alleged Misrepresentations Are Not in the Portion of the 2007 10-K
"Prepared or Certified" by PwC ................................................................................7

       C.    Plaintiffs Have Failed to Allege That  PwC's 2007 Audit Opinion Was
False and Have Failed to Allege Any Facts That Would Support Such a
Conclusion ...............................................................................................................10

III.   PLAINTIFFS' SECTION 11 CLAIMS SOUND IN FRAUD AND ARE
THEREFORE SUBJECT TO HEIGHTENED PLEADING STANDARDS
UNDER RULE 9(b)........................................................................................................10

IV.   PLAINTIFFS LACK STANDING TO BRING THEIR SECTION 11 CLAIMS ............13

CONCLUSION..........................................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*APA Excelsior III L.P. v. Premier Tech., Inc.*,
    476 F.3d 1261 (11th Cir. 2007) ..................................................................... 14-15

*Ashcroft v. Iqbal*,
    556 U.S. ___, 129 S. Ct. 1937 (2009) ..................................................... 5-6, 10, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 5-6, 10, 15

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ............................................................................13

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) .............................................................................4

*Cal. Employees' Ret. Sys. v. The Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)..................................................................................12

*DiVittoiro v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987).................................................................................13

*Endo v. Albertine*,
    863 F. Supp. 708 (N.D. Ill. 1994) ...........................................................................9

*Grand Lodge of Pennsylvania v. Peters*,
    550 F. Supp. 2d 1363 (M.D. Fla. 2008)................................................................15

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)..........................................................................................2, 6

*Hershey v. MNC Financial, Inc.*,
    774 F. Supp. 367 (D. Md. 1991) ...........................................................................11

*In re Alamosa Holdings, Inc.*,
    382 F. Supp. 2d 832 (N.D. Tex. 2005) ..................................................................15

*In re Healthsouth Corp. Sec. Litig.*,
    No. CV-98-J-2634-S, 2000 WL 34211319 (N.D. Ala. Dec. 13, 2000) ..................................11

*In re Marsh & McLennan Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).....................................................................9

*Krim v. PCOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005) .......................................................................... 14-15

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir. 2007)..................................................................................9

*Matte v. Sunshine Mobile Homes, Inc.*,
    270 F. Supp. 2d 805 (W.D. La. 2003)..................................................................15

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993)................................................................................13

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................................12

*Sinaltrainal v. The Coca-Cola Co.*,
    578 F.3d 1252 (11th Cir. 2009) ...........................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007).........................................................................................3

*Wagner v. First Horizon Pharm.*,
    464 F.3d 1273 (11th Cir. 2006) .........................................................................11

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) .........................................................................13

**STATUTES**

Securities Act of 1933, 15 U.S.C. § 77k .............................................................. passim

Securities Exchange Act of 1934, 15 U.S.C. 78j(b) ............................................2, 8, 11

**OTHER AUTHORITIES**

Statement on Auditing Standards, AU § 110.03.........................................................7

Statement on Auditing Standards, AU § 110.02 …………………………………….......... 8

FED. R. CIV. P. 8.....................................................................................................5, 10

FED. R. CIV. P. 9 ................................................................................................. 10-13

**REGULATIONS**

17 C.F.R. § 240.10b-5...........................................................................................2, 11

iii

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re | ) | **CIVIL ACTION NO.** |
| **COLONIAL BANCGROUP, INC.** | ) | **2:09-CV-104-MHT** |
| **SECURITIES LITIGATION** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO**
<u>**DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**</u>

Defendant PricewaterhouseCoopers LLP respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint.

<u>**INTRODUCTION**</u>

This securities class action arises out of the collapse of Colonial BancGroup, Inc. ("Colonial"), a bank holding company whose assets were heavily exposed to the troubled real estate markets in the Southeastern United States. Defendant PricewaterhouseCoopers LLP ("PwC") served as Colonial's independent auditor during the class period and, as is relevant here, issued an unqualified opinion on Colonial's financial statements for the year-ended December 31, 2007. PwC's opinion was included in Colonial's Annual Report for 2007 filed with the Securities and Exchange Commission ("SEC") on Form 10-K, which, in turn, was subsequently incorporated into the registration statements for two Colonial securities offerings: (1) a March 3, 2008 offering of subordinated notes ("the Note Offering"); and (2) an April 23, 2008 offering of common stock ("the Stock Offering").

