IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


In re                          )        CIVIL ACTION NO.
COLONIAL BANCGROUP, INC.       )         2:09cv104-MHT
SECURITIES LITIGATION          )             (WO)


OPINION AND ORDER

In this lawsuit brought by the lead plaintiff "pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 1Ob-5 promulgated thereunder by the SEC. 17 C.F.R. § 240.1Ob-5," Consol. Am. Compl. at ¶ 10 (Doc. No. 134), the 'underwriter defendants' move to extend the automatic stay provisions under 11 U.S.C. § 362(a) of the Bankruptcy Code beyond defendant Colonial BancGroup, Inc. to all the parties in the suit.  This motion is supported by statements submitted by the 'officer defendants,' the 'director defendants,' and defendant PricewaterhouseCoopers LLP.  A hearing was held on November 18, 2009, during which each of the parties

addressed the propriety of an extension in light of Colonial BancGroup's bankruptcy. Based on the parties' submissions and arguments, the court finds that an extension of the automatic stay to the entire case is unwarranted and the underwriter defendants' motion should be denied.

A. Judicial Authority to Stay Proceedings: Courts have the power to stay a case when doing so will promote judicial economy and will not result in undue prejudice to any of the parties. See Landis v. North American Co., 299 U.S. 248, 254 (1936). Consequently, a stay may be authorized "simply as a means of controlling the district court's docket and of managing cases before the district court." Ortega Trujillo v. Conover & Co. Communications, Inc., 221 F.3d 1262, 1264 (11th Cir. 2000) (citing Clinton v. Jones, 520 U.S. 681, 707 (1997)). In the bankruptcy context, as provided by 11 U.S.C. § 362(a)(1) of the Bankruptcy Reform Act of 1978, a stay is automatically entered at "the commencement or

continuation ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

Proceedings against Colonial BancGroup were formally stayed when it voluntarily sought relief under Chapter 11 on August 25, 2009.  At issue is whether the court should extend this automatic stay to the underwriter defendants, the officer defendants, the director defendants, and defendant PricewaterhouseCoopers, as non-debtor parties.

B. "Unusual Circumstances" Justifying an Extension of the Stay:  The automatic stay provisions of § 362(a) generally do not operate to stay claims against non-debtor defendants.  See, e.g., American Prairie Const. Co. v. Hoich, 560 F.3d 780, 789 (8th Cir. 2009) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.");  A.H. Robins Co., Inc. V. Piccinin, 788

F.2d 994, 999 (4th Cir. 1986) ("Subsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants.").  However, Robins held that a court may properly stay the proceedings against non-bankrupt co-defendants where there exist "unusual circumstances," meaning "something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties."  Robins, 788 F.2d at 999 (citation omitted). For instance, an extension of the automatic stay may be justified where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," thereby unfairly prejudicing the debtor.  Id; see also Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007).

A presumption of shared identity may arise when a third-party non-debtor is entitled to absolute indemnity from the debtor, following a judicial finding of liability.  See Robins, 788 F.2d at 999  (an extension of the stay is appropriate where the debtor and non-debtors "are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law."); see also In re Stewart, 329 B.R. 910, 914-915 (Bankr. M.D. Ga. 2005) (Hershner, J.) (observing that unusual circumstances may exist where a third party defendant is entitled to indemnity from the debtor); In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (E.D. Pa. 2009) (Robreno, J.) (finding unusual circumstances for extending a § 362(a) stay "because the Debtors owe potential contractual and common law duties to indemnify the Non-Debtors, [so that] the interests of the Debtors and Non-Debtors ... are identical").

The underwriter defendants, the officer defendants and the director defendants assert that, because they

have indemnity agreements with Colonial BancGroup, they should receive the benefits of a stay.  The defendant groups each cite to a recent case from the Southern District of Alabama, which affirmed that an indemnity agreement indicates an "identity of interests" between the non-debtor defendants and the corporate debtor such that a judgment against the defendants would amount to a judgment against the debtor:  <u>Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc.</u>, 2009 WL 2413664 at *3 (S.D. Ala. 2009) (Steele, J.) (granting an extension of the automatic stay to non-debtor defendants).  The court in <u>Gulfmark</u> further remarked that these are "exactly the kind of 'unusual circumstances' ... that warrant an extension of the automatic stay ...." <u>Id</u>.

