IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| In re<br>COLONIAL BANCGROUP, INC.<br>SECURITIES LITIGATION | )<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>2:09-cv-00104-MHT |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ........................................................................................................3

I.    ARGUMENT ...................................................................................................................6

    A.    Legal Standards on a Motion to Dismiss ...............................................................6

        1.    Legal Standards Under Rule 12(b)(6) ........................................................6

        2.    Legal Standards Under Section 11 .............................................................7

    B.    Lead Plaintiffs' Section 11 Claims Satisfy Rule 8's Notice Pleading Standards ..............................................................................................................7

    C.    The Complaint Adequately Pleads Actionable Misstatements ..............................12

II.    CONCLUSION..............................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*In re AFC Enters., Inc. Sec. Litig.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) ...................................................................10

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..........................................................................................6

*Belfast v. Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn Univ.*,
  267 F. Supp. 2d 1139 (M.D. Ala. 2003) .............................................................6

*In re BellSouth Corp. Sec. Litig.*,
  355 F. Supp. 2d 1350 (N.D. Ga. 2005) ..............................................................15

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)..................................................................................10

*Ehlert v. Singer*,
  245 F.3d 1313 (11th Cir. 2001) .........................................................................6, 7

*Endo v. Albertine*,
  863 F. Supp. 708 (N.D. Ill. 1994) .........................................................................14

*Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*,
  No. 04-20073, 2005 WL 5955701 (S.D. Fla. Aug. 17, 2005) .................................3

*In re Hamilton Bancorp, Inc. Sec. Litig.*,
  194 F. Supp. 2d 1353 (S.D. Fla. 2002) ...................................................................9

*In re Healthsouth Corp. Sec. Litig.*,
  No.98-2634, 2000 WL 34211319 (N.D. Ala. Dec. 13, 2000) .................................9

*In re Healthsouth Corp. Sec. Litig.*,
  No. 03-1500, 2009 WL 3152226 (N.D. Ala. Sept. 30, 2009)..............................6, 7

*Hendrickson v. eBay, Inc.*,
  165 F. Supp. 2d 1082 (C.D. Cal. 2001) .................................................................3

*Holmes v. Baker*,
  166 F. Supp. 2d 1362 (S.D. Fla. 2001) ........................................................ *passim*

*Lattanzio v. Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007)..................................................................................14

*Marrari v. Med. Staffing Network Holdings, Inc.*,
   395 F. Supp. 2d 1169 (S.D. Fla. 2005) ...................................................................8

*In re Marsh & Mclennan Co., Inc. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006).................................................................14

*Mawulawde v. Bd. of Regents of Univ. Sys. of Ga.*,
   No. 105-99, 2007 WL 2460774 (S.D. Ga. Aug. 24, 2007).................................3

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..................................................................................9

*Rombach v. Chang*,
   No. 00-958, 2002 WL 1396986 (E.D.N.Y. Jun. 7, 2002)....................................10

*Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*,
   178 F. Supp. 2d 1255 (S.D. Fla. 2000) .................................................................9

*Sinaltrainal v. Coca-Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009) ...........................................................................14

*Tellabs v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................5, 6

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ..........................................................................7, 9

*In re Unicapital Corp. Sec. Litig.*,
   149 F. Supp. 2d 1353 (S.D. Fla. 2001) .............................................................6, 16

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ...........................................................................11

**STATUTES**

15 U.S.C. § 77k(a) ....................................................................................................6, 7

Court-appointed Lead Plaintiffs Arkansas Teacher Retirement System, the State-Boston Retirement System, the Norfolk County Retirement System, and City of Brockton Retirement System (collectively, "Lead Plaintiffs") submit this memorandum of law in opposition to the motion to dismiss ("Motion" or "Def. Br.") filed by Defendant PricewaterhouseCoopers LLP ("PwC") (Doc. Nos. 273, 274).

