**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| In re | ) | Civil Action No. |
| **COLONIAL BANCGROUP, INC.** | ) | **2:09-CV-104-MHT** |
| **SECURITIES LITIGATION** | ) | |

**OUTSIDE DIRECTOR DEFENDANTS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

## I. INTRODUCTION

In reviewing the standard applicable at this stage of the proceedings, Lead Plaintiffs' Memorandum of Law in Opposition to the Underwriter Defendants' and Outside Director Defendants' Motions to Dismiss ("Plaintiffs' Opp.") dutifully cites the Supreme Court's recent rulings in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). The remainder of that filing makes clear, however, that plaintiffs' acknowledgment of those decisions is all form and no substance. Plaintiffs repeatedly ignore the fundamental principles of *Twombly* and *Iqbal* -- requiring allegations to reveal a "plausible" claim for relief and rejecting the notion that legal conclusions must be accepted as true -- opting instead to defend the flawed and conclusory assertions that currently litter their 151-page, 471-paragraph monolith of a complaint with inapposite and outdated authorities.[1] Their efforts fall far short of

---

[1] Plaintiffs correctly note that the decision in *Central Laborers Pension Fund v. Merix Corporation*, 2005 WL 2244072 (D. Or. 2005), cited by the Outside Director defendants in a string cite at pp. 6 and 8 of their principal filing, was subsequently reversed by the Ninth Circuit in *In re Merix Corporation Sec. Litig.*, 275 Fed.Appx. 599 (9th Cir. 2008). Due to an apparent oversight, the Ninth Circuit's decision was originally listed as a "related case" in Shepards rather than as authority reversing the district court's decision. Regardless, counsel should have identified the error prior to filing. The remaining decisions cited by the Outside Director defendants remain good law.

92949.11                                1

the mark, and the claims they allege against the Outside Director Defendants are due to be dismissed.[2]

## II. Plaintiffs' Contentions Premised Upon the Unquestionably Accurate Statement Regarding the 2007 Goodwill Impairment Analysis are Unavailing.

Plaintiffs devote considerable energy to their effort to salvage the plainly insufficient allegations regarding the goodwill analysis Colonial's outside accountants conducted in 2007. The challenged statement, which was contained in Colonial's 2007 10-K, provided that "the goodwill impairment analysis for 2007 indicated that no impairment write-offs were required." *See* Complaint, ¶ 393. Apparently recognizing that this demonstrably truthful representation of historical information cannot qualify as a false statement of material fact, plaintiffs attempt to transform the statement into a warranty of the accuracy of the accountants' work. They try to demonstrate the viability of this claim by cobbling together other allegations in the Complaint, but accomplish nothing other than confirming the fundamental misalignment between their assertions and the content of the statement.

The statement in the 10-K concerning the results of the 2007 goodwill testing is accurate, and none of the plaintiffs' arguments attempt to demonstrate otherwise. As a result, that statement cannot support a claimed violation under the federal securities laws. *See, e.g.*, *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 574 (6th Cir. 2008) (statements in SEC filings which constituted "accurate portrayals of the status of the company and its operations" not actionable); *Schultz v. Tomotherapty Inc.*, 2009 WL 5062402, *2-3 (W.D. Wis., Dec. 15, 2009) (statement that a "majority" or "significant majority" of company's backlogs would convert to revenue deemed literally true where information revealed that conversion occurred at least 68%

---

[2] The Outside Director Defendants have endeavored to limit this reply to as great an extent possible. Those arguments raised in the Plaintiffs' Opposition that are not addressed herein are either adequately dealt with in the Outside Directors' principal filing or require no response.

of the time); *In re Heartland Payment Systems, Inc. Sec. Litig.*, 2009 WL 4798148 (D. N.J., Dec. 7, 2009) (true answers to questions regarding status of issuer's computer security not actionable under PSLRA); *Waterford Township General Employees Retirement System v. CompuCredit Corp.*, 2009 WL 4730315, *4 (N.D. Ga., Dec. 4, 2009) (where company "repeatedly and truthfully" disclosed existence of ongoing regulatory investigations, plaintiffs failed to state plausible claim of relief based on statements regarding those matters).

