IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| In re ) | | Civil Action No. |
| COLONIAL BANCGROUP, INC. ) | | 2:09-CV-104-MHT |
| SECURITIES LITIGATION ) | | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OF WILLIAM BRITTON AND JERRY CHESSER**

**I.   Introduction**

In opposing the motion to dismiss of defendants William Britton and Jerry Chesser, plaintiffs do not dispute that the two men made <u>no false statements</u> and had <u>no connection</u> to the statements that are alleged to be actionably false in this case. As the plaintiffs admit in their complaint, both Britton and Chesser retired from the Colonial BancGroup Inc. ("BancGroup") Board of Directors long before any of the allegedly false statements were written or disseminated. Indeed, the plaintiffs do not dispute that Britton and Chesser retired even before the *very change in economic conditions* that triggered Colonial's decline.

Nevertheless, plaintiffs contend that both men are liable under § 11 of the Securities Act because they signed an SEC Form S-3 Registration Statement that contained nothing but unquestionably accurate boilerplate information about BancGroup and was **filed over 3 years before the alleged false statements were made**.[1] In other words, Plaintiffs suggest that this Court rule that Britton

---

[1]   On November 2, 2004, BancGroup filed a Form S-3 Registration Statement. Ten days later, on November 12, 2004, BancGroup filed a Pre-Effective Amendment to that Form S-3 to supplement certain information in the original filing. Under applicable SEC regulations, the latter filing

93042.4

and Chesser may be held strictly liable for any claims relating to any securities issued by BancGroup subsequent to the Form S-3 they signed, regardless of whether either of them were directors at the time any security was actually offered to the public. This conclusion, which rests on a fundamental misperception of the shelf registration process, defies the plain language of the relevant statutory and regulatory provisions, the legislative intent underlying §11, and logic. For the reasons detailed more fully herein, Britton's and Chesser's motion to dismiss should be granted.

## II.   Overview of the Shelf Registration Process

The Securities Act of 1933 requires the filing of a registration statement as a prerequisite to offering securities for sale. 15 U.S.C. § 77e(c). By statute, the "registration statement shall be deemed effective only as to the securities specified therein as proposed to be offered." 15 U.S.C. § 77f(f). SEC Rule 415 supplements that provision by authorizing a process by which issuers may file a registration statement expressing an intent to issue securities at an unidentified future date. 17 C.F.R. § 230.415. This pre-registration of securities that are not immediately offered for sale is known as "shelf registration," as the securities are figuratively "placed on the shelf" for future issuance.

Once the registration statement is filed under Rule 415, the issuer may later issue the securities through a mechanism commonly referred to as a "shelf offering" or "shelf takedown" without filing a new registration statement. In order to fulfill

---

operated to supersede the original. For the sake of clarity, the November 12, 2004 filing is referred to herein as "the Form S-3."

the disclosure obligations which underlie the Securities Act, however, as part of that process the issuer is required to file a prospectus which reflects "any fundamental change in the information set forth in the registration statement." 17 C.F.R. § 229.512(a). Once filed, that prospectus becomes part of the registration statement for the purposes of applying § 11. 17 C.F.R. § 230.430B(a); *see also In re Marsh & McClennan Companies, Inc., Sec. Litig.*, 501 F.Supp.2d 452, 491 (S.D. N.Y. 2006).

Contrary to the plaintiffs' suggestion, the filing of a prospectus does not automatically trigger the application of § 11 to those directors who signed the original registration statement. Recognizing that the shelf registration process threatened to extend potential liability to directors who signed the Form S-3 but were no longer associated with the issuer at the time of the shelf offering (precisely the interpretation plaintiffs suggest here), the SEC specifically prohibited that result, stating:

> we believe that for other persons, including directors, signing officers, and experts, the filing of a form of prospectus should not result in a later Section 11 liability date than that which applied prior to our new rules. Therefore, under Rule 430B, except for an effective date resulting from the filing of a form of prospectus for purposes of updating the registration statement pursuant to Section 10(a)(3) or reflecting fundamental changes in the information in the registration statement pursuant to the issuer's undertakings, the prospectus filing will not create a new effective date for directors or signing officers of the issuer. <u>Any person signing any report or document incorporated by reference in the prospectus that is part of the registration statement or the registration statement</u>, other than a document filed for the purposes of updating the prospectus pursuant to Section 10(a)(3) or reflecting a fundamental change, <u>is deemed not to be a person who signed the registration statement as a result</u>.

Securities Offering Reform, Securities Act Release No. 33-8591 (70 Fed. Reg. 44,722) at 207 (Aug. 3, 2005) (emphasis added, footnote omitted).

### III. Section 11 Liability Does not Extend to Securities Filings After the Retirement of Britton and Chesser.

When applied to the present circumstances, this language makes clear that the common sense result is also the result mandated under the law. After filing the Form S-3 on November 12, 2004 (which Britton and Chesser signed), BancGroup did not take any securities off the shelf for the purpose of offering them to the public until March 2008, when it issued the Subordinated Notes which form the sole basis of Count III of the Complaint. On March 3, 2008, when it offered those Notes, BancGroup prepared and disseminated a prospectus ("the Prospectus") (attached as Exhibit A) containing certain information reflecting a "fundamental change in the information set forth in the registration statement;" specifically, detailed information about its financial condition and performance. In conveying this information, the Prospectus incorporated BancGroup's 2007 10-K ("the 10-K"), which was filed on February 25, 2008. *Id.* at C-6. As admitted in the Complaint, Britton and Chesser had retired as BancGroup directors years before either the Prospectus or the 10-K was even prepared, much less filed. Complaint, ¶ 387(b) (Britton in 2005); (c) (Chesser in 2006).

Thus, both Britton and Chesser qualify as "[a] person signing any report or document incorporated by reference in the prospectus that is . . . the registration statement" because they both signed the Form S-3, and that form is incorporated by reference in the Prospectus. Neither Britton nor Chesser signed any document

"filed for the purposes of updating the Prospectus pursuant to § 10(a)(3)."[2] While BancGroup did file the Prospectus for the purpose of "reflecting a fundamental change," neither Britton nor Chesser signed that document or the 10-K it incorporated by reference. This necessarily means that Britton and Chesser "[are] deemed not to be [people] who signed the registration statement as a result." Accordingly, there is no basis to apply § 11 to them.

### IV. Plaintiffs' Reliance on Inapposite Authority Does Not Salvage Their Claims.

Apparently sensing the illogical nature of their position that this Court sanction the imposition of liability for false statements on two men who had absolutely no connection to the statements, plaintiffs purport to marshal authority for their position. They quote language from *In re UniCapital Sec. Litig.*, 149 F.Supp.2d 1353, 1363 (S.D. Fla. 2001) providing that "claims under §§ 11 and 12(a)(2) of the Securities Act do not require any intent to defraud on the part of the defendant, or *even knowledge of the misrepresentation or omission*." Plaintiff Opp. at 12 n.9. This unremarkable premise–that § 11 imposes strict liability for certain defendants–provides no support for plaintiffs' argument, because the failings of plaintiffs' claims against Britton and Chesser go much deeper than the questions of intent or knowledge. Neither of them is alleged to have made or participated in any way in the dissemination of the alleged false statements. *UniCapital* arose out of the filing of a registration statement and prospectus for an initial public offering, *id*.

---

[2] This provision imposes certain requirements relating to the staleness of certain information. *See* 15 U.S.C. § 77j(a)(3). It is not implicated by the present circumstances, as Colonial did not file any documents pursuant to that section.

at 1358-59, not a shelf registration. Accordingly, the court had no need or opportunity to explore the issue presented by this case, and its holding does not support plaintiffs' allegations against Britton and Chesser.[3]

## V. Conclusion

The plaintiffs' flawed approach to naming Chesser and Britton as defendants is premised on a fundamental misunderstanding of the nature of the shelf registration process. Where securities are issued pursuant to that process, a myopic focus on isolated language of extending liability to "every person who signed the registration statement" – without regard to the statutory context, the applicable regulations, and common sense – produces a fundamentally unfair and untenable result. Plaintiffs arrive at that juncture through their flawed analysis, and ask the Court to adopt the resulting conclusion without regard for the absurdity of the consequences. In light of the admitted facts that neither Britton nor Chesser made any misleading statement, nor had any involvement in the securities offerings that

---

[3]  Plaintiffs' citation to *UniCapital* also obscures a major distinction relating to the application of § 11 against outside directors like Britton and Chesser – the availability of the due diligence defense. Under the terms of the statute, individuals who reasonably rely on the authority of an expert for statements contained in the registration statement, or undertake a "reasonable investigation" into the veracity of all "non-expertised" statements cannot be held liable. § 11(b)(3)(A), (C). This defense imposes "a negligence standard" - not strict liability - on such individuals. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208 (1976).

The plaintiffs' perverse interpretation of the statute would strip from it entirely the due diligence defense. Because neither defendant was a member of the BancGroup Board at the time the alleged false statements were made, they had neither the authority nor even the opportunity to conduct a reasonable investigation into the accuracy of the information contained in the 10-K. Nor could they reasonably rely on data from experts when they never had the opportunity to review or even receive such data in the first place. Thus, following plaintiffs' logic would ignore the clear statutory mandate that outside directors–unlike issuers and certain other individuals-are not subject to liability without evidence of "any intent to defraud on the part of the defendant, or even knowledge of the misrepresentation or omission." *UniCapital*, 149 F.Supp.2d at 1363.

are the objects of plaintiffs' claims, this Court should decline the Plaintiffs' invitation and grant defendant Britton's and Chesser's motion to dismiss.

                                          Respectfully submitted,

/s/ Larry B. Childs
Larry B. Childs
Sheila W. Sawyer
Attorneys for Defendants Lewis E. Beville, Augustus K. Clements III, Robert S. Craft, Patrick F. Dye, Hubert L. Harris, Jr., Clinton O. Holdbrooks, Deborah L. Linden, John Ed Mathison, Milton E. McGregor, Joe D. Mussafer, William E. Powell, James W. Rane, Simuel Sippial and Edward V. Welch

OF COUNSEL:
WALLER LANSDEN DORTCH & DAVIS LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, AL 35203
Telephone: (205) 226-5701
Facsimile:   (205) 214-8787
Email: larry.childs@wallerlaw.com

Walter E. McGowan, Esq.
GRAY, LANGFORD, SAPP, McGOWAN, GRAY, GRAY & NATHANSON, P.C.
108 Fred Gray Street
P. O. Box 830239
Tuskegee, AL 36083

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of February 2010 I electronically filed the foregoing Outside Director Defendants' Reply to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss by filing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record for the plaintiff:

Samuel H. Franklin, Esq.
James F. Hughey, III, Esq.
Enrique J. Gimenez, Esq.
LIGHTFOOT, FRANKLIN & WHITE, L.L.C
The Clark Building
400 20th Street North
Birmingham, AL 35203

Robert D. Segall, Esq.
COPELAND, FRANCO, SCREWS & GILL, P.A.
44 South Perry Street
P. O. Box 437
Montgomery, AL 36102

Tyrone C. Means, Esq.
H. Lewis Gillis, Esq.
Gerald C. Brooks, Esq.
THOMAS, MEANS, GILLIS & SEAY, PC
3121 Zelda Court
Montgomery, AL 36106

A. Inge Selden, III, Esq.
Carl S. Burkhalter, Esq.
Alan F. Enslen, Esq.
Steven L. McPheeters, Esq.
MAYNARD COOPER & GALE PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203

Tabor R. Novak, Jr., Esq.
Edward H. Wilson, Jr., Esq.
BALL, BALL, MATTHEWS & NOVAK, P.A.
P. O. Box 2148
Montgomery, AL 36102

Thomas A. Dubbs, Esq.
James W. Johnson, Esq.
Angelina Nguyen, Esq.
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10003

Elizabeth V. Tanis, Esq.
Dan S. McDevitt, Esq.
George P. Montgomery, Esq.
Shelby S. Guilbert, Jr., Esq.
KING & SPALDING, LLP
1180 Peachtree Street, NE
Atlanta, GA 30309

/s/ Larry B. Childs