IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re )<br> )<br> )<br>COLONIAL BANCGROUP, INC. )<br>SECURITIES LITIGATION )<br> )<br> )<br> )<br> )<br> )<br> ) | CIVIL ACTION NO.<br>2:09-CV-104-MHT |

UNDERWRITER DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
LEAD PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

The Underwriter Defendants, listed in paragraphs 385 and 440 of the Consolidated Class Action Complaint ("Complaint"), respectfully submit this memorandum in reply to Lead Plaintiffs' Memorandum of Law in Opposition to the Underwriter Defendants' and Outside Director Defendants' Motions to Dismiss (Pacer Doc. ADD ("LP Br.")).

## ARGUMENT

### I. LEAD PLAINTIFFS LACK STANDING.

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). As "the Supreme Court has declared[,] . . . the standing inquiry 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992)).

In their initial brief ("Und. Br."), the Underwriter Defendants gave two distinct reasons why Lead Plaintiffs lack standing to bring Section 11 and 12 claims related to the April 2008 stock offering. (Und. Br. at 2-7; *see* Complaint, Counts VI and VII).[1] The first and most obvious reason was that Lead Plaintiffs appear not to have a dog in this fight, *i.e.*, they have failed to allege that <u>they themselves</u> (as opposed to anonymous potential class members) own stock traceable to the April 2008 offering.[2] The second reason was that the Complaint's standing allegations relating to the unknown class members are too conclusory (even if such allegations were sufficient to convey standing onto the Lead Plaintiffs – which is decidedly not the case).

---

[1] At this particular point in the proceedings, the Underwriter Defendants are not challenging the standing of one Lead Plaintiff (The Horace F. Moyer and Joan M. Moyer Living Trust) to bring claims related to the February 2008 note offering. Obviously, the Underwriter Defendants reserve the right to make such a challenge at a later date.

[2] The "traceability" requirement applies to claims under Section 11. As shown elsewhere, Section 12 requires a direct transaction between a plaintiff and a defendant (*i.e.*, it does not reach aftermarket transactions).

2

Lead Plaintiffs meet neither deficiency head-on. As to the first argument, they assert that they have given "notice of standing" by alleging that the putative class consists of "of all persons and entities . . . who purchased or acquired Colonial's common stock traceable to the Company's April 23, 2008 stock offering." (LP Br. at 9). That assertion misses the point completely. A named plaintiff cannot circumvent the standing requirement by purporting to represent absent class members who themselves might have standing, were they to sue as named plaintiffs. The cases citing this principle are legion. *See Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. July 16, 1981) (binding former Fifth Circuit decision holding that "[i]nclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue. <u>If the plaintiff has no standing individually, no case or controversy arises</u>.") (emphasis added); *accord Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 2183 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal quotation marks omitted)); *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975) (A "plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[T]he threshold question is whether the <u>named plaintiffs</u> have individual standing, in the constitutional sense, to raise certain issues.") (emphasis added); *see also Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677, 2000 WL 1886605 at *1 (S.D.N.Y. Dec. 28, 2000) ("If the named plaintiffs have no cause of action in their own right, their

complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.").

*In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003) is particularly on-point. There, the court rejected the very same argument Lead Plaintiffs make here, holding that the named plaintiffs in a Section 11 case could not bootstrap their way around the standing requirement by pleading their case as a putative class action:

> [I]t is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class – that is, <u>a named plaintiff must have purchased shares traceable to the challenged offering</u>. . . . Nowhere in the complaint is it alleged that any named plaintiff meets this requirement. . . . [T]hey cite no portion of the voluminous complaint, or any document referenced in it, that establishes that any <u>named</u> plaintiff can trace his, her or its shares to that offering. . . . [A]bsent any such allegation, the named plaintiffs lack standing to assert a claim pursuant to section 11, and therefore to represent the class of purchasers of GC common stock traceable to that offering. Accordingly, Count XII must be dismissed as currently pled.

*Id.* at 207-08 (emphasis added). Likewise, a very recent decision by Judge Kaplan in the Southern District of New York dismissed Section 11 claims where the named plaintiffs failed to allege that they actually purchased securities in the offerings at issue. *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-md-2017, at 9 (S.D.N.Y. Feb. 17, 2010) ("The fact remains, however, that plaintiffs have not alleged any injury traceable to the Certificates issued in those offerings. In consequence, all claims arising from the eighty-eight offerings in which none of the plaintiffs purchased any securities are dismissed.").

Next, Lead Plaintiffs cavil that a dismissal at this stage would deprive them of the opportunity to conduct discovery. (LP Br. at 9-10). But is that not always the case when a Rule 12(b)(6) motion is granted? Besides, as the Court well knows, standing is not a matter of discretion, meaning that courts are not empowered to hear disputes on the off chance that a

4

plaintiff who has failed to plead standing might stumble across evidence of standing during discovery. "If the plaintiff fails to meet its [pleading] burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006) (internal quotation marks omitted); *see also DiMaio*, 520 F.3d at 1301 (courts are not free to "speculate concerning the existence of standing.") (internal quotation marks omitted).

As a last resort, Lead Plaintiffs build a strawman. "What the Underwriter Defendants really argue[,]" they claim, "is that it is more difficult to prove that the aftermarket purchases are traceable to a secondary offering, as opposed to an initial offering." (LP Br. at 10). That is not the argument at all, of course. The defect at issue is one of pleading, not of proof. *See In re Supreme Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006) (at the motion to dismiss stage, Section 11 plaintiffs need not prove that their stock is traceable to the offering in question, but "they must allege it.") (internal quotation marks omitted). And it is not as if Lead Plaintiffs faced an insuperable pleading obstacle. Section 11 required only that they allege (with some measure of detail)[3] that their stock was traceable to the April 2008 offering. *Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 495-96 (5th Cir. 2005); 15 U.S.C. § 77(a); *see also* Und. Br. at 2-5. All Section 12 required was a sufficiently-detailed allegation that their stock was purchased directly from specific Underwriter Defendants. *First Union Discount Brokerage Serv., Inc. v. Milos*, 997 F.2d 835, 843-44 (11th Cir. 1993); *see also* Und. Br. at 6. In other words, the bar was not set high. Yet Lead Plaintiffs have not crossed it.

Given the foregoing, it should not be necessary for the Court to reach the Underwriter Defendants' second standing argument: that even the Complaint's allegations pertaining to the

---

[3] A Section 11 complaint must "suggest[] what evidence [the plaintiffs] intend to use to show that the particular shares purchased . . . can be traced to the [offering in question]." *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1376 (M.D. Fla. 2008).

absent class members are too conclusory to convey standing. This does, however, represent an independent reason to dismiss all claims relating to the April 2008 offering. Plaintiffs must put meat on the bone; in a non-conclusory manner, they "'must show that the security was issued under, and was the direct subject of, the prospectus and registration statement being challenged.'" *Grand Lodge*, 550 F. Supp. 2d at 1376 (quoting *APA Excelsior*, 476 F.3d at 1271); *see also Krim*, 402 F.3d at 495-96 ("[A]ftermarket purchasers seeking standing must demonstrate the ability to 'trace' their shares to the faulty registration."). The "Plaintiffs have not suggested what evidence they intend to use to show that the particular shares purchased by [members of the class] can be traced to the stocks issued in the" April 2008 stock offering. *Grand Lodge*, 550 F. Supp. 2d at 1376. The "wholly conclusory statement[s]," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955, 1968 (2007), that the purchased stock is traceable to the April 2008 offering, without more, is insufficient. *Grand Lodge*, 550 F. Supp. 2d at 1376; *see Krim*, 402 F.3d at 502.

## II. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE UNDERWRITER DEFENDANTS.

The fatal deficiencies of the Complaint previously identified by the Underwriter Defendants have not been cured or explained away by Lead Plaintiffs in their responsive brief. Instead, Lead Plaintiffs simply restate the allegations of the Complaint and insist that these conclusory contentions and unsubstantiated assumptions are sufficient under Rule 8. Lead Plaintiffs are mistaken.

As explained below and in the Underwriter Defendants' initial brief, Lead Plaintiffs have failed to allege facts sufficient to state a claim. Specifically, Lead Plaintiffs have not alleged an actionable misstatement or omission of material fact, the *sine qua non* of a viable claim under Sections 11 and 12.

A. **The Statements Indentified in the Complaint Are Not False or Misleading.**

The Court will recall that the Lead Underwriters are not alleged to have directly made any false or misleading statements. The sole allegation against them is that the offering materials in question incorporated Colonial's 2007 Form 10-K by reference, which itself contained four allegedly-actionable statements:

> (a) the goodwill impairment analysis for 2007 indicated that no impairment write-offs were required; (b) Colonial maintained "conservative underwriting" standards; (c) Colonial was "committed to the early recognition of problem loans and to ensuring an adequate level of allowance to cover inherent losses"; and (d) Colonial had collateral guidelines that required Loan-To-Value ("LTV") ratios of a certain minimum percentage in each loan sector.

(Compl. ¶ 368). These four statements are addressed below, in turn.

1. *Goodwill Impairment*

The primary issue here is that the Complaint gives just one basis for concluding that Colonial's goodwill should have been written down in 2007: the fact that it was written down one year later, in 2008. (Compl. ¶ 394). Lead Plaintiffs contend this is sufficient to meet the Rule 8 standard. The Underwriter Defendants disagree. Simply put, it is rank speculation to infer a problem in 2007 from a problem in 2008. This is particularly true given the multi-faceted nature of the goodwill inquiry, a fact noted by Lead Plaintiffs. (*See* Compl. ¶ 131 n. 1) (the fair market values used in goodwill analysis are based on an array of factors, including "discounted cash flow models derived from internal earnings forecasts," "future growth rates," "terminal values," and "weighted average cost of capital").

In its initial brief, the Underwriter Defendants cited cases dismissing complaints that relied on this kind of flawed logic. (Und. Br. at 12). Lead Plaintiffs try to distinguish these cases by asserting that they have "provided robust context" to support the contention that

7

goodwill should have been impaired in 2007. (L.P. Br. at 19-20). But the only "context" cited by Lead Plaintiffs is a single conclusory paragraph (¶ 388) in the Complaint. *Id.* That paragraph says nothing about cash flow models, future growth rates, or the other myriad factors involved in determining whether to impair goodwill.

Even under the liberal notice pleading of Rule 8, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Lead Plaintiffs' allegations about the goodwill impairment, which are based on nothing more than unsubstantiated supposition and hindsight, fail plausibly to allege an actionable false or misleading statement.

### 2.   *Conservative Underwriting Standards*

Lead Plaintiffs next challenge the truthfulness of statements in the 2007 10-K about Colonial's underwriting standards. (LP Br. at 20). As detailed in the Underwriter Defendants' initial brief, the Complaint fails to allege facts that, if true, would suggest that these general statements about Colonial's underwriting procedures were false or misleading when made. Tellingly, Lead Plaintiffs' brief offers nothing new to the discussion and simply regurgitates the allegations already presented in the Complaint, along with the ever-present suggestion that these vague accusations satisfy the pleading standards of Rule 8. (LP Br. at 20-22). These arguments remain unavailing.

For instance, Lead Plaintiffs conclude that statements in the 2007 10-K about Colonial's "strong and effective loan approval process" must be false because Colonial employees other than the loan operations personnel were allegedly permitted to review and approve loans. (LP Br.

8

at 20). However, the 2007 10-K does not specify the logistics of the loan approval process or suggest that any particular personnel were tasked with reviewing loan applications. The fact that personnel other than the loan operations team were (allegedly) responsible for approving loans does not imply that loans were unchecked or that the loan approval process was inefficient or employed lax standards. In fact, the allegations in the Complaint suggest the opposite: that more company personnel were reviewing the loan applications, providing greater oversight and a more effective review process. Because the allegations in the Complaint, while voluminous, do not allege facts to support Lead Plaintiffs' claim that the statements in the 2007 10-K about Colonial's underwriting standards were false or misleading when made, the statements are not actionable under the securities laws.

### 3. *Adequate Loss Allowances*

The Complaint fails to plead facts sufficient to support Lead Plaintiffs' conclusory allegation that "Colonial had insufficient capital allowance to cover inherent losses in its loan portfolio," (Compl. ¶ 369), and Lead Plaintiffs opposition brief fares no better. (LP Br. at 22). Lead Plaintiffs' bald conclusion that they have met the Rule 8 pleading standards simply does not make it so.

In an attempt to bolster their allegation that Colonial's capital allowance was insufficient at the time of the 2007 10-K, Lead Plaintiffs cite paragraph 367 of the Complaint for the proposition that "the Company experienced a groundswell of non-performing assets in its loan portfolio, which necessarily required a significant capital cushion" and led to the 2008 stock and note offerings. (LP Br. at 22). But this allegation, which focuses on occurrences in 2008, not 2007, does not undermine the 2007 10-K statement that Colonial "was committed . . . to ensuring an adequate level of allowance to cover inherent losses." If anything, Colonial's issuance of new

stock and notes suggests that it was furthering its commitment to an adequate level of loss allowance. Lead Plaintiffs' conclusory statements to the contrary are unconvincing and a far cry from plausibly suggesting that the 2007 10-K statements about loss coverage were false or misleading.

    4.    *Collateral Guidelines*

Lead Plaintiffs have also failed to plead sufficient facts to support their allegation that statements in the 2007 10-K about Colonial's collateral guidelines were false or misleading. (*See* Und. Br. at 20-23). Lead Plaintiffs contend that they have offered "exceptional detail . . . as to how Colonial's loan officers consistently disregarded loan-to-value ratios altogether." (LP Br. at 23). However, Lead Plaintiffs have not alleged that the standard procedures referenced in the 2007 10-K, including loan-to-value ratios, were unchecked by other personnel at Colonial. (Und. Br. at 21-22). In fact, the 2007 10-K identifies a variety of personnel within Colonial that were responsible for oversight and monitoring of collateral values. (Und. Br. at 22). Lead Plaintiffs have pleaded no facts to suggest that these individuals abdicated their duties and were not monitoring collateral values and underwriting standards. Instead, they take a snapshot of the practices of a single team of six people at an undetermined point in time and seek to extrapolate their behavior to an entire company. This implausible leap fails to satisfy even the modest pleading standard of Rule 8. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50.

**B.**    **The Complaint Does Not Identify An Actionable Omission.**

Lead Plaintiffs argue that the Underwriter Defendants had a duty to disclose information about "goodwill impairment analysis for 2007, 'conservative underwriting' standards, 'commit[ment] to the early recognition of problem loans and to ensuring an adequate level of allowance to cover inherent losses,' and loan-to-value ratio requirements." (LP Br. at 24). These

10

allegations are simply the flip-side of Lead Plaintiffs' misrepresentation claims and are equally baseless. Once again, Lead Plaintiffs have not pointed to any facts to support their assumption that the information included in the 2007 10-K was inaccurate or incomplete. Moreover, Lead Plaintiffs have cited no changed circumstances that would give rise to a duty to disclose. (LP Br. at 24-25); (Und. Br. at 22-23). *See generally Oxford Asset Mgmt.*, 297 F.3d at 1190-92. As such, Lead Plaintiffs' claims premised on alleged omissions are fatally deficient.

### C.  Any Alleged Misrepresentations or Omissions Are Immaterial and Non-Actionable.

Even if the statements identified in the Complaint can be construed as false or misleading, that alone is not enough to sustain Lead Plaintiffs' claims under Sections 11 and 12. *See SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1323 (11th Cir. 1982). The statements must also be material. To be material the misrepresentation must be one that a reasonable investor would attach importance to in determining his course of action. *See id.*; *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 658 (S.D.N.Y. 2004).

The alleged misrepresentations identified in the Complaint are anything but material. As discussed extensively in the Underwriter Defendant's initial brief, they are either statements of present or historical fact; constitute mere puffery; or are simply vague statements that relate to Colonial's general business practices that would be wholly unimportant to the objective investor. (Und. Br. 18-23). *See In re AMDOCS Sec. Litig.*, 390 F.3d 542, 548 (8th Cir. 2004) ("Alleged misrepresentations can be immaterial as a matter of law if they: 1) are of such common knowledge that a reasonable investor can be presumed to understand them; 2) present or conceal such insignificant data that, in the total mix of information, it simply would not matter; 3) are so

11

vague and of such obvious hyperbole that no reasonable investor would rely upon them; or 4) are accompanied by sufficient cautionary statements."); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1360 (N.D. Ga. 2002). Because these statements about underwriting standards, collateral guidelines, loss allowances, and goodwill impairment would not "have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," they are immaterial as a matter of law and cannot form the basis for a securities action. *See In re WorldCom*, 346 F. Supp. 2d at 658.

Moreover, the extensive cautionary language contained in the prospectus negates any potential that the general business statements could be construed as materially misleading. *See In re AMDOCS Sec. Litig.*, 390 F.3d at 548; *Zucker v. Quasha*, 891 F. Supp. 2d 1010, 1014 (D.N.J. 1995). As detailed in the Underwriter Defendants' initial brief, the warnings in the prospectus were abundant, explicit, and aimed at the exact risks that Lead Plaintiffs allege ultimately caused their losses. (Und. Br. at 23-25). Lead Plaintiffs make no effort to address this extensive cautionary language in their response. Instead, they reprise their assertion that the cherry-picked statements in the Complaint would be important to a reasonable investor because they concern "the Company's bottom line or otherwise concern the core of Colonial's business operations." (LP Br. at 26). Lead Plaintiffs offer no support for this conclusory contention and fail to explain how the statements cited in the Complaint would have misled a reasonable investor in the light of the extensive disclosures throughout the prospectus. (*Cf.* Und. Br. at 23-26).

In another attempt to sidestep the presence and impact of the cautionary language, Lead Plaintiffs put forth a proof argument, suggesting that consideration of the materiality of the statements is not appropriate at the motion to dismiss stage. (LP Br. at 25-26). This is not so.

12

"When a prospectus contains detailed disclosures of the relevant risks involved, general statements concerning the state of the industry, such as the ones made here, are immaterial as a matter of law." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 255 (S.D.N.Y. 2004). Because Lead Plaintiffs have failed to identify an alleged misstatement that would be material to a reasonable investor, they have not sufficiently pleaded a claim under Section 11 or 12 and their claims against the Underwriter Defendants are due to be dismissed.

## CONCLUSION

For the reasons set forth above, the Underwriter Defendants respectfully request that the Court dismiss the claims against them in their entirety and with prejudice.

By: /s/ Carl S. Burkhalter
A. Inge Selden, III
iselden@maynardcooper.com
Carl S. Burkhalter (BUR086)
cburkhalter@maynardcooper.com
Alan F. Enslen
aenslen@maynardcooper.com
Steven L. McPheeters
smcpheeters@maynardcooper.com

*Attorneys for Underwriter Defendants*

**OF COUNSEL:**

**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 19th day of February, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Samuel H. Franklin
sfranklin@lightfootlaw.com
James F. Hughey
jhughey@lightfootlaw.com
Enrique "Henry" J. Gimenez
hgimenez@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200

Robert D. Segall
segall@copelandfranco.com
COPELAND, FRANCO, SCREWS & GILL, PA
44 South Perry Street
P.O. Box 437
Montgomery, Alabama 36101-0347

Thomas A. Dubbs
tdubbs@labaton.com
James W. Johnson
jjohnson@labaton.com
Angelina Nguyen
anguyen@labaton.com
Alan Ellman
aellman@labaton.com
Christopher J. Keller
ckeller@labaton.com
Stefanie Sundel
ssundel@labaton.com
Thomas G. Hoffman
thoffman@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005

Tyrone C. Means
tcmeans@tmgslaw.com
H. Lewis Gillis
hlgillis@tmgslaw.com
Gerald C. Brooks
gcbrooks@tmgslaw.com
THOMAS, MEANS, GILLIS & SEAY, PC
3121 Zelda Court
Montgomery, Alabama 36106

Larry B. Childs
larry.childs@wallerlaw.com
WALLER LANSDEN DORTCH & DAVIS LLP
1901 Sixth Avenue North
Suite 1400
Birmingham, Alabama 35203

Tabor R. Novak, Jr.
tnovack@ball-ball.com
E. Ham Wilson., Jr.
hwilson@ball-ball.com
BALL, BALL, MATTHEWS & NOVAK, P.A.
P.O. Box 2148
Montgomery, Alabama 36102-2148

Elizabeth V. Tanis
etanis@kslaw.com
Dan S. McDevitt
dmcdevitt@kslaw.com
Shelby S. Guilbert, Jr.
sguilbert@kslaw.com
G. Patrick Montgomery
pmontgomery@kslaw.com
KING & SPALDING, LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309-3521

.

Kimberly A. Sanders
kas@chimicles.com
Steven A. Schwart
sas@chimicles.com
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041

Ira M. Levee
ilevee@lowenstein.com
Michael Etkin
metkin@lowenstein.com
LOWENSTEIN SANDLER PC
65 Livingston Ave
Roseland, NJ 70680
973-597-2500

Geoffrey M. Ezgar
gezgar@kslaw.com
KING & SPALDING, LLP
333 Twin Dolphin Dr. Suite 400
Redwood Shores, CA 94065
650-590-0700
650-590-1900 (fax)

Michael Dampier
stevedampier@bellsouth.net
VICKERS, RIIS, MURRAY AND
CURRAN, LLC
P.O. Box 2568
Mobile, Alabama 36652-2568
251-928-9160
251-928-2834 (fax)

Walter Edgar McGowan
wem@glsmgn.com
GRAY LANGFORD SAPP MCGOWAN
GRAY, GRAY & NATHANSON PC
P.O. Box 930239
Tuskegee, Alabama 36083-0239
334-727-4830
334-727-5877 (fax)

Sheila Watters Sawyer
Sheila.sawyer@wallerlaw.com
WALLER LANSDEN DORTCH &
DAVIS, LLP.
511 Union Street
Nashville, Tennessee 37219
615-850-8949


/s/ Carl S. Burkhalter
OF COUNSEL