PwC was not originally named as a defendant in this action, but was added at the last minute when Plaintiffs filed their Consolidated Class Action Complaint ("Complaint" or "CAC") on June 22, 2009. While the Complaint charges various Defendants with securities fraud under

Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (among other counts), Plaintiffs' claims against PwC are narrower. Plaintiffs allege that PwC is liable solely under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, which imposes civil liability for a false or misleading statement in a registration statement.

As an accounting firm, PwC stands apart from the other Defendants in this action in that, among other things, Section 11 expressly limits the liability of an accountant to only those portions of the registration statement that "purport to have been prepared or certified by him [the accountant]." 15 U.S.C. § 77k(a)(4); *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 n.11 (1983) (accountants can be held liable under Section 11 "*only* for those matters which purport to have been prepared or certified by them") (emphasis added). The only statement identified by Plaintiffs that is attributable to PwC is PwC's one-sentence audit opinion, in which PwC opined that Colonial's 2007 financial statements were fairly presented, in all material respects, in accordance with generally accepted accounting principles ("GAAP"). Nowhere in the Complaint, however, do Plaintiffs allege that PwC's audit opinion was false. Nor do Plaintiffs allege any facts to support such a conclusion. Indeed, the only statements that Plaintiffs have identified in their Section 11 claims as allegedly false or misleading—statements about goodwill impairment, conservative underwriting standards, and collateral guidelines—are all found in the "Management Discussion and Analysis" (hereafter "MD&A") portion of Colonial's 2007 10-K, which is not attributable to PwC as a matter of law. Plaintiffs' Section 11 claims with respect to PwC therefore must be dismissed.

In addition to these flaws, which create bases of dismissal unique to PwC by virtue of its status as an accounting firm, Plaintiffs' Complaint suffers from numerous other deficiencies that already have been set forth in detail in the motions to dismiss and supporting briefs submitted by

the other Defendants in this action. Rather than repeat those deficiencies in their entirety in this brief, PwC incorporates by reference the other Defendants' motions to dismiss and supporting briefs.

### BACKGROUND

Plaintiffs' claims against PwC are based on Colonial's 2007 Form 10-K ("2007 10-K"), which was incorporated by reference into two prospectus supplements issued by Colonial. CAC ¶¶ 364, 414, 452. The first of those prospectus supplements was issued by Colonial in connection with the Note Offering and the second was issued by Colonial in connection with the Stock Offering. *Id.* ¶¶ 414-416, 452-455. Plaintiffs allege that the 2007 10-K incorrectly represented that (1) Colonial's goodwill was not impaired as of December 31, 2007; (2) Colonial's loan underwriting in 2007 was "conservative"; and (3) Colonial followed certain collateral guidelines in 2007. *Id.* ¶¶ 368, 393, 398, 407. These statements are the bases for all of Plaintiffs' Section 11 claims against all Defendants.

As the other Defendants' motions to dismiss and supporting briefs describe in detail, Colonial's 2007 10-K, which is the basis for Plaintiffs' Section 11 claims, contained numerous warnings about the risks facing Colonial. Among those warnings were the risks that a further deterioration in the economy would pose for Colonial, whose business was concentrated not only in real estate loans, but also in real estate loans in vulnerable locations like Florida. *See, e.g.,* 2007 10-K at 10, Ex. 1-A.[1] That further deterioration in the economy came to pass in 2008, with the fourth quarter of 2008 especially hard hit. *See, e.g.,* CAC ¶ 137.

---

[1] Exhibits relied upon by PwC in this motion are included with the Declaration of George Patrick Montgomery filed concurrently herewith as Exhibit 1 and are cited as "Ex. 1-__." In deciding a motion to dismiss, the Court may properly consider documents cited or referred to in the Complaint as well as documents and information that are the subject of judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). A company's filings

On January 27, 2009, Colonial issued a press release that, among other things, announced its financial results for the year-ended December 31, 2008.  Those results showed a net loss of $825 million for the fourth quarter of 2008 and a net loss of $880 million for the entire year ended December 31, 2008.  *See* Colonial January 27, 2009 press release, Ex. 1-B; CAC ¶ 102. This announcement was limited to Colonial's financial condition in 2008—not 2007, the year as to which Plaintiffs are claiming the misrepresentations forming the basis of their Section 11 claims were made.  Colonial has never announced any mistakes or errors in its 2007 financial statements audited by PwC, and those financial statements have never been restated.

Other than identifying PwC in its capacity as Colonial's "outside auditor" and including PwC in the list of Defendants to Plaintiffs' Section 11 claims, *see id.* ¶¶ 364, 384, and 436, the only time the Complaint identifies PwC by name is in Paragraphs 391 and 446—nearly identical paragraphs that quote the one sentence of PwC's audit report on Colonial's 2007 year-end financial statements that contains PwC's opinion that those financial statements were, in all material respects, fairly presented in accordance with GAAP.[2]  Thus, in this 154-page, 471-paragraph, eight-count Consolidated Amended Complaint, PwC is referenced by name in only five paragraphs and is named as a Defendant in only two of the counts (Counts III and VI).[3]

---

with the SEC are among the documents the Court may consider.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999).

[2]  In Paragraph 384 of the Complaint, Plaintiffs erroneously allege that PwC issued an opinion "on the Company's 2007 10-K."  PwC presumes that this blatantly incorrect statement by Plaintiffs was inadvertent; as Paragraphs 391 and 446 of the Complaint show (as does the 2007 10-K itself), PwC's opinion was not on the entire 2007 10-K but rather was confined to Colonial's 2007 year-end audited financial statements contained in the 2007 10-K.

[3]  Indeed, PwC is such an afterthought here that, in Plaintiffs' Certificate of Service to the Complaint, Plaintiffs left PwC off their list of "new parties to the litigation."  *See* CAC at 153.

**ARGUMENT**

I.    **LEGAL STANDARDS**

In the last two years, the United States Supreme Court has twice issued opinions that significantly tighten the notice pleading requirements under Federal Rule of Civil Procedure 8(a), first in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and second in the very recent case of *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).   These cases require a court deciding a motion to dismiss to engage in a two-prong analysis.

Under the first prong of that analysis, the court must identify and disregard any conclusory allegations in the complaint.  As the Supreme Court explained, conclusory allegations are not entitled to an presumption of truth, and "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *Twombly*, 550 U.S. at 555 & n.3 (rejecting as insufficient "blanket assertions," "bare averment[s]," and "legal conclusion[s] couched as . . . factual allegations").

Under the second prong of the analysis, the court must subject any remaining factual allegations to a "plausibility" test:  "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 570); *accord Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260-61 (11th Cir. 2009).  A plaintiff must plead sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Dismissal is required "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

Plaintiffs' claims fall far short of satisfying the standard recognized in *Iqbal* and *Twombly* and therefore must be dismissed. Plaintiffs do not even make conclusory allegations for some of the essential elements of their Section 11 claims against PwC, and their remaining allegations do not contain the basic facts mandated by *Iqbal* and *Twombly*.

## II. PLAINTIFFS' SECTION 11 CLAIMS AGAINST PwC SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED THAT PwC MADE ANY ACTIONABLE MATERIAL MISSTATEMENTS OR OMISSIONS.

### A. As a Matter of Law, PwC Cannot Be Liable for Statements that PwC Did Not Prepare or Certify.

Section 11 allows purchasers of registered securities to sue certain enumerated parties for material misstatements or omissions in registration statements filed with the SEC. *See* 15 U.S.C. § 77k; *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 (1983). To state a claim under Section 11, a plaintiff must plead facts showing that the registration statement contained an untrue statement of material fact or omitted to state a material fact necessary to make the statements therein not misleading. *Id.*

An accountant is not responsible for every statement contained in the registration statement. Where, as here, a Section 11 claim is brought against an "accountant, engineer, or appraiser . . . who has with his consent been named as having prepared or certified any part of the registration statement," the plaintiff must allege that the material misstatement or omission appears "in such registration statement, report or valuation, *which purports to have been prepared or certified by him*." *Id.* § 77k(a)(4) (emphasis added). "Accountants are liable under § 11 *only* for those matters which purport to have been prepared or certified by them." *Herman & MacLean*, 459 U.S. at 381 n.11 (emphasis added).

As discussed below, the alleged misstatements identified by Plaintiffs in their Section 11 claims are contained in the MD&A portion of the Form 10-K and thus cannot support a Section

11 claim against PwC as a matter of law.  Moreover, the one and only statement that Plaintiffs allege as having been made by PwC—PwC's 2007 audit opinion—is not alleged to have been false.  Nor have Plaintiffs pleaded any facts that would support a conclusion of falsity.  These pleading deficiencies require dismissal of Plaintiffs' claims against PwC.

**B.      The Alleged Misrepresentations Are Not in the Portion of the 2007 10-K "Prepared or Certified" by PwC.**

The role of an independent auditor, like PwC here, is fundamentally different from that of the issuer of the securities in question or of the issuer's management.  Under generally accepted auditing standards ("GAAS"), the issuer's management is responsible for the financial statements and the representations made in those financial statements.  *See* Statement on Auditing Standards ("SAS"), AU § 110.03; *see also* 2007 Form 10-K, Ex. 1-A, at 61 (PwC audit opinion) (stating that "[t]he Company's management is responsible for these financial statements").[4]  In contrast, the independent auditor's responsibility is confined to conducting an audit of those financial statements and, if appropriate, issuing an audit report containing an opinion as to whether the company's financial statements are presented fairly, in all material respects, in accordance with generally accepted accounting principles ("GAAP").  "[T]he fair presentation of financial statements in conformity with generally accepted principles is an implicit and integral part of management's responsibility," with the "auditor's responsibility for the financial statements [] confined to the expression of his or her opinion on them."   SAS 1, AU § 110.03.  Furthermore, as PwC's audit report on Colonial's 2007 year-end audited financial statements states, an audit is designed to obtain "reasonable assurance" (not absolute assurance)

---

[4]   "AU" sections refer to Statements on Auditing Standards that are promulgated by the American Institute of Certified Public Accountants ("AICPA"), which is responsible for setting GAAS.  The Public Company Accounting Oversight Board ("PCAOB") has adopted GAAS for the audits of public companies' financial statements.

about whether the financial statements are free of material misstatement and includes "examining, *on a test basis*, evidence supporting the amounts and disclosures in the financial statements." 2007 Form 10-K, Ex. 1-A, at 61 (emphasis added); *see also* SAS 1, AU § 110.02 ("Because of the nature of audit evidence and the characteristics of fraud, the auditor is able to obtain reasonable, but not absolute, assurance that material misstatements are detected. The auditor has no responsibility to plan and perform the audit to obtain reasonable assurance that misstatements, whether caused by errors or fraud, that are not material to the financial statements are detected.").

Given the fundamentally different roles of the issuer and its management on the one hand and the independent auditor on the other, it is not surprising that Section 11 on its face restricts an accountant's Section 11 liability to those portions of the registration statement purporting to be "prepared or certified" by the accountant. Here, however, none of the allegedly false or misleading statements identified by Plaintiffs in their Section 11 claims was contained in PwC's audit report in Colonial's 2007 Form 10-K.[5]

The Complaint very specifically identifies the statements in Colonial's 2007 10-K that form the basis of Plaintiffs' Section 11 claims, quoting the specific passages that Plaintiffs claim are false and misleading. These statements pertain to (1) Colonial's statements concerning its goodwill impairment analysis, which the Complaint quotes in Paragraph 393; (2) Colonial's statements concerning its "conservative underwriting standards," which the Complaint quotes in Paragraph 395; and (3) Colonial's statements concerning its collateral guidelines, which the Complaint quotes in Paragraph 407. Each of these statements is found in Item 7 of the 2007

---

[5] Plaintiffs allege other misstatements elsewhere in their Complaint, but those allegations are confined to Plaintiffs' Section 10(b) claims against certain former officers of Colonial and are not alleged as to PwC.

10-K, which is entitled "Management's Discussion and Analysis of Financial Condition and Results of Operations," often referred to as the "MD&A" portion of the 10-K. *See* 2007 Form 10-K, Ex. 1-A, at 17 (where the quoted goodwill language is found); *id.* at 21 (where the quoted "conservative underwriting standards" language is found); *id.* at 43 (where the collateral guideline language is found). The MD&A portion of the 2007 10-K was not "prepared or certified" by PwC, and Plaintiffs have not alleged otherwise. Rather, PwC's audit report is found in an entirely different portion of the 2007 10-K. [6]

Because the statements forming the basis of Plaintiffs' Section 11 claims were not in the portion of the registration statement "prepared or certified" by PwC, PwC, as a matter of law, cannot be liable under Section 11 for those statements. *In re Marsh & McLennan Sec. Litig.*, 501 F. Supp. 2d 452, 478, 492 n.18 (S.D.N.Y. 2006) (dismissing Section 11 claim because plaintiffs failed to allege any actionable misrepresentations where the alleged false statements or omissions were in *unaudited* sections of the Form 10-K, including MD&A, which are not attributable to the auditor); *Endo v. Albertine*, 863 F. Supp. 708, 731 n.52 (N.D. Ill. 1994) (entering judgment in favor of Arthur Andersen on Section 11 claim where omissions or misrepresentations alleged by plaintiffs were not contained in the financial statements); *see also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 154-56 (2d Cir. 2007) (auditor cannot be liable for unaudited quarterly financial statements).[7] Accordingly, the Court must dismiss Plaintiffs' Section 11 claims against PwC as to these statements.

---

[6] PwC's audit opinion is located at page 61 of the 2007 10-K.

[7] Because PwC as a matter of law cannot be responsible for portions of a registration statement that were not prepared or certified by it, PwC will not address the many reasons, described in detail in the other Defendants' briefs in support of their motions to dismiss, that the Complaint fails to plead sufficient facts showing that the statements forming the basis of Plaintiffs' Section 11 claims were false. PwC, however, incorporates those arguments by reference herein to the extent the Court may find them relevant.

C.    **Plaintiffs Have Failed to Allege That  PwC's 2007 Audit Opinion Was False and Have Failed to Allege Any Facts That Would Support Such a Conclusion.**

Paragraphs 391 and 446 are the only places in the Complaint where any statement attributable to PwC is identified.  In these identical paragraphs, Plaintiffs allege that:

> PwC stated in the 2007 10-K that '[i]n our opinion the consolidated financial statements listed in the accompanying index present fairly, in all material respects, the financial position of The Colonial BancGroup, Inc. and its subsidiaries at December 31, 2007 and 2006 and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2007 in conformity with accounting principles generally accepted in the United States of America.'

CAC ¶¶ 391, 446; *see also* 2007 Form 10-K, Ex. 1-A, at 61 (PwC audit opinion).

Although the Complaint identifies the above-quoted statement as having been made by PwC, the Complaint does not allege that this statement was false.  For this reason alone, this statement cannot be the basis of Plaintiffs' Section 11 claims against PwC.

Furthermore, the Complaint contains no factual allegations that would support a conclusion, much less the "plausible" conclusion mandated by *Iqbal* and *Twombly*, that PwC's statement of opinion was false.

In short, the Complaint does not allege that the statement "prepared or certified" by PwC was false.  Under *Iqbal* and *Twombly*, Plaintiffs' Section 11 claims against PwC must be dismissed.

III.    **PLAINTIFFS' SECTION 11 CLAIMS SOUND IN FRAUD AND ARE THEREFORE SUBJECT TO HEIGHTENED PLEADING STANDARDS UNDER RULE 9(b).**

As set forth in Part II, *supra*, the Court should dismiss Plaintiffs' Section 11 claims against PwC because the Complaint fails to allege sufficiently under Federal Rule of Civil Procedure 8(a) a material misrepresentation or omission attributable to PwC.  Dismissal is also

appropriate under the heightened pleading requirements of Rule 9(b). For the reasons set forth in the Outside Directors' Brief, which PwC hereby adopts and incorporates, Plaintiffs' Section 11 claims sound in fraud and are, therefore, subject to Rule 9(b)'s requirements.

Counts I and II of the Complaint assert securities fraud claims under Section 10(b) of the Exchange Act against certain former officers of Colonial. The Section 11 claims against PwC (Counts III and VI) are predicated on a subset of the facts underlying Plaintiffs' Section 10(b) claims. *Compare* CAC ¶¶ 43-51 (Rule 10b-5 allegations) *with* CAC ¶¶ 397-405 (Section 11 allegations); *compare* CAC ¶¶ 245-46 (Rule 10b-5 allegations) *with* CAC ¶¶ 392-93 (Section 11 allegations); *compare* CAC ¶¶ 249-50 (Rule 10b-5 allegations) *with* CAC ¶¶ 395-96 (Section 11 allegations); *compare* CAC ¶¶ 253-54 (Rule 10b-5 allegations) *with* CAC ¶¶ 407-09 (Section 11 allegations).

It is well-established that Rule 9(b) applies to Section 11 claims "when the misrepresentation justifying the relief under the Securities Act is also alleged to support a claim for fraud under the Exchange Act and Rule 10b-5." *Wagner v. First Horizon Pharm.*, 464 F.3d 1273, 1277 (11th Cir. 2006); *see also In re Healthsouth Corp. Sec. Litig.*, No. CV-98-J-2634-S, 2000 WL 34211319, at *19 (N.D. Ala. Dec. 13, 2000) (applying Rule 9(b) to Section 11 claim and noting that "[t]he need to allow a defendant to protect his reputation against claims involving dishonest conduct is not ameliorated because fraud is not an element of the applicable cause of action").

Moreover, a plaintiff may not avoid Rule 9(b)'s requirements by attempting to disavow allegations of fraud. *See Wagner*, 464 F.3d at 1278 (it is not "enough to present a general disclaimer in an attempt to immunize the nonfraud claims from the Rule 9 requirements"); *Hershey v. MNC Financial, Inc.*, 774 F. Supp. 367, 374 (D. Md. 1991) ("the substance of a

plaintiff's allegations, not . . . the guise in which he portrays them," dictates whether 9(b) applies).   This is especially true here because Plaintiffs have argued in another brief before this Court that the conduct underlying their Section 11 claims equates to fraud.  *See* Lead Plaintiffs' Statement in Response to Court's Order Regarding Whether Any Part of This Litigation Should Be Stayed, Doc. 231 at 12 (arguing that Underwriter Defendants, as to which the Section 11 claims are identical to the Section 11 claims asserted against PwC, are not entitled to indemnification—and that a Section 362(a) stay is therefore inappropriate—unless and until they successfully prove that they are not liable for "'fraudulent misrepresentations'") (quoting indemnity agreement). In addition, Plaintiffs' Section 11 claims sound in fraud because they allege that the Note Offering and Stock Offering materials were not only "inaccurate and misleading" but also that they "***concealed*** and failed adequately to disclose material facts."  CAC ¶¶ 414 (Count III), 453 (Count VI) (emphasis added); s*ee, e.g., Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (applying Rule 9(b) to Section 11 claim where plaintiff alleged that "[r]egistration statement was 'inaccurate *and* misleading;' that it contained '*untrue* statements of material facts;' and that 'materially *false* and *misleading* written statements' were issued"); *see also, e.g., Cal. Employees' Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 161 (3d Cir. 2004) (applying Rule 9(b) to Section 11 claims where plaintiff alleged that defendant had "concealed" material facts and made statements that were "false when made") (citing *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 288 (3d Cir. 1992)).  Consequently, Plaintiffs' Section 11 claims must satisfy Rule 9(b)'s heightened pleading requirements.

To survive a motion to dismiss under Rule 9(b), Plaintiffs must allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in

the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted)).

Plaintiffs fail to satisfy these requirements with respect to PwC. As set forth in Part II, *supra*, Plaintiffs do not even allege that PwC's audit opinion (the only PwC statement actually identified by Plaintiffs) was false or misleading, much less why it was false or misleading. *See* CAC ¶¶ 391, 446. Instead, Plaintiffs lump PwC together with all of the other Defendants on the Section 11 claims, contending generally that all of the Defendants are liable for the entirety of the registration statements. *See, e.g., id.* ¶¶ 415-16, 419-20 (allegations as to Note Offering Defendants indistinguishable); *id.* ¶¶ 452, 454-57 (allegations as to Stock Offering Defendants indistinguishable). Plaintiffs' failure to identify and differentiate the specific role and alleged misconduct of PwC from that of the other sixty-two Defendants compels dismissal under Rule 9(b). *See Brooks,* 116 F.3d at 1381 (dismissing fraud claims for failure to identify specific allegations attributable to the individual defendants); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to defendants."); *DiVittoiro v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("the complaint should inform each defendant of the nature of his alleged participation in the fraud").

## IV.    PLAINTIFFS LACK STANDING TO BRING THEIR SECTION 11 CLAIMS.

PwC also joins the Underwriters' Motion to Dismiss Plaintiffs' Section 11 claim with respect to the April 23, 2008 Stock Offering (Count VI) for lack of standing. As set forth in the

Underwriters' Brief, which PwC hereby adopts and incorporates, Section 11 imposes a strict standing requirement. Plaintiffs must plead and prove that the Colonial shares they purchased are "traceable" to the April 23, 2008 Offering, as opposed to being shares from an earlier offering. *See APA Excelsior III L.P. v. Premier Tech., Inc.*, 476 F.3d 1261, 1276 (11th Cir. 2007) ("In order to have standing and prevail on a claim under Section 11, [an after-market purchaser] must be able to trace his stock to the defective registration statement."); *Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 502 (5th Cir. 2005) ("aftermarket purchasers seeking Section 11 standing must demonstrate that their shares are traceable to the challenged registration statement").

Adequately pleading the requisite traceability is a particular challenge for Plaintiffs here because the Colonial common stock that was issued in the April 23, 2008 Offering had also been issued in at least one earlier offering. *See* Prospectus Supplement, Ex. 1-C, at S-3 (noting that of the 196,097,161 outstanding shares of Colonial common stock, 38,000,000 were offered on April 23, 2008). Thus, as soon as the common stock issued in the April 23, 2008 Offering hit the open market, it was commingled with and became indistinguishable from the Colonial common stock that was being traded from the earlier offering(s), making tracing very difficult.

Although four of the named Plaintiffs allege that they purchased Colonial common stock, CAC ¶¶ 14-17, none alleges in even conclusory terms that the stock it purchased is traceable to the April 23, 2008 Offering. Moreover, Plaintiffs' Amended Certifications, which set forth the dates on which Plaintiffs purchased Colonial common stock, suggest that each of the named Plaintiffs purchased their shares in the aftermarket, creating serious tracing obstacles that Plaintiffs must demonstrate in their Complaint they can plausibly overcome. Plaintiffs City of Brockton Retirement System and Arkansas Teacher Retirement System did not purchase their

Colonial shares until August 2008, almost four months *after* the April 23, 2008 Offering, and made additional purchases in September and December 2008, respectively.  *See* Doc. 134 (Amended Certifications attached as "Attachment 1").  Likewise, Plaintiffs Boston Retirement Board and Norfolk County Retirement System—both of which already had purchased Colonial common stock on the open market before the April 23, 2008 Stock Offering—did not make any new purchases of Colonial stock until May 2008, with subsequent purchases in September and October 2008.  *See id.*  Thus, in addition to failing to allege tracing, Plaintiffs likely cannot allege facts, as they must, that show that their Colonial shares are "traceable" to the April 23, 2008 Offering, as opposed to an earlier offering of Colonial stock.

Because none of the named Plaintiffs alleges that any of its shares are traceable to the registration statement covering the April 23, 2008 offering—let alone facts that would demonstrate that such a conclusion is "plausible" under *Iqbal* and *Twombly*—and because Plaintiffs' Amended Certifications affirmatively indicate that Plaintiffs cannot establish tracing, Plaintiffs cannot maintain a Section 11 claim with respect to the April 23, 2008 Stock Offering. Count VI should, therefore, be dismissed.  *See APA Excelsior*, 476 F.3d at 1276; *Krim*, 402 F.3d at 502; *Grand Lodge of Pennsylvania  v. Peters*, 550 F. Supp. 2d 1363, 1376 (M.D. Fla. 2008) (dismissing Section 11 claims for lack of standing where a plaintiff could not demonstrate that shares purchased in the aftermarket were traceable to stocks issued pursuant to the allegedly misleading registration statement) (citing *Twombly*, 127 S. Ct. at 1955).[8]

---

[8]  The possibility that unnamed class members may have purchased shares in or traceable to the April 23, 2008 Stock Offering does not confer standing on the named Plaintiffs.  "[A] plaintiff who lacks standing to sue a defendant may not acquire such status through class representation." *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 826 (W.D. La. 2003); *see also In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 864 (N.D. Tex. 2005) (finding plaintiffs lacked standing to pursue Section 11 claim where the complaint failed to allege that "the Lead Plaintiff purchased traceable shares").

## CONCLUSION

For all these reasons, the Court should grant PwC's Motion to Dismiss in its entirety and dismiss Plaintiffs' Section 11 claims (Counts III and VI) against PwC.

Respectfully submitted this 9th day of December, 2009.

KING & SPALDING LLP

*/s/ Elizabeth V. Tanis*
Elizabeth V. Tanis  (Georgia Bar No. 697415)
etanis@kslaw.com;  admitted *pro hac vice*

*Counsel for PricewaterhouseCoopers LLP*

Tabor R. Novak, Jr. (NOV001)
tnovak@ball-ball.com
E. Ham Wilson, Jr. (WIL707)
hwilson@ball-ball.com
BALL, BALL, MATTHEWS &
NOVAK, P.A.
200 Interstate Park Drive
Suite 204
Montgomery, Alabama  36109
Telephone:  (334) 387-7680
Facsimile:  (334) 387-3222

*Co-Counsel for Defendant
PricewaterhouseCoopers LLP*

Elizabeth V. Tanis (Georgia Bar No. 697415)
etanis@kslaw.com;  admitted *pro hac vice*
Shelby S. Guilbert, Jr. (Georgia Bar No. 315101)
sguilbert@kslaw.com;  admitted *pro hac vice*
G. Patrick Montgomery (Georgia Bar No. 595906)
pmontgomery@kslaw.com;  admitted *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia  30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5140

Geoffrey M. Ezgar (California Bar No. 184243)
gezgar@kslaw.com; admitted *pro hac vice*
KING & SPALDING LLP
333 Twin Dolphin Dr.
Redwood Shores, CA 94065
Telephone:  (650) 590-0700
Facsimile:  (650) 590-1900

*Counsel for PricewaterhouseCoopers LLP*

.

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF electronic filing system which will send notification of such filing to the following:

Thomas A. Dubbs (NY TD 9868), tdubbs@labaton.com
James W. Johnson (NY JJ 0123), jjohnson@labaton.com
Angelina Nguyen (NY AN 8929), anguyen@labaton.com
Alan I. Ellman, aellman@labaton.com
Christopher J. Keller, ckeller@labaton.com
Stefanie J. Sundel, ssundel@labaton.com
Thomas G. Hoffman, Jr., thoffman@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005

Ira M. Levee, ilevee@lowenstein.com
Michael S. Etkin, metkin@lowenstein.com
Lowenstein Sandler PC
65 Livingston Ave.
Roseland, NJ 70680

*Attorneys for Arkansas Teacher Retirement System, The State-Boston Retirement System, The Norfolk County Retirement System and City of Brockton Retirement System and Proposed Lead Counsel for the Class*

Tyrone C. Means (MEA003), tcmeans@tmgslaw.com
H. Lewis Gillis (GIL011), hlgillis@tmgslaw.com
Gerald C. Brooks (BRO212), gcbrooks@tmgslaw.com
THOMAS, MEANS, GILLIS & SEAY, PC
3121 Zelda Court
Montgomery, Alabama  36106

*Liaison Counsel to the Class*

Kimberly A. Sanders, kas@chimicles.com
Steven A. Schwart, sas@chimicles.com
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA  19041

*Counsel for the Class*


Michael S. Dampier, stevedampier@bellsouth.net
VICKERS, RIIS, MURRAY AND CURRAN, LLC
P.O. Box 2568
Mobile, AL  36652-2568

*Counsel for the Class*


Samuel H. Franklin (FRA006), sfranklin@lightfootlaw.com
James F. Hughey III (HUG044), jhughey@lightfootlaw.com
Enrique "Henry" J. Gimenez (GIM001), hgimenez@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200

Robert David Segall, segall@copelandfranco.com
COPELAND FRANCO SCREWS & GILL
P.O. Box 347
Montgomery, AL  36101-0347

*Attorneys for the Colonial BancGroup Defendants and Sheila P. Moody*


Carl S. Burkhalter, cburkhalter@maynardcooper.com
Alan F. Enslen, aenslen@maynardcooper.com
Steven L. McPheeters, smcpheeters@maynardcooper.com
Armstead Inge Selden, III, iselden@maynardcooper.com
MAYNARD COOPER & GALE PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, Alabama  35203

*Attorneys for the Note Underwriter Defendants and the Stock Underwriter Defendants*

Larry B. Childs, larry.childs@wallerlaw.com
WALLER LANSDEN DORTCH & DAVIS LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama  35203

Walter Edgar McGowan, wem@glsmgn.com
GRAY LANGFORD SAPP McGOWAN GRAY, GRAY & NATHANSON, P.C.
P.O. Box 830239
Tuskegee, AL  36083-0239

*Attorneys for Lewis E. Beville, William Britton, Jerry J. Chesser, Augustus K. Clements, III,
Robert S. Craft, Patrick F. Dye, Hubert L. Harris, Jr., Clinton O. Holdbrooks, Deborah L.
Linden, John Ed Mathison, Milton E. McGregor, Joseph D. Mussafer, William E. Powell, III,
James W. Rane, Simuel Sippial, Jr., and Edward V. Welch*


**SERVICE BY MAIL:**

Sheila Watters Sawyer
WALLER LANSDEN DORTCH & DAVIS LLP
511 Union Street
Suite 2700
Nashville, TN  37219

*Attorney for Director Defendants Beville, et al.*


KING & SPALDING LLP


*/s/ Elizabeth V. Tanis*
Elizabeth V. Tanis  (Georgia Bar No. 697415)
etanis@kslaw.com; admitted *pro hac vice*

1180 Peachtree Street, NE
Atlanta, Georgia  30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5140

*Counsel for PricewaterhouseCoopers LLP*