In response, the lead plaintiff argues that the indemnity agreement cited by the defendant groups "is irrelevant to the issue of whether the ... Defendants should share the benefit of the automatic stay with

Colonial."     Pl.'s   Stmt.   at   2   (Doc.   No.   231).
Highlighting  the  historical  disfavor  with  which  courts
have   viewed   indemnification   agreements   in   securities
suits,  the  lead  plaintiff  contends  that  allowing  the
defendant groups to gain from the debtor's automatic stay
provision  only  "undermines  the  deterrent  effects  of  the
securities law," id., and prevents injured investors from
obtaining   adequate   compensation.     Id.   at   8   (the
"overriding purpose of Congress in enacting Section 11 of
the  Securities  Act  was  not  so  much  to  impose  liability
for  the  benefit  of  investors  ...  but  rather  to  stimulate
diligence  on  the  part  of  those  persons  who  are  actually
responsible    for    the    preparation    of    registration
statements") (quoting Globus v. Law Research Serv., Inc.,
418 F.2d 1276, 1288 (2nd Cir. 1969) (citations omitted)).

     In Globus, the Second Circuit Court of Appeals denied
an   underwriter's   appeal   seeking   indemnity   from   the
issuing  corporation  where  the  defendant  had  committed
fraud, finding that such indemnification would negate the

"in terrorem" effect of civil liability and thwart Congress' intent to prevent violations of the Securities Act.  418 F.2d at 1288.  Here, the lead plaintiff does not allege willful violations of the securities laws, but only negligent misconduct on the part of all defendants. Consol. Am. Compl. at ¶ 364.  However, after Globus, many courts have refused to uphold indemnity agreements in securities cases, even where the defendants engaged in negligent, rather than intentional, misconduct.  Pl.'s Stmt. at 9 (citing Odette v. Shearson, Hammill & Co., 394 F. Supp. 946, 956 (S.D.N.Y. 1975) (Carter, J.); In re Crazy Eddie Sec. Litig., 740 F. Supp. 149, 151 (E.D.N.Y. 1990) (Nickerson, J.)); see also Eichenholtz v. Brennan, 52 F.3d 478, 485 (3rd Cir. 1995) ("The public depends upon an underwriter's investigation and opinion, and it relies on such opinions when investing.  Denying claims for indemnification would encourage underwriters to exhibit the degree of reasonable care required by the 1933 and 1934 Acts."); Laventhol, Krekstein, Horwath &

Horwath v. Horwitch, 637 F.2d 672, 676 (9th Cir. 1980)
("[P]ermitting indemnity would undermine the statutory
purpose of assuring diligent performance of duty and
deterring negligence.").  The Seventh Circuit Court of
Appeals has suggested that indemnity may be unavailable
even when the party seeking relief is factually innocent
of the securities violation.  King v. Gibbs, 876 F.2d
1275, 1282 fn. 10 (7th Cir. 1989) ("It is difficult to
see how a right to indemnification for even innocent
persons would serve the deterrent function which
underlies the statute.").

The underwriter defendants counter that a party
charged with securities violations may always seek
indemnity if it successfully defends the case on the
merits.  Underw. Defs.' Reply at 3 (Doc. No. 251) (citing
Credit Suisse First Boston, LLC v. Intershop
Communications AG, 407 F. Supp. 2d 541, 548 (S.D.N.Y.
2006) (Holwell, J.) ("[I]n the view of the SEC, the
policies underlying the securities laws are not offended

9

by indemnification by the issuer where the indemnitee has

successfully defended itself on the merits."); Greenwald

v. Am. Medcare Corp., 666 F. Supp. 489, 493 (S.D.N.Y.

1987) (Leisure, J.)).    The underwriter defendants

maintain that they fully expect to prevail in this suit

and that the lead plaintiff has failed to explain why the

indemnification agreement could not be upheld if all

defendant do succeed.[1]   Underw. Defs.' Reply at 3.

Furthermore, the defendant groups assert that even a

finding of negligence does not automatically preclude

indemnity.   Id. at 4-5 (citing Credit Suisse, 407 F.

Supp. 2d at 547 fn. 1 (noting that indemnity may be

---

1.   The lead plaintiff argues that even if the
underwriter defendants are successful in defending the
claims against them on the merits, "it is almost certain"
that, after the bankruptcy, the Colonial estate will have
no assets left against which any defendant could assert
an indemnification claim, rendering the indemnification
argument irrelevant to the motion for an extension of the
automatic stay.  Pl.'s Stmt. at 9 fn. 5.  The underwriter
defendants reply, and the court agrees, that the state of
Colonial BancGroup's financial situation post-bankruptcy
is speculative and should not be relied upon in
determining the applicability of the stay.   Underw.
Defs.' Reply at 3 fn. 2.

permissible where the indemnitor is significantly more liable than the indemnified party); Fromer v. Yogel, 50 F. Supp. 2d 227, 237-38 (S.D.N.Y. 1999) (Scheindlin, J.) ("The Second Circuit has suggested that indemnity claims under the Exchange Act may proceed where the wrong committed by those seeking indemnity is no greater than ordinary negligence.")); see also Greenwald, 666 F.Supp. at 493 ("[The defendant] is entitled to an opportunity to prove that he was without fault and is therefore entitled to indemnity.").

However, despite the evidence presented by the defendant groups, the majority of the federal courts of appeals is in favor of limiting the availability of indemnity in securities suits.   As the underwriter defendants themselves point out, those courts that have allowed indemnity claims to proceed have required that a non-debtor prove it was either not at fault or that the debtor was substantially more at fault than the party to be indemnified--a heavy burden of proof.   And while the

defendant groups rely substantially on Gulfmark in support
of their motion to extend the stay, the Southern District
of Alabama case involved the breach of a shipbuilding
contract rather than a securities action, a distinction
that clearly necessitates different judicial and policy
analyses.  The enforceability of indemnity agreements in
securities suits may not be a settled question, but the
judicial zeitgeist seems to steer away from this kind of
corporate restitution.  Though the Eleventh Circuit Court
of Appeals has not directly addressed the issue of
indemnification in securities suits, it has expressed
general agreement with the Globus line of cases, holding
that "indemnification of participants would undermine a
primary goal of securities legislation--i.e., to encourage
diligence and discourage negligence in securities
transactions."   In re HealthSouth Corp. Securities
Litigation, 572 F.3d 854, 861 (2009).

    Nonetheless, while the direction of the law points
against indemnity, this court need not decide the issue.

More convincing is the fact that, in the hearing held in November 2009, Colonial BancGroup (the entity that would arguably be prejudiced absent a stay) represented that it did not oppose proceeding with the securities lawsuit. See Sunbeam Securities Litigation, 261 B.R. 534, 537 (S.D. Fla. 2001) (Middlebrooks, J.) (finding an absence of unusual circumstances where the debtor "takes no position with respect to [extending the stay], and does not seek a stay for the non-debtor defendants").  In Sunbeam, the court emphasized that an extension of the stay was unnecessary where the debtor attested that proceeding would not prejudice its Chapter 11 reorganization efforts. Id.  See also McCartney v. Integra Nat. Bank North, 106 F.3d 506 (3rd Cir. 1997).  Similarly, Colonial BancGroup does not claim that an extension of the automatic stay is necessary to aid in its reorganization.  Therefore, this case does not present the kind of unusual circumstances that warrant an extension of the automatic bankruptcy stay under § 362(a).

C. Implementing a Stay Based on Inherent Judicial
Powers:  In the alternative, the defendant groups and
defendant PricewaterhouseCoopers request that the court
"exercise its inherent powers to stay this case at least
until such time as the bankruptcy court has sufficient
opportunity to determine whether to lift the stay as to
Colonial."  Dir. Defs.' Stmt. at 8 (Doc. No. 227) (citing
Gulfmark, 2009 WL 2413664 at *4; Clinton, 520 U.S. at 706
(1997); Kreisler, 478 F.3d at 215 ("[T]he bankruptcy court
under its comprehensive jurisdiction ... has the inherent
power of courts under their general equity powers and in
the efficient management of their dockets ... to grant a
stay.") (citations  omitted)).   PricewaterhouseCoopers
argues that an assessment of liability under § 10(b) of
the Securities and Exchange Act of 1934 and § 11 of the
Securities Act of 1933 will necessarily "involve common
issues of law and fact as to all parties."  Def. Pricew.'s
Stmt. at 6 (Doc. No. 230) (emphasis in original).[2]

---

2.  PricewaterhouseCoopers does not address the issue
(continued...)

Consequently, PricewaterhouseCoopers asserts that proceeding with this lawsuit may heighten the risk of duplicative discovery, increase the expenditure of resources, and potentially result in inconsistent outcomes. Id. at 6-7. Similarly, the underwriter defendants contend that "The potential liability of both the Underwriter Defendants and Colonial is inextricably interwoven ... [and] it would be extraordinarily inefficient and unduly prejudicial to the Underwriter Defendants if this Court were to allow Plaintiff[] to proceed while the claims against Colonial are stayed." Underw. Defs.' Reply at 2.

Unsurprisingly, the lead plaintiff argues it will be prejudiced by a stay, as delay will heighten the risk that

---

2. (...continued)
of an automatic stay under the Bankruptcy Code, presumably because it is not eligible to benefit from an extension of the stay as an external third-party without an indemnification agreement with Colonial BancGroup. Pl.'s Stmt. at 11 fn. 4. ("PricewaterhouseCoopers has no valid argument that the unusual circumstances exception [under § 362(a)] applies to it, because it meets none of the criteria.").

evidence will be lost or destroyed during Colonial BancGroup's reorganization. Pl.'s Stmt. at 18 (citing Austin v. Unarco Industries, Inc., 705 F.2d 1, 5 (1st Cir. 1983) (denying the benefit of an automatic stay to non-debtor co-defendants due to the risk of losing crucial witnesses and evidence); Dental Ben. Mgmt., Inc. v. Capri, 153 B.R. 26, 29 (E.D. Penn. 1992) (Dittier, J.) ("[E]quity, convenience and economy favor proceeding without [the debtor]. ... To put everything off will only delay any recovery that [the plaintiff] might receive. In addition, during the delay there is the chance that memories will fade and evidence will disappear.")).

This court acknowledges it has the discretion to stay the proceedings as a matter of fairness and judicial economy; however, it chooses not to do so at this time. First and most importantly, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-(1)(b)(I) and 15 U.S.C. § 78u-4(b)(3)(B), and an order entered on May 8, 2009, the court has already stayed all discovery pending resolution of the pending dismissal

motions.   Order (Doc. No. 123).   (Indeed, the court recently denied the lead plaintiff's request to lift the stay of discovery.   Opinion and Order (Doc. No. 269).) Second and as a result, the only aspect of this case that is going forward is the briefing and resolution of these motions,   and,   because   the   group   defendants   and PricewaterhouseCoopers have already filed their briefs, the only briefing left is that from the lead plaintiff and any   replies   the   group   defendants   and PricewaterhouseCoopers may wish to file.   Thus, even the initial non-discovery aspect of this case is almost over, with the result that, if the dismissal motions have merit as all defendants contend, this case is on the tip of being over.   It makes no sense whatsoever to stay non-discovery proceedings at this time.

Of course, should the relationship between these proceedings and the bankruptcy case change such that the continuance of these proceedings in any aspect would have some detrimental effect on the bankruptcy case or would

17

otherwise be impractical, any party may seek a full or partial stay of these proceedings at that time.

***

Accordingly, it is ORDERED that the underwriter defendants' motion to extend automatic stay (Doc. No. 228) is denied.

DONE, this the 7th day of January, 2010.


       /s/ Myron H. Thompson
     UNITED STATES DISTRICT JUDGE