## PRELIMINARY STATEMENT

On June 22, 2009, Lead Plaintiffs filed their Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") against PwC, Colonial BancGroup, Inc. ("Colonial" or the "Company") and several other entities and individuals. The Complaint alleges that Colonial, along with three executives, defrauded investors with a series of materially false and misleading statements and omissions from April 2007 through January 2009 that related to the Company's lending practices, loan portfolios, and treatment of goodwill. Lead Plaintiffs also brought non-fraud-based claims under the Securities Act of 1933 ("Securities Act") against PwC, Colonial, and certain of its officers, directors, and underwriters.[1]

PwC faces liability under Section 11 of the Securities Act for misstatements issued in conjunction with the Company's 2008 note and stock offerings.[2] In advance of the two Offerings, Colonial issued Prospectuses that incorporated certain of the Company's prior filings with the Securities and Exchange Commission ("SEC"). These Offering Materials contained

---

[1] In its memorandum of law, PwC asserts without any support that "PwC was not originally named as a defendant in this action, but was added at the last minute when Plaintiffs filed their [Complaint]." Def. Br. at 1. This gratuitous, unfounded assumption is belied by Lead Plaintiffs' extensive pre-filing investigation of the potential claims against PwC and others, which resulted in the inclusion of numerous paragraphs in the Complaint detailing the GAAP violations here. *See* Complaint, ¶¶126-64.

[2] Colonial raised capital in early 2008 with two separate offerings: a $250 million subordinated debt offering in March 2008 (the "Note Offering") and a $350 million common stock offering in April 2008 (the "Stock Offering"). The Note Offering and Stock Offering will collectively be referred to as the "Offerings." The Prospectuses issued in conjunction with the Offerings are referred to herein as the "Offering Materials."

material misstatements with respect to Colonial's goodwill impairment analysis for 2007, among other things. To be sure, the consolidated financial statements for 2007 that were endorsed by PwC and provided in the Offering Materials misled Colonial's investors by overstating net income. The Complaint details how Colonial's goodwill had already been severely impaired by the time of the Offerings, meaning write-offs should have been taken and net income adjusted accordingly. Thus, Lead Plaintiffs' Securities Act claims against PwC easily meet Rule 8 pleading standards and should be sustained.

In moving to dismiss Lead Plaintiffs' claims, PwC quibbles about Lead Plaintiffs' organization of the Complaint's allegations, and in so doing, sidesteps the conduct at issue. Rhetoric aside, PwC's Motion boils down to three primary arguments: (1) Lead Plaintiffs lack standing to pursue their claims; (2) heightened pleading standards under Rule 9(b) render Lead Plaintiffs' claims inadequate; and (3) Lead Plaintiffs have failed to allege that PwC made any actionable material misstatements. As more fully set forth below, these arguments are unavailing.

The Complaint adequately alleges Section 11 claims against PwC for its role in the 2008 Note and Stock Offerings, including Lead Plaintiffs' standing to pursue these claims. It is clear that Lead Plaintiffs' Section 11 claims do not sound in fraud and, as a result, are governed by Rule 8 pleading standards. Likewise, the Complaint fully details the statements contained in the Offering Materials alleged by Lead Plaintiffs to be untrue and the reasons for the statements' falsity. Nothing more is required. Accordingly, and as set forth in more detail herein, PwC's Motion should be denied in its entirety.

## STATEMENT OF FACTS

PwC is headquartered in New York, New York and served as Colonial's outside auditor at all relevant times. ¶384.[3] Utilizing detailed knowledge of local, state, and national issues, PwC has a global accounting practice with a history in client services dating back to the nineteenth century.[4] Its practice in the United States spans 75 offices and includes over 30,000 employees, while worldwide revenue exceeded $28 billion for 2008.[5] Since 1998, PwC has provided audit, audit-related, and tax-related services to the Company. It was in this capacity that PwC issued its unqualified audit opinion for Colonial's 2007 consolidated financial statements, which were included in the Offering Materials and form the basis of Lead Plaintiffs' pertinent Section 11 claims. *Id.*

Colonial is a financial holding company that derived nearly all of its income from a subsidiary, Colonial Bank, which conducted a general commercial banking business in Florida, Alabama, Georgia, Nevada, and Texas. As part of its business, Colonial Bank offered personal and commercial mortgages in each of these markets. Its loan portfolio was comprised mostly of commercial real estate and residential construction loans. ¶365.

For a number of years preceding the Offerings, Colonial had aggressively expanded its lending operations, especially in the flourishing Florida real estate market. ¶3. To fund its lending, the Company had ordinarily relied upon retail deposit growth, but a combination of its

---

[3] All citations to ¶__ refer to the corresponding paragraphs of the Complaint.

[4] *Available at* http://www.pwc.com/us/en/about-us/index.jhtml (last visited Jan. 12, 2010). The Court may take judicial notice of this description found on PwC's website. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, No. 04-20073-CIV, 2005 WL 5955701, at *5 (S.D. Fla. Aug. 17, 2005) (taking judicial notice of information found on a website); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1084 n.2 (C.D. Cal. 2001) (taking judicial notice of defendant's website); *see also Mawulawde v. Bd. of Regents of Univ. Sys. of Ga.*, No. CV 105-099, 2007 WL 2460774, at *8 n.10 (S.D. Ga. Aug. 24, 2007) (compiling list of cases in which courts took judicial notice of websites).

[5] *Available at* http://www.pwc.com/us/en/careers/experienced/firm-facts.jhtml (last visited Jan. 12, 2010).

aggressive growth strategy and stiffening competition for retail deposits forced Colonial to explore other options by early 2008. ¶367. To make matters worse, Colonial was reeling from the effects of the housing market decline: ballooning non-performing assets within its loan portfolio meant the Company suddenly needed a significant capital cushion. *Id.*

What resulted was Colonial embarking on a $250 million Note Offering in March 2008 and then a $350 million Stock Offering in April 2008. ¶¶368, 443. Included in the Offering Materials for each was a Prospectus Supplement incorporating by reference Colonial's 2007 annual report filed with the SEC on Form 10-K. ¶¶389, 443-44. The annual report included numerous materially false and misleading statements related to the Company's touted "conservative underwriting" standards; recording of goodwill; setting of allowances for loan losses ("ALL"); and adherence to collateral guidelines based upon minimum loan-to-value ("LTV") ratios. *See, e.g.*, ¶¶368, 395, 407.

Specifically, Colonial falsely reported that it maintained "conservative underwriting" standards, that it was "committed to the early recognition of problem loans and to ensuring an adequate level of allowance to cover inherent losses," and that the Company had collateral guidelines that required loan-to-value ratios of a certain minimum percentage in each loan sector. ¶368. It would later be revealed that by the time of the Note Offering the Company's underwriting practices deviated demonstrably from the disciplined guidelines purportedly followed – yet still touted – by Colonial's management. ¶369. Former employees confirmed that Colonial's loan review specialists had lost all of their clout, all but 4 of 30 crucial risk metrics -- including those most material to evaluate credit risk-- were suddenly ignored by loan officers, and subprime mortgages were regularly underwritten despite management's

representations to the contrary.  ¶¶397-405.  Likewise, loan-to-value ratios became almost meaningless as they were consistently disregarded during the loan review process.  ¶¶405, 408.

Colonial improperly reported that its goodwill was in no need of impairment for 2007.  ¶¶393-94.  Such was reflected in the Company's consolidated financial statements via their inflated net income figure – a figure confirmed by PwC and included in the 10-K.  ¶391.  And, by virtue of the 10-K being incorporated by reference, the Offering Materials also contained this misleading representation of Colonial's financial health.  ¶¶391-92, 446.

In the 10-K, PwC provided Colonial's investors with the following false assurance:

> In our opinion, the consolidated financial statements listed in the accompanying index present fairly, in all material respects, the financial position of The Colonial BancGroup, Inc. and its subsidiaries at December 31, 2007 and 2006 and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2007 in conformity with accounting principles generally accepted in the United States of America.

¶¶391, 446.  This simply was not the case because Colonial's goodwill was, in fact, severely impaired by the time of the Note Offering.  ¶394.  By neglecting to include any impairment by this time, the Offering Materials contained inflated net income data – certified by PwC – that rendered the financial statements false and misleading.

Not until early 2009, when Colonial reported an $825 million loss for the fourth quarter of 2008, did the Company finally take a $575 million goodwill impairment charge.  ¶¶9, 394.  The stock price plummeted 46% to close at less than a dollar a share.  ¶9.  Furthermore, at the time Lead Plaintiffs filed this action, the value of the notes sold during Colonial's Note Offering remained well below their original $25 purchase price.  ¶371.

# I.    ARGUMENT

## A.    Legal Standards on a Motion to Dismiss

### 1.    Legal Standards Under Rule 12(b)(6)

In considering a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[6] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Rule 12(b)(6) does not permit dismissals based upon "a judge's disbelief of a complaint's factual allegations." *Iqbal*, 129 S. Ct. at 1959 (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Indeed, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563. The "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is [] exceedingly low." *Belfast v. Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn Univ.*, 267 F. Supp. 2d 1139, 1142 (M.D. Ala. 2003) (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).

---

[6] Citations, internal quotations, and footnotes are omitted, and emphasis is added, unless otherwise noted.

### 2.    Legal Standards Under Section 11

In order to allege a *prima facie* case under Section 11, a plaintiff need only allege that the registration statement (which includes the prospectus), "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. §77k(a); *Ehlert v. Singer*, 245 F.3d 1313, 1315-16 (11th Cir. 2001); *In re Healthsouth Corp. Sec. Litig.*, No. 03-1500, 2009 WL 3152226, at *3 (N.D. Ala. Sept. 30, 2009); *Holmes v. Baker*, 166 F. Supp. 2d 1362, 1371 (S.D. Fla. 2001) (upholding Section 11 claim and noting plaintiff need only allege a material false statement or omission); *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1363-64 (S.D. Fla. 2001) (same).  Section 11 does not require pleading or proof that a defendant acted with an intent to defraud or even knew that misrepresentations or omissions had been made.  *UniCapital*, 149 F. Supp. 2d at 1363 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983)). Liability is "'virtually absolute, even for innocent misstatements.'"  *Healthsouth*, 2009 WL 3152226, at *4 (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006)).  Such a claim can be asserted against the issuer of the securities, the issuer's directors and officers, the underwriters of the offering and the accountants who prepared or certified the registration statement.  *Ehlert*, 245 F.3d at 1315 (citing 15 U.S.C. §77k(a)).[7]

### B.    Lead Plaintiffs' Section 11 Claims Satisfy Rule 8's Notice Pleading Standards

Lead Plaintiffs are only required to meet the pleading requirements of Rule 8 in pleading their Section 11 claims.  *See Wagner*, 464 F.3d 1273, 1278 (11th Cir. 2006) (holding that where

---

[7] In its Motion, PwC incorporates by reference the challenges found in the Underwriter Defendants' motion to dismiss regarding whether Lead Plaintiffs have standing to pursue their claims.  Def. Br. at 13-15.  Because PwC has not offered any unique argument on this point, Lead Plaintiffs incorporate their response in opposition to the Underwriter Defendants' motion to dismiss.  As set forth in Lead Plaintiffs' response to the Underwriter Defendants' motion to dismiss, Lead Plaintiffs have standing to assert their Section 11 claims against PwC.

a plaintiff brings a Section 11 or 12(a)(2) claim without alleging the misrepresentation at issue in the claim was fraudulent, the heightened pleading requirements of Rule 9(b) do not apply). Where allegations of innocent or negligent misrepresentations and omissions are made, Rule 9(b) will not be triggered. *Holmes*, 166 F. Supp. 2d at 1372-73 (maintaining a Section 11 claim against an auditor for false financial statements where there was no reliance on the Securities Exchange Act ("Exchange Act") claims under the Section 11 claim of the complaint).

Despite these clear legal standards, PwC seeks dismissal based upon Rule 9(b). Def. Br. at 10-13. Lead Plaintiffs' Section 11 claims do *not* sound in fraud and are therefore not subject to the heightened pleading requirements of Rule 9(b).[8] To be sure, the Complaint meticulously separates Lead Plaintiffs' Securities Act claims related to Colonial's Offerings from the rest of their allegations. ¶¶363, 435. Each Section 11 claim against PwC is independently organized with its own introduction, definitions, jurisdictional allegations, substantive allegations, and discriminate counts. *Compare* ¶¶363-422, *and* ¶¶435-459, *with* ¶¶1-362. As such, the Complaint provides PwC with fair notice under Rule 8 of the claims asserted against it, neither of which includes any allegation of recklessness or fraudulent intent. Lead Plaintiffs' claims against PwC are premised upon the strict liability provisions of the Securities Act and are properly insulated from the Complaint's fraud-based allegations for this very purpose – so as not to confuse PwC, or any other Note Offering or Stock Offering Defendant, of the conduct precipitating Lead Plaintiffs' claims.

Notwithstanding, PwC argues that Lead Plaintiffs' Section 11 claims sound in fraud because they "are predicated on a subset of the facts underlying Lead Plaintiffs' Section 10(b) claims." *See* Def. Br. at 11. However, reliance on a subset of facts related to Colonial's

---

[8] In addition, Lead Plaintiffs incorporate their response in opposition to the Outside Directors' motion to dismiss for the applicable rebuttal found therein. *See* Doc. No. 235.

goodwill treatment does not prove fatal to Lead Plaintiffs' Section 11 claims against PwC. Indeed, where a complaint includes causes of action arising out of both the Securities Act and the Exchange Act, and both claims rely upon "similar if not identical facts," the Securities Act claim nevertheless escapes heightened pleading requirements so long as it does not allege scienter or otherwise rely upon the Exchange Act claim. *Holmes*, 166 F. Supp. 2d at 1372. In this vein, Lead Plaintiffs have carefully distinguished their Section 11 claims from their Exchange Act claims, and the Complaint contains no allegations of scienter with respect to PwC.

The structure of Lead Plaintiffs' Complaint is not uncommon. Courts in this circuit routinely allow Securities Act claims to be pled alongside Exchange Act claims – regardless of their factual interrelatedness – without sacrificing the applicability of Rule 8 pleading standards. *See, e.g., Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1180 (S.D. Fla. 2005) (despite being pled alongside Exchange Act claims with a common theme of the defendants misrepresenting the financial health and viability of one of the company's key programs, holding a Section 11 claim did not "sound in fraud" and need not be pled with particularity where it was not based upon any intent to mislead on the part of the defendants); *In re Hamilton Bancorp, Inc. Sec. Litig.*, 194 F. Supp. 2d 1353, 1357 (S.D. Fla. 2002) (where plaintiffs alleged violations of both the Securities Act and Exchange Act in connection with the company's lack of internal controls and inadequate loan loss reserves, their Securities Act claims "sufficiently allege[d] liability without resort to scienter, and d[id] not so 'sound in fraud' as to require compliance with Rule 9(b)"); *Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*, 178 F. Supp. 2d 1255, 1272-73 (S.D. Fla. 2000) (refusing to apply heightened pleading standards to Securities Act claims where Exchange Act claims were concurrently, yet separately,

pled in response to misleading positive statements from the company touting non-existent

benefits from a recent acquisition).

Moreover, courts hold Securities Act allegations sounding in fraud to heightened

pleading standards primarily to guard against the reputational harm generally associated with

fraud allegations.  *See Wagner*, 464 F.3d at 1278 ("The purpose of the rule is to protect a

defendant's good will and reputation when that defendant's conduct is alleged to have been

fraudulent.").  Such concerns are not present here where PwC's liability has been premised upon

"innocent and/or negligent conduct" *only*.  ¶¶364, 436.  Lead Plaintiffs have not intermingled

claims or alleged claims in the alternative against PwC, nor are there any allegations of fraud

against PwC found anywhere in the Complaint.

For this reason, PwC's reliance on *In re Healthsouth Corp. Sec. Litig.*, No. CV-98-J-

2634-S, 2000 WL 34211319, at *21 (N.D. Ala. Dec. 13, 2000), is misplaced.  There Rule 9(b)

was applied to Securities Act claims that "[we]re premised on the factual allegations that

comprise[d]" related Exchange Act claims.  Here, Lead Plaintiffs' Section 11 claims against

PwC are entirely self-contained.  ¶¶363-422, 435-459.  Likewise, in *Rombach v. Chang*, 355

F.3d 164, 175 (2d Cir. 2004), a Section 11 claim against individual defendants based upon a

misleading registration statement was held to Rule 9(b) standards because a concurrent Section

10(b) count "incorporate[d] as though fully set forth therein the allegations contained in the

Section 11 count."  The allegations were thus improperly intermingled.  However, in that same

case, Rule 8 notice pleading was applied to the plaintiffs' other Securities Act claims against a

different group of defendants because those claims sounded in negligence, not fraud.  *Id*. at 178;

*see also Rombach v. Chang*, No. 00 CV 0958 SJ, 2002 WL 1396986, at *4 (E.D.N.Y. June 7,

2002) (district court decision initially rejecting heightened pleading standards for the claims against underwriter defendants).

Here, Lead Plaintiffs have taken great care to distinguish their Securities Act claims against PwC from their Exchange Act claims against other defendants beyond merely "attempting to disavow allegations of fraud." Def. Br. at 11; *see also Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004) (holding Section 11 claims to Rule 9(b) standards because plaintiffs' "one-sentence disavowment of fraud" was insufficient "to divorce the [Section 11] claims from their fraudulent underpinnings"). Aside from being physically separated from the fraud-based allegations comprising the rest of the Complaint – and refraining from incorporating any such allegations of fraud – Lead Plaintiffs' Securities Act claims are expressly rooted "exclusively in theories of innocent and/or negligent conduct." ¶¶364, 436. In addition, the Complaint alleges *no* fraud-based claims against PwC. This suffices to hold Lead Plaintiffs' Section 11 claims properly within the realm of Rule 8's liberal pleading standard. *See In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1377-78 (N.D. Ga. 2004) (refusing to hold that Section 11 claims sounded in fraud where, even though the complaint as a whole "sounded in fraud," the Securities Act claims did not rely upon allegations of fraud, were physically separated from Exchange Act claims, and specifically excluded allegations of knowledge or scienter).

Because PwC's reputation has not been implicated by any allegations of fraud, and because Lead Plaintiffs have diligently insulated their Securities Act claims, the Section 11 claims PwC now faces need only meet the liberal pleading requirements of Rule 8. However, even if the Court were to find that Rule 9(b) governs, Lead Plaintiffs have nevertheless met their burden. Rule 9(b) is satisfied where the complaint sets forth which false and misleading

statements were made in what documents, the time and place of each such statement, the person responsible for making such statements, the content of the statements and the manner in which they misled the plaintiff.  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  Here, Lead Plaintiffs have alleged that PwC issued misleading statements in Colonial's consolidated financial statements (¶¶391, 414, 446, 453), which were certified by PwC and distributed in the Offering Materials for both the Note and Stock Offerings (¶¶415, 457), and which contained assurances that the Company followed generally accepted accounting principles (¶391, 446) when, in fact, it had failed to take necessary goodwill impairments (¶¶394, 451).  Thus, Lead Plaintiffs have adequately alleged actionable misstatements.[9]

### C.    The Complaint Adequately Pleads Actionable Misstatements

Lead Plaintiffs allege the *Offering Materials* (as a whole) contained untrue statements of material fact regarding, *inter alia*, the Company's goodwill impairment.  ¶¶414, 453.  Specifically, Colonial's consolidated financial statements for 2007 – undoubtedly part of the Offering Materials – were inaccurate and misleading as to their inflated net income figure.  *Id.*; *see also* ¶¶391, 446.  As a result, PwC's certification of those incorporated financial statements likewise was false and misleading and gives rise to Section 11 liability.  *Holmes*, 166 F. Supp. 2d at 1372-73.  That is, both the Note and Stock Offering prospectuses contained untrue statements of material fact by virtue of their incorporation of Colonial's 2007 annual report on Form 10-K.

---

[9] In support of its erroneous position that Rule 9(b) governs here, PwC also draws attention to a quote from one of Lead Plaintiffs' filings with the Court (Doc. No. 231) that includes the term "fraudulent misrepresentations" in connection with Lead Plaintiffs' Section 11 claims against the Underwriter Defendants.  *See* Def. Br. at 12.  Not only does this filing have nothing to do with the claims asserted against PwC, the quote itself was taken directly from an indemnity agreement between Colonial and its underwriters.  It was Colonial's choice to use this language in the agreement, not Lead Plaintiffs'.  Furthermore, the fact that Lead Plaintiffs used this *quoted* passage to support their argument against the indemnity agreement precipitating a stay in the proceedings against the Underwriter Defendants (as a result of Colonial's pending bankruptcy) is irrelevant to the matter at hand.  PwC's grasping for straws will not suffice to overcome the obvious: Lead Plaintiffs' Section 11 claims against PwC do not sound in fraud.

Specifically, the 2007 10-K, and thus the Offering Materials, falsely asserted that Colonial's goodwill impairment analysis for 2007 indicated no need for impairment write-offs. ¶¶393, 448. Because Colonial's goodwill had already been severely impaired by that time, the Company's failure to take any write-off rendered its consolidated financial statements misleading, along with PwC's certification thereof. ¶394. For these reasons, Lead Plaintiffs' Securities Act claims against PwC easily meet Rule 8's pleading standards and should be sustained.

According to Colonial's 2007 10-K, "goodwill impairment analysis for 2007 indicated that no impairment write-offs were required." ¶393. Aside from this misleading statement in the body of the 10-K itself, potential investors were also provided financial statements that reflected as much in their bloated net income figure. PwC – whether innocently or negligently – attested to this very figure when it certified Colonial's consolidated financial statements:

> In our opinion, the consolidated financial statements listed in the accompanying index present fairly, in all material respects, the financial position of The Colonial BancGroup, Inc. and its subsidiaries at December 31, 2007 and 2006 and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2007 in conformity with accounting principles generally accepted in the United States of America.

¶¶391, 446; *see also* ¶¶364, 436.

By virtue of this assurance and the artificially inflated net income figure depicted in the financial statements, the Offering Materials contained untrue statements of material fact directly attributable to PwC. Therefore, contrary to PwC's assertion (*see* Def. Br. at 6-9), Lead Plaintiffs have alleged misrepresentations by PwC giving rise to liability under Section 11. *See Holmes*, 166 F. Supp. 2d at 1372-73 (sustaining Section 11 claim against outside auditor for various material misrepresentations and omissions found in the financial statements that were included in the Prospectus, including misrepresentations and omissions with respect to the defendant

company's net income and inventory valuation precipitated by the company's failure to take necessary write-downs).

The Complaint also details *why* PwC's certification of these financial statements was false and misleading. To that end, Lead Plaintiffs describe how Colonial failed to properly account for its goodwill impairment at the time of the 2008 Note and Stock Offerings. *See* ¶394. In the context of acquisitions, "goodwill" refers to the difference between the purchase price paid by the acquiring company (here, Colonial) and the fair value of the net assets of the company being acquired. ¶129. In other words, when Colonial paid a premium over market value for each of the banks it acquired during its aggressive expansion, the amount of this premium would be recorded as "goodwill" on its balance sheet. *Id.* Generally Accepted Accounting Principles ("GAAP"), the recognized standards of the accounting profession, require assessment of goodwill on an annual basis, and more frequently where certain conditions are present. *Id.* One such condition, according to Statement of Financial Accounting Standards No. 142, is a significant adverse change in the company's business climate. ¶130. In the event goodwill is deemed impaired, the company must then decrease the carrying amount of goodwill on its balance sheet and reduce net income accordingly. ¶129.

While the 2007 10-K falsely asserted that goodwill was not impaired by the end of 2007, and its financial statements reflected the same, Colonial was forced to recognize an impairment loss of *$575 million* only one year later. ¶¶137, 394. The Company had never actually performed an interim test despite the upheaval engulfing Colonial's operations. ¶¶129, 136. Indeed, its business climate had dramatically worsened throughout 2007 as borne out by the housing market decline, deterioration of underwriting guidelines, rising non-performing assets, and the tumbling credit quality of the Company's loan portfolio. ¶388. Goodwill undoubtedly

had been affected by this point in light of Colonial's recent series of acquisitions during this tumultuous time period. *Id.*; *see also* ¶134 (outlining Colonial's tallied goodwill related to Florida acquisitions alone). In fact, approximately 97% of its eventual goodwill impairment write-off was attributed directly to the Florida Regional Bank reporting unit, which was the region in which the Company had concentrated its acquisitions. ¶137.

All of this information was readily apparent to both the Company and PwC, yet the Offering Materials falsely assured investors in early 2008 that write-offs were unnecessary, thus inflating Colonial's reported net income. This is sufficient to satisfy the Rule 8 pleading standard and give PwC "fair notice of what the . . . claim is and the grounds upon which it rests." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009).

In response, PwC argues that Lead Plaintiffs have failed to identify actionable misstatements or omissions in the Offering Materials attributable to PwC. *See* Def. Br. at 6-10. However, PwC's reliance on *In re Marsh & Mclennan Co., Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006), *Endo v. Albertine*, 863 F. Supp. 708 (N.D. Ill. 1994), and *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007), is misplaced. *See* Def. Br. at 9. As discussed above, Lead Plaintiffs have alleged that the Offering Materials contained untrue statements of material fact (¶¶414, 453) not limited to the "Management Discussion and Analysis" section of the 2007 10-K. *See* Def. Br. at 6-7. PwC's false certification of the 2007 consolidated financial statements, incorporated into the Offering Materials, is thus properly actionable under the Securities Act.

- 15 -

Moreover, this actionable false and misleading certification is indisputably material.[10] There may be no doubt as to the importance of Colonial's consolidated financial statements to potential investors considering investing in the Company's Note and Stock Offerings. These documents provided great insight into Colonial's operations. Such financial statements offer investors the clearest picture of a company's health and viability, and the valuation of goodwill is an important component of that picture. *See In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1369 (N.D. Ga. 2005) ("It is the Court's opinion that reasonable investors would have considered the devaluation of this goodwill an important criteria and, if disclosed, it would have significantly altered the mix of information available about the company. Accordingly, the Court finds that Plaintiffs have adequately alleged a material misstatement or omission with regards to BellSouth's Latin American goodwill."). Therefore, PwC's certification of inaccurate net income data (by way of inflated goodwill) in Colonial's consolidated financial statements qualifies as a material misrepresentation subject to Section 11 liability. *Unicapital*, 149 F. Supp. 2d at 1364 ("Plaintiff's averments concerning the overvaluation of Unicapital's goodwill sufficiently allege a material misrepresentation that is adequate to support a claim under [Sections] 11 and 12(a)(2) of the Securities Act.").

## II.    <u>CONCLUSION</u>

As discussed herein, Lead Plaintiffs have adequately alleged that PwC violated Section 11 of the Securities Act. Accordingly, PwC's motion to dismiss should be denied in its entirety.

---

[10] Indeed, PwC did not challenge the materiality of its alleged misstatements.

DATED: January 29, 2010

**THOMAS MEANS GILLIS &
 SEAY, P.C.**
H. LEWIS GILLS (GIL011)
GERALD C. BROOKS (BRO212)

_____
        _/s/Tyrone C. Means_
       TYRONE C. MEANS (MEA003)

3121 Zelda Court
Montgomery, AL  36106
Telephone:  334/270-1033
334/260-9396 (fax)

_Liaison Counsel_

**LABATON SUCHAROW LLP**
THOMAS A. DUBBS (NY TD 9868)
JAMES W. JOHNSON (NY JJ 0123)
ANGELINA NGUYEN (NY AN 8929)
140 Broadway
New York, NY 10005
Telephone:  212/907-0700
212/818-0477 (fax)

_Attorneys for Arkansas Teacher Retirement
System, The State-Boston Retirement System, The
Norfolk County Retirement System and City of
Brockton Retirement System and Proposed Lead
Counsel for the Class_

**COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP**
Paul J. Geller
Jack Reise
Douglas S. Wilens
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz
Kimberly A. Sanders
Timothy N. Mathews
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

*Additional Counsel for Lead Plaintiffs
and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 29, 2010, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


*/s/Tyrone C. Means*

TYRONE C. MEANS (MEA003)

## CERTIFICATE OF SERVICE

I hereby certify that on  January 29, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Enrique Jose Gimenez**  Lightfoot Franklin & White LLC
  hgimenez@lightfootlaw.com

- **James Fletcher Hughey, III**  Lightfoot Franklin & White LLC
  jhughey@lightfootlaw.com

- **Samuel Holley Franklin**  Lightfoot Franklin & White LLC
  sfranklin@lightfootlaw.com

- **Robert David Segall**  Copeland Franco Screws & Gill
  segall@copelandfranco.com

- **Edward Hamilton Wilson, Jr.**  Ball Ball Matthews & Novak PA
  hwilson@Ball-Ball.com

- **Tabor Robert Novak, Jr.**  Ball Ball Matthews & Novak PA
  tnovak@ball-ball.com

- **Alan Frederick Enslen**  Maynard, Cooper & Gale, P.C
  aenslen@maynardcooper.com

- **Armistead Inge Selden, III**  Maynard, Cooper & Gale, P.C
  iselden@maynardcooper.com

- **Carl Stanley Burkhalter**  Maynard, Cooper & Gale, P.C.
  cburkhalter@maynardcooper.com

- **Steven L. McPheeters**  Maynard, Cooper & Gale, P.C.
  smcpheeters@maynardcooper.com

- **Larry Brittain Childs**  Waller Lansden Dortch & Davis LLP
  larry.childs@wallerlaw.com

- **Elizabeth V. Tanis**  King & Spalding LLP
  etanis@kslaw.com

- **Dan S. McDevitt**  King & Spalding LLP
  dmcdevitt@kslaw.com

- **George Patrick Montgomery**  King & Spalding LLP
  pmontgomery@kslaw.com

- **Shelby S. Guilbert**  King & Spalding LLP
  sguilbert@kslaw.com

- **Walter Edgar McGowan** Gray Langford Sapp McGowan Gray, Gray & Nathanson PC
  wem@glsmgn.com

- **Gerald Clark Brooks , Jr.**  Thomas, Means, Gillis & Seay, P.C.
  gcbrooks@tmgslaw.com

- **Henry Lewis Gillis**  Thomas Means Gillis & Seay PC
  hlgillis@tmgslaw.com

- **Ira M Levee**  Lowenstein Sandler PC
  ilevee@lowenstein.com

- **Kimberly A. Sanders**  Chimicles & Tikellis LLP
  kas@chimicles.com

- **Michael Stephen Dampier**  Vickers, Riis, Murray and Curran, LLC
  stevedampier@bellsouth.net

- **Michael S Etkin**  Lowenstein Sandler PC
  metkin@lowenstein.com

- **Steven A. Schwartz**  Chimicles & Tikellis LLP
  sas@chimicles.com

- **Timothy N Mathews**  Chimicles & Tikellis LLP
  TNM@chimicles.com

- **Geoffrey Michael Ezgar**  King & Spalding, LLP
  gezgar@kslaw.com

  s/Tyrone C. Means