Faced with this incontrovertible principle, plaintiffs offer precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusations" the Supreme Court has rejected. *Iqbal*, 129 S. Ct. at 1949-50. Plaintiffs summarily conclude that the Complaint passes muster because it alleges that "Colonial's goodwill was severely impaired at the time of the [securities offerings in February and April, 2008]," Complaint, ¶ 394, but ignore that fact that absolutely nothing in the offering materials makes any representation about the condition of goodwill at that point in time.

Perhaps such conclusory allegations, untethered to factual basis, would have been sufficient in the days when *Conley v. Gibson*, 355 U.S. 41 (1957) allowed complaints to survive dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. The Supreme Court has unequivocally rejected *Conley*'s forgiving standard, however. *Twombly*, 550 U.S. at 563 (holding, with respect to the "no set of facts" standard, that "this famous observation has earned its retirement"). In its place, *Twombly* and *Iqbal* require plaintiffs to plead "sufficient factual matter . . . to 'state a claim that is plausible on its face," and find such plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937 (quoting *Twombly*, 550 U.S. at 556, 570).

Plaintiffs' allegations fall short under this standard. Simply put, whether or not goodwill was written down in 2008 reveals absolutely nothing about what the 2007 goodwill analysis actually indicated. Despite all the stretching, contorting and outright torturing the plaintiffs subject that statement to, its content and meaning remain clear and indisputable. Because that content and meaning effectively forecloses utilization of the statement as the basis for a Securities Act violation, plaintiffs' contentions fail.

### III. Plaintiffs' Allegations Concerning Colonial's Conservative Underwriting Standards and Collateral Guidelines are Insufficient to State a Claim for Relief.

Plaintiffs mock the notion that statements regarding Colonial's Underwriting Standards amount to immaterial "puffing," pulling a quote from the footnote of an out-of-circuit district court decision suggesting that "it has been said that the puffing concept in the securities context has all but gone the way of the dodo . . . dismissals on this ground are increasingly rare." Plaintiffs' Opp. at 29 (quoting *Brumbaugh v. Wave Sys. Corp.*, 416 F.Supp.2d 239, 250 n. 11 (D. Mass. 2006)). The ellipsis in the quote was manufactured by the plaintiffs, calculated to excise the following language:

> This observation may be somewhat hyperbolic. *See Orton v. Parametric Tech. Corp.*, 344 F.Supp.2d 290, 301 (D. Mass. 2004) (finding comment that company was "position[ed] . . . for long-term growth" a "classic example of non-actionable corporate puffery").

*Brumbaugh*, 416 F.Supp.2d at 250 n.11. Not only was the suggestion "hyperbolic" in 2006,[3] it has proven flat-out wrong in the wake of *Twombly* and *Iqbal*. Even in the relatively short period since those decisions, numerous courts have dismissed complaints premised on the type of generally optimistic statements identified by the plaintiffs. *See, e.g., Institutional Investors*

---

[3] Dismissal on "puffing" grounds could hardly be deemed a rarity prior to that date. *See, e.g., Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir.1996); *San Leandro Emergency Med. Plan v. Philip Morris*, 75 F.3d 801, 807, 811 (2d Cir. 1996); *Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 213 (4th Cir.1994); *Orton v. Parametric Tech. Corp.*, 344 F.Supp.2d 290, 301 (D. Mass. 2004); *In re Kidder Peabody Sec. Litig.*, 10 F.Supp.2d 398, 413 n. 15 (S.D.N.Y.1998).

*Group v. Avaya, Inc*., 564 F.3d 242, 255 (3d Cir. 2009) (finding challenged statements constituted puffing after applying *Twombly* standard); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase*, 553 F.3d 187, 205-06 (2d Cir. 2009) (noting *Twombly* standard prior to holding that statements regarding company's "highly disciplined risk management" amounted to "no more than 'puffery' which does not give rise to securities violations"); *Zaluski,*527 F.3d at 574 (under *Twombly* standard, statement in Form 10-K and 10-Q filings that made reference to viability of corporate brand in providing services to state citizens under contract with state was immaterial puffery); *In re Agape Litigation*, 2010 WL 335621, *10 (E.D.N.Y., Jan. 29, 2010) (after detailing *Iqbal* holding, court rejected claim that statements regarding company and key employer were actionable).

Plaintiffs are also mistaken in their suggestion that this issue cannot be determined in the context of a motion to dismiss. *See* Plaintiffs' Opp. at 30-31. In fact, the decision they rely on for this premise, *Rosen v. Textron, Inc.*, 321 F. Supp. 2d 308 (D. R.I. 2004) actually reached precisely the opposite conclusion with respect to one of the challenged statements. *See id*. at 320-21 (holding, at motion to dismiss stage, that statement in press release that company was "on track" to meet production deadlines was not actionable where those deadlines were actually met).[4] Moreover, each of decisions referenced above, along with those cited in the principal brief (and countless others) considered and resolved this issue at the Rule 12(b)(6) stage.

Plaintiffs' claims may be usefully contrasted against those actions which rest on alleged deviations from objectively measurable standards, and which have survived dismissal post-*Twombly* and *Iqbal*. *See, e.g., Walter v. Hughes Communications, Inc*., 2010 WL 366639, *11 (N.D. Cal., Jan. 26, 2010) ("Hughes' representations disclose hard, measurable quantities that

---

[4]  The court did deny the motion to dismiss with respect to another challenged statement – that the company's "global network of powerful market leading brands provides opportunities for growth all across our segments" – could not be deemed puffery in the motion to dismiss context. *Rosen*, 321 F.Supp.2d at 320.

92949.11                                              5

cannot be characterized as mere 'puffery'"); *Martinelli v. Petland, Inc.*, 2010 WL 376921, *7 (D. Ariz., Jan. 26, 2010) (alleged misrepresentations – that defendant pet store company did not receive dogs from a puppy mill, and that dogs had no history of illness - deemed capable of being proven true or false under objective, identifiable standards and therefore not puffery). Plaintiffs' allegations rest on statements which are different not simply in degree but in kind. As such, those allegations fail to support a claim under the federal securities laws.[5]

### IV. Plaintiffs' Attempts to Evade Application of the Safe Harbor Provisions Fall Deliberately Short.

Plaintiffs also miss the mark in their response to the application of the statutory "safe harbor" provisions.[6] They suggest, alternatively, that the allegedly false statements in the 10-K are not sufficiently "forward-looking," the corresponding warnings are not sufficiently specific and, even if the plaintiffs are wrong in both respects, the defendants' actual knowledge of the falsity of the statements when made suffices for liability to attach. The plaintiffs' methodology for reaching this conclusion is hopelessly flawed. They ignore controlling decisions from this circuit, opting instead to rely on inapposite and, in some instances, plainly incorrect authorities. Predictably, they arrive at an erroneous result.

Plaintiffs contend that the challenged statements in the 10-K cannot be deemed "forward-looking" because some portions of those statements contain references to historical fact. Plaintiffs' Opp. at 26. In the process, they ignore *Harris v. Ivax Corporation*, 182 F.3d 799 (11th Cir. 1999), which recognized that "forward-looking conclusions often rest both on historical

---

[5] Plaintiffs fare no better on their allegations regarding Colonial's collateral guidelines. They simply recycle the same flawed allegations in the complaint and summarily reject the notion that they are required to plead more than they have at this point. Once again, authority predating *Twombly* and *Iqbal* serves as the foundation for their arguments. *See* Plaintiffs' Opp at 24-25 (citing *Shared Network Tech., Inc. v. Taylor*, 669 F.Supp. 422 (N.D. Ga. 1987)). Once again, their contention founders.

[6] Plaintiffs make no specific reference to Outside Directors' arguments that the 10-K contained language which insulated them from liability. Much of their response to the Underwriter Defendants' arguments on the issue (Plaintiffs' Opp. at 26-29) appear to apply to the Outside Directors as well, however, and, therefore, that response is addressed herein.

observations and assumptions about future events." *Id*. at 806.[7]  Under *Harris*, "in assessing whether statements are subject to the forward-looking safe harbor provision, a line or paragraph referenced in the complaint must be viewed in the context in which it was made, rather than standing alone as presented in the complaint." *In re UniCapital Sec. Litig*., 149 F.Supp.2d 13531374 (M.D. Fla. 2001) (citing *Harris*). Plaintiffs disregard this mandate, choosing instead to construct their argument by plucking several statements from the complaint and stripping them of all context. *See* Plaintiffs' Opp. at 26-27. Because this approach contravenes controlling authority, the plaintiffs' arguments are unworthy of acceptance.[8]

The Plaintiffs also ignore the *Harris* court's teachings regarding the application of the "meaningful cautionary statements" doctrine provided in the statute, *see* 15 U.S.C. § 77z(c)(1)(A), opting instead to rely on inapposite authority. Plaintiffs contend that the cautionary language identified by the Underwriter Defendants was simply too "general and indefinite" to suffice. Plaintiffs' Opp at 27.[9] Contrary to Plaintiffs' suggestion, however, and as the *Harris* court made clear, "the statute requires the warning only to mention 'important factors that could cause actual results to differ materially from those in the forward-looking statement' . . . It does not require a listing of *all* factors." *Harris*, 182 F.3d at 807 (emphasis in original). It is not necessary that the risks identified in the cautionary language be identical to the harm that actually results; the safe harbor provisions apply "when an investor has been warned of risks of a significance *similar* to that actually realized . . . " *Id*. (emphasis added). It is noteworthy that the

---

[7] *Harris* involved claims filed under the Securities Exchange Act of 1934. That statute sets forth "safe harbor" provisions which lay out the circumstances under which defendants may avoid liability for allegedly false statements. *See* 15 U.S.C. § 78u-5(c). The Securities Act of 1933, under which the plaintiffs have sued the Outside Directors, contains identical language. *See* 15 U.S.C. 77z-2(c).

[8] The Outside Director defendants do not suggest that the statement in the 10-K providing that "the goodwill impairment analysis for 2007 indicated that no impairment write-offs were required" is a forward-looking statement. Plaintiffs' allegations premised upon that statement nevertheless fail, however, because the statement is not actionable under federal securities laws. *See* § II, *supra*.

[9] For reasons that are not altogether clear, plaintiffs make no mention of the language identified by the Outside Directors in their principal filing (see 18-19) which warned of the very results that came to pass.

92949.11                                7

plaintiffs not only ignore this principle, they offer no response to the warnings detailed in the Outside Director defendants principal filing, which cautioned potential investors in accordance with the statute.

Plaintiffs next suggest that even if the statements at issue could be deemed forward-looking, defendants remain liable because the complaint contains allegations that the defendants had actual knowledge that the statements were false when made. Plaintiffs' Opp. at 28. They quote *Reina v. Tropical Sportswear, Int'l*, 2005 WL 846170, *7 (M.D. Fla. Apr. 4, 2005) for the proposition that "a defendant remains liable, even for a forward-looking statement, if the plaintiff shows that the defendant knew at the time of the statement of false and misleading content and thus lacked a reasonable basis for making the statement." Plaintiff's Opp. at 28. This is not a correct statement of the law of this circuit.

In *Harris*, the court reached precisely the opposite conclusion, holding that "if a statement is accompanied by meaningful cautionary language, the defendants' state of mind is irrelevant." *Harris*, 182 F.3d at 803. The Eleventh Circuit recently reiterated the viability of this principle, holding in *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc*., 2010 WL 154519 (11th Cir. Jan. 19, 2010) that "an allegation of actual knowledge of falsity will not deprive a defendant of protection by the statutory safe harbor if his forward-looking statements are accompanied by meaningful cautionary language." *Id*. at *9. As the *Jabil Circuit* court explained, the safe harbor provisions create "several ways for a defendant to avoid liability, all written in the disjunctive." *Id*. at *10. Accordingly, "an allegation that the speaker knew the [forward-looking] statements were false does not convert those statements, mitigated by adequate warnings of risks, into actionable frauds." *Id*. at *11.

The offering materials at issue here contain warnings which are more than adequate. More fundamentally, however, plaintiffs' arguments founder because they fail to offer any allegation than any Outside Director defendant knew that any statement in the offering materials was false or misleading. Plaintiffs cannot expressly disavow allegations of fraud on the part of the Outside Director defendants in their effort to evade the PSLRA's heightened pleading requirements and simultaneously suggest that unidentified allegations in the complaint insulate it from dismissal because those assertions supposedly demonstrate knowledge on the part of those defendants.

## IV.  CONCLUSION

For the foregoing reasons, the Court should dismiss Counts III and VI against the Outside Director Defendants.

Respectfully submitted,

/s/ Larry B. Childs
Larry B. Childs
Sheila W. Sawyer
Attorneys for Defendants Lewis E. Beville, Augustus K. Clements III, Robert S. Craft, Patrick F. Dye, Hubert L. Harris, Jr., Clinton O. Holdbrooks, Deborah L. Linden, John Ed Mathison, Milton E. McGregor, Joe D. Mussafer, William E. Powell, James W. Rane, Simuel Sippial and Edward V. Welch

OF COUNSEL:
WALLER LANSDEN DORTCH & DAVIS LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, AL 35203
Telephone: (205) 226-5701

92949.11                                  9

Facsimile:   (205) 214-8787
Email:  larry.childs@wallerlaw.com

Walter E. McGowan, Esq.
GRAY, LANGFORD, SAPP, McGOWAN, GRAY,
GRAY & NATHANSON, P.C.
108 Fred Gray Street
P. O. Box 830239
Tuskegee, AL 36083

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 16th day of February 2010 I electronically filed the foregoing Outside Director Defendants' Reply to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss by filing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record for the plaintiff:

Samuel H. Franklin, Esq.
James F. Hughey, III, Esq.
Enrique J. Gimenez, Esq.
LIGHTFOOT, FRANKLIN & WHITE, L.L.C
The Clark Building
400 20th Street North
Birmingham, AL 35203

Robert D. Segall, Esq.
COPELAND, FRANCO, SCREWS & GILL, P.A.
44 South Perry Street
P. O. Box 437
Montgomery, AL 36102

Tyrone C. Means, Esq.
H. Lewis Gillis, Esq.
Gerald C. Brooks, Esq.
THOMAS, MEANS, GILLIS & SEAY, PC
3121 Zelda Court
Montgomery, AL 36106

A. Inge Selden, III, Esq.
Carl S. Burkhalter, Esq.
Alan F. Enslen, Esq.
Steven L. McPheeters, Esq.
MAYNARD COOPER & GALE PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza

Birmingham, AL 35203

Tabor R. Novak, Jr., Esq.
Edward H. Wilson, Jr., Esq.
BALL, BALL, MATTHEWS & NOVAK, P.A.
P. O. Box 2148
Montgomery, AL 36102

Thomas A. Dubbs, Esq.
James W. Johnson, Esq.
Angelina Nguyen, Esq.
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10003

Elizabeth V. Tanis, Esq.
Dan S. McDevitt, Esq.
George P. Montgomery, Esq.
Shelby S. Guilbert, Jr., Esq.
KING & SPALDING, LLP
1180 Peachtree Street, NE
Atlanta, GA 30309

/s/ Larry B. Childs