# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

In re                                )
COLONIAL BANCGROUP, INC.             )  CIVIL ACTION NO.
SECUIRITES LITIGATION                )  2:09cv104 - MHT


**DEFENDANTS ROBERT E. LOWDER, SARAH H. MOORE,
T. BRENT HICKS AND SHEILA MOODY'S
RESPONSE IN SUPPORT OF THEIR MOTION TO DISMISS
LEAD PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
<u>FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    General – Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Specific – Rule 9(b) and the PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ADDITIONAL STATEMENTS OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    PLAINTIFFS' 10b-5 CLAIM CANNOT MEET ITS STATUTORY
      REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    PLAINTIFFS HAVE NOT IDENTIFIED THEIR ALLEGED   MATERIAL MISSTATEMENTS
         WITH SPECIFICITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Plaintiffs should be prohibited from using group pleading to identify
           the "who." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    Plaintiffs' allegations remain prototypical "puzzle pleading"
           and provide no guidance as to the "what" or "why." . . . . . . . . . . . . . . . 12

           a.    Plaintiffs cannot identify the "what." . . . . . . . . . . . . . . . . . . . . 13

           b.    Plaintiffs cannot identify the "why." . . . . . . . . . . . . . . . . . . . . . 17

    B.    PLAINTIFFS CANNOT IDENTIFY AN ACTIONABLE MISREPRESENTATION . . . . . . . . . 19

        1.    Plaintiffs' alleged misstatements include non-actionable
           puffery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        2.    Plaintiffs' alleged misstatements are protected as
           forward-looking under the safe harbor doctrine . . . . . . . . . . . . . . . . . . . 24

           a.    Plaintiffs' offered statements are forward-looking . . . . . . . . . . . 24

           b.    Plaintiffs' cannot logically challenge the cautionary
              statements provided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    C.    PLAINTIFFS DO NOT RAISE A STRONG INFERENCE OF SCIENTER . . . . . . . . . . . . . 28

1.      Plaintiffs' confidential witnesses do not support a finding of scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

2.      The "core operations" doctrine offers Plaintiffs no relief . . . . . . . . . . . 35

      a.      The doctrine is incompatible with the PSLRA's heightened pleading requirements. . . . . . . . . . . . . . . . . . . . . . . . 36

      b.      Alternatively, Plaintiffs insufficiently plead the doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

3.      Plaintiffs' claimed GAAP and Sarbanes-Oxley Act violations do not support scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

4.      Plaintiffs' TARP allegations do not support scienter . . . . . . . . . . . . . . . 41

5.      Defendants' lack of stock sales negate scienter . . . . . . . . . . . . . . . . . . . . 42

II.     PLAINTIFFS' OPPOSITION ADDS NOTHING TO THEIR REMAINING CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## TABLE OF AUTHORITIES

<u>Cases</u>

<u>ACA Fin. Guar. Corp. v. Advest, Inc.</u>
    512 F.3d 46, 62 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

<u>Amalgamated Bank v. Coca-Cola Co.</u>
    2006 WL 2818973, *3 (N.D. Ga. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22-23

<u>Amorosa v. Ernst & Young, LLP</u>
    2009 WL 4434943 (S.D. N.Y. November 30, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Ashcroft v. Iqbal</u>
    129 S.Ct. 1937 1949 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Atlas v. Accredited Home Lenders Holding Co.</u>
    556 F.Supp.2d 1142 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

<u>Basic, Inc. v. Levinson</u>
    485 U.S. 224, 246-47 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 41

<u>Bell Atl. Corp. v. Twombly</u>
    550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>
    116 F.3d 1364, 1371 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Bryant v. Avado Brands, Inc.</u>
    187 F.3d 1271, 1275-81, 1282 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 28

<u>Cal. Pub. Emp. Ret. Sys. v. Chubb Corp.</u>
    394 F.3d 126, 155 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>Condra v. PXRE Group, Ltd.</u>
    2009 WL 4893719 (2d Cir. December 21, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Countrywide Fin. Corp. Deriv. Litig.</u>
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

<u>D.E. & J Ltd. P'ship v. Conaway</u>
    284 F.Supp.2d 719, 731 (E.D. Mich. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Defer v. Raymond James Fin., Inc.</u>
    2009 WL 2971072, *9 (S.D. N.Y. September 17, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

DiLeo v. Ernst & Young
    901 F.2d 624, 629 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Desai v. General Growth Properties, Inc.
    2009 WL 2971065, *4 (N.D. Ill. September 17, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 27

Dunn v. Borta
    369 F.3d 421 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Durgin v. Mon
    2009 WL 3055216, *12 (S.D. Fla. September 21, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 3, 37

Durham v. Whitney Information Network, Inc.
    2009 WL 3783375, *18 (M.D. Fla. November 10, 2009) . . . . . . . . . . . . . . . . . . . 2, 40, 41

Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.
    2010 WL 154519, *6 (11th Cir. January 19, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 40

Ehlert v. Singer
    245 F.3d 1313 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Garfield v. NDC Health Corp.
    466 F.3d 1255, 1262 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Goodman v. Jabil Circuit, Inc.
    2010 WL 154519 (11th Cir. January 19, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Harris v. IVAX Corp.
    182 F.3d 799 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

Higginbotham v. Baxter Int'l Inc.
    495 F.3d 753, 756-57 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Horsley v. Feldt
    304 F.3d 1125, 1134 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Howard v. Everex Sys., Inc.
    228 F.3d 1057, 1061-63 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Atlas Mining Co. Sec. Litig.
    2009 WL 3151135 (D. Idaho September 25, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Cabletron Sys., Inc.
    311 F.3d 11, 40 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re ESpeed, Inc. Sec. Litig.
    457 F.Supp.2d 266 (S.D. NY. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 38

In re Huntington Bancshares Inc. Securities Litig.
    2009 WL 4666455 (S.D. Oh. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 33, 34, 40, 42

In re K-tel Int'l, Inc. Sec. Litig.
    300 F.3d 881, 894 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

In re Medicis Pharmaceutical Corp. Sec. Litig.
    2009 WL 4755406 (D. Ariz. December 2, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 30, 41-43

In re Navarre Corp. Sec. Litig.
    299 F.3d 735, 742 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re NDHealth Corp., Inc. Sec. Litig.
    2005 WL 6074918, *8, n.10 (N.D. Ga. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

In re New Century
    588 F.Supp.2d 1206, 1223-24 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 39

In re Novastar 2007 Sec. Litig.
    2008 WL 2354367 (W.D. Mo. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

In re Novastar 2007 Sec. Litig.
    2009 WL 2747281 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Pegasus Wireless Corp. Sec. Litig.
    657 F.Supp.2d 1320, 1325 (S.D. Fla. September 21, 2009) . . . . . . . . . . . . . . . . . . . . . . . 3, 36

In re Sanofi-Aventis Sec. Litig.
    2009 WL 3094957  (S.D. N.Y. September 25, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

In re Splash Tech. Holdings, Inc.
    160 F.Supp.2d 1059, 1073-74 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

In re Thornburg Mortgage, Inc. Sec. Litig.
    2010 WL 378300 (D. N.M. January 27, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

In re Tibco Software, Inc.
    2006 WL 1469654, at *21 (N.D. Cal. May 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Group, Inc.
    537 F.3d 527, 535 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Indiana State District Council of Laborers, et al. v. Omnicare, Inc., et al.
    583 F.3d 935, 944 (6th Cir. October 21, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 21

Isham v. Perini Corp.
    2009 WL 3403131 (D. Mass. October 07, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26, 33-34

Konkol v. Diebold, Inc.
    590 F.3d 390, 401-402 (6th Cir. December 22, 2009) . . . . . . . . . . . . . . . . . . . . . . . 1, 32, 40, 45

Makor Issues & Rights, Ltd. v. Tellabs, Inc.
    437 F.3d 588, 603 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mathews v. Centex Telemanagement, Inc.
    1994 WL 269734, at *8 (N.D. Cal. June 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit
    547 U.S. 71, 82 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

New York State Teachers' Retirement Systems v. Fremont General Corp.
    2009 WL 3112574 (C.D. Cal. September 25, 2009) . . . . . . . . . . . . . . . . . 3, 18, 23, 40, 41, 44

Next Century Commc'ns Corp. v. Ellis
    318 F.3d 1023, 1028 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Panasuk v. Steel Dynamics, Inc.
    2009 WL 5176193 (N.D. Ind. December 21, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Patel v. Parnes
    253 F.R.D. 531 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15, 19

Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings
    2009 WL 4282940 (S.D. Ind. December 1, 2009) . . . . . . . . . . . . . . . . . . 2, 32, 34, 39, 41-43

PR Diamonds, Inc. v. Chandler
    364 F.3d 671, 691 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Pugh v. Tribune Co.
    521 F.3d 686, 695 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Ross v. Walton
    2009 WL 3754136 (D. D.C. November 4, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Schwartz v. Celestial Seasonings, Inc.
    124 F.3d 1246, 1254 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

vii

Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.
    365 F.3d 353, 364 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 36, 37

Stevens v. Inphonic, Inc.
    2009 WL 3248222 (D. D.C. October 9, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 35

Tellabs, Inc. v. Makor Issues and Rights, Ltd.
    551 U.S. 308, 321 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11, 24, 26, 29, 36

Waterford Tp. General Employees Retirement System v. CompuCredit
    2009 WL 4730315 (N.D. Ga. December 4, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Winer Family Trust v. Queen
    503 F.3d 319, 335-36 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Zerger v. Midway Games, Inc., et al.
    2009 WL 3380653  (N.D. Ill. October 19, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20, 24, 44

Ziemba v. Cascade Int'l, Inc.
    256 F.3d 1194, 1202 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Zisholtz v. SunTrust Banks, Inc.
    2009 WL 3132907 (N.D. Ga. September 24, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 34

Statutes

15 U.S.C. § 78u-4(b)(1)-(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

15 U.S.C. § 78u-5(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15 U.S.C. § 78u-5(c)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

15 U.S.C. § 78u-5(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. 77z-2 I(A)-(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

15 U.S.C. 77z-2(I)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rules

FED. R. CIV. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 35, 37

FED. R. EVID. 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

H.R. Conf. Rep. No. 104-369 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## **INTRODUCTION**

In the approximate 150 days since Defendants filed their Motion to Dismiss, 62 additional banks have failed. *See*, Exh. A, FDIC Failed Bank List. As the list of bank failures grows, so does the number of securities fraud cases seeking to take advantage. In the face of this alarming increase in filings, courts remain steadfast in rigorously applying the PSLRA's exacting requirements to fulfill the statute's intent to "quickly dispose of those suits whose nuisance value outweighs their merits." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 82 (2006). Accordingly, it is not surprising that in that same approximate 150 days more than 25 proposed securities class actions have been dismissed and/or had their dismissal affirmed on appeal. *See*, *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 2010 WL 154519 (11th Cir. January 19, 2010) (affirming decision that investors failed to allege facts sufficient to support scienter and alleged misstatements were otherwise protected by PSLRA's safe harbor); *Konkol v. Diebold, Inc.*, 590 F.3d 390 (6th Cir. December 22, 2009) (affirming dismissal where allegations of confidential witnesses, accounting violations, receipt of financial reports, attendance at financial meetings, access to real-time software program and allegations of DOJ and SEC investigations were collectively insufficient to raise strong inference of scienter); *Condra v. PXRE Group, Ltd.*, 2009 WL 4893719 (2d Cir. December 21, 2009) (affirming dismissal for failure to properly plead scienter); *Indiana State District Council of Laborers, et al. v. Omnicare, Inc., et al.*, 583 F.3d 935 (6th Cir. October 21, 2009) (affirming dismissal based on PSLRA's safe harbor, a lack of causation and because many of the alleged misstatements were puffery); *In re Thornburg Mortgage, Inc. Sec. Litig.*, 2010 WL 378300 (D. N.M. January 27, 2010) (finding lack of scienter as to all but one

individual defendant); *Panasuk v. Steel Dynamics, Inc.*, 2009 WL 5176193 (N.D. Ind. December 21, 2009) (dismissing case based on PSLRA's safe harbor); *In re Huntington Bancshares, Inc. Sec. Litig.*, 2009 WL 4666455 (S.D. Oh. December 4, 2009) (granting motion to dismiss where investors failed to sufficiently plead alleged misstatements with particularity and scienter); *Waterford Tp. General Employees Retirement System v. CompuCredit*, 2009 WL 4730315 (N.D. Ga. December 4, 2009) (dismissing case based on lack of particularity, scienter and loss causation); *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings*, 2009 WL 4282940 (S.D. Ind. December 1, 2009) (holding that shareholders failed to sufficiently identify misleading statements and plead scienter); *In re Medicis Pharmaceutical Corp. Sec. Litig.*, 2009 WL 4755406 (D. Ariz. December 2, 2009) (dismissing case due to insufficient confidential witness testimony and lack of scienter); *Amorosa v. Ernst & Young, LLP*, 2009 WL 4434943 (S.D. N.Y. November 30, 2009) (holding that stockholders failed to adequately plead loss causation); *Durham v. Whitney Information Network, Inc.*, 2009 WL 3783375 (M.D. Fla. November 10, 2009) (dismissing for failure to sufficiently plead scienter and loss causation); *Ross v. Walton*, 2009 WL 3754136 (D. D.C. November 4, 2009) (holding that plaintiffs failed to sufficiently plead scienter and loss causation); *Zerger v. Midway Games, Inc., et al.*, 2009 WL 3380653 (N.D. Ill. October 19, 2009) (dismissing complaint based on alleged misrepresentations constituting puffery and lack of scienter); *Stevens v. Inphonic, Inc.*, 2009 WL 3248222 (D. D.C. October 9, 2009) (holding that stock purchasers' failed to assert strong inference of scienter in dismissing complaint, in part); *Isham v. Perini Corp.*, 2009 WL 3403131 (D. Mass. October 07, 2009) (holding that complaint's conclusory statements that executive defendants "were privy to confidential and proprietary

2

information," had access to unspecified "corporate documents" and attended unspecified

"management and/or board of directors meetings" failed to give rise to required strong

inference of scienter); *New York State Teachers' Retirement Systems v. Fremont General*

*Corp.*, 2009 WL 3112574 (C.D. Cal. September 25, 2009) (dismissing complaint where

facts were insufficiently plead and particularized and scienter was lacking); *In re Sanofi-*

*Aventis Sec. Litig.*, 2009 WL 3094957  (S.D. N.Y. September 25, 2009) (rejecting

plaintiffs' proffered misstatements as puffery and finding lack of scienter); *In re Atlas*

*Mining Co. Sec. Litig.*, 2009 WL 3151135 (D. Idaho September 25, 2009) (dismissing

complaint in the absence of sufficiently plead falsity, materiality and scienter); *Zisholtz v.*

*SunTrust Banks, Inc.*, 2009 WL 3132907 (N.D. Ga. September 24, 2009) (holding that

plaintiffs' confidential witness' lack of direct contact with defendants prohibited sufficient

allegations of scienter); *In re Pegasus Wireless Corp. Sec. Litig.*, 657 F.Supp.2d 1320 (S.D.

Fla. September 21, 2009) (finding that group pleading could not render allegations

sufficiently particular and investors failed to adequately raise required strong inference of

scienter); *Durgin v. Mon*, 2009 WL 3055216 (S.D. Fla. September 21, 2009) (dismissing

securities class action based on lack of scienter); *Defer v. Raymond James Fin., Inc.*, 2009

WL 2971072 (S.D. N.Y. September 17, 2009) (dismissing case for lack of pleading

particularity and scienter); *Desai v. General Growth Properties, Inc.*, 2009 WL 2971065

(N.D. Ill. September 17, 2009) (granting motion to dismiss, in part, based on puffery).

     As outlined herein, Plaintiffs' Complaint is due to join this list.

**STANDARD OF REVIEW**

GENERAL – RULE 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556).

> [Moreover, this standard] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

*Iqbal*, 129 S.Ct. at 1949-50. Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* While legal conclusions can provide the "framework of a complaint, they must be supported by factual allegations." *Id.* Thus, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Finally, although a court is generally limited to the four corners of the complaint when considering a motion to dismiss, the Eleventh Circuit has undisputedly approved the practice of taking judicial notice of public filings with the SEC underlying allegations of securities fraud. *See, Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1275-81 (11th Cir.

4

1999). The Eleventh Circuit has also adopted the "incorporation by reference" doctrine, which allows the consideration of *any* document attached to a motion to dismiss if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See*, *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also*, 15 U.S.C. § 78u-5(e) (instructing courts in securities cases to consider, on a motion to dismiss, any "statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant."). Lastly, FED. R. EVID. 201(b) provides an additional mechanism by which a court may judicially notice materials. It authorizes courts to take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[1] *See*, *Bryant*, 187 F.3d at 1277.

SPECIFIC – RULE 9 AND THE PSLRA

Complaints alleging securities fraud are subject to even more specific rules of pleading – the requirements of FED. R. CIV. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). A plaintiff meets Rule 9(b)'s requirement only by setting forth in the complaint "'(1) *precisely* what statements were made in what documents or oral representations (or what omissions were made), and (2) the time and place of each such statement and the *person responsible* for making the same (or, in the case of omissions, not making), and (3) the content of such statements and *the manner in which they misled* the plaintiff, and (4) *what the defendants obtained* as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross &*

---

[1] The Court's ability to judicially notice Defendants' supportive materials is further established in Defendants' Opposition to Motion to Strike (D.E. 286) (filed February 8, 2010).

*Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997)) (internal quotation omitted) (emphasis added)); FED. R. CIV. P 9(b).

Imposed upon this rule of civil procedure, the demanding PSLRA requires that a plaintiff alleging that an untrue or misleading statement has been made or omitted: (1) "*specify each statement* alleged to have been misleading [and] *the reason or reasons why* the statement is misleading;*"* and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind[.]" *Tellabs, Inc. v. Makor Issues and Rights, Ltd.,* 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u-4(b)(1)-(2) (emphasis added)).

## ADDITIONAL STATEMENTS OF UNDISPUTED FACTS

Given the suggestion by Plaintiffs that their allegations are sufficient because Colonial Bank is alleged to have been, at its core, a mortgage originator like Countrywide and Washington Mutual, it is necessary to add two final statements:

1.      From its inception in 1981 until its closure in August 2009, Colonial Bank was a "general commercial banking business." Compl., ¶ 2.

2.      As a part of this "general" banking business, Colonial provided diversified services to its banking customers, including standard retail and commercial banking, wealth management services, insurance products and, at issue here, some level of mortgage origination. *See, e.g.,* Form 10-K, Subsidiary Bank, p. 1 (previously submitted as Exh. 17 to Defendants' Motion to Dismiss).

**ARGUMENT**

Plaintiffs' Preliminary Statement summarizes the allegations in Plaintiffs' Complaint, emphasizing that Colonial Bank executives artificially and deceitfully inflated the market value of the Company's stock in order to "fuel [the Company's] rapid growth." Plaintiffs' Opposition, p. 1. However, at the most general level, this touted motive exemplifies the failure inherent in Plaintiffs' Complaint, as the desire for corporate success has never been held sufficient to support a securities fraud case. *See, e.g., Defer v. Raymond James Fin., Inc.*, 2009 WL 2971072, *9 (S.D. N.Y. September 17, 2009) (holding that "allegation that defendants' motive was merely to increase or maintain profit was insufficient because generalized motive could otherwise be imputed to any for-profit endeavor"); *In re Huntington Bancshares Inc. Securities Litig.*, 2009 WL 4666455, *20 (S.D. Oh. 2009) (recognizing that all corporate managers share a desire for their companies to be successful, but that desire does not demonstrate a motive for fraud); *In re Sanofi-Aventis Sec. Litig.*, 2009 WL 3094957, *6-*7 (S.D. N.Y. September 25, 2009) (noting that allegations that defendant was motivated to commit securities fraud by, among other things, desire to keep stock prices high was insufficient to raise an inference of scienter).

Similarly, Plaintiffs' allegedly supportive conduct – that in furtherance of their desire for growth, Defendants' "placed enormous bets" on mortgage loans – equally highlights a fundamental and fatal error in the Complaint. Plaintiffs' Opposition, p. 1. Plaintiffs' case is entirely based on corporate "bets" that did not pay off. Securities fraud, however, requires more than a failed strategy or business plan. These kind of allegations – that past corporate decisions failed to provide success down the road – amount to a classic case of fraud by hindsight, a practice long rejected by federal courts. *See, e.g., ACA Fin.*

*Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 62 (1st Cir. 2008); *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 742 (8th Cir. 2002).

Even ignoring Plaintiffs' overarching general failures of premise, their Complaint suffers from the most basic of specific shortcomings. Despite its sprawl and repetition, Plaintiffs' Opposition does nothing but reinforce these insufficiencies, just like the legion of cases recently dismissing virtually identical allegations.

As a threshold matter, Plaintiffs' Complaint still fails to identify any alleged misstatements with the particularity demanded by the PSLRA. Plaintiffs' reliance on group pleading to satisfy the statute's heightened burdens is unsupported and, even if permitted, still presents a prototypical case of "puzzle pleading."

In addition, Plaintiffs wholly fail to plead facts raising a strong inference of scienter. All but conceding the lack of specificity otherwise required by the PSLRA as to each defendant, Plaintiffs almost exclusively rely on the antiquated "core operations" doctrine, whose viability post-PSLRA is in severe doubt and whose allowance here would be in direct contravention to recent courts' repeated rejection of a similar doctrine seeking to skirt the statute's express pleading-for-each-defendant requirements. Even if the core operations doctrine were viable, Plaintiffs fail to properly plead it. Absent the crutch of this likely defunct theory, Plaintiffs can only offer (1) a handful of shaky confidential witnesses – none of whom can identify a single Defendant as having the specific knowledge of fraud required; (2) unsubstantiated allegations of GAAP and Sarbanes-Oxley violations – the exact type routinely rejected by courts; (3) suggestions of a TARP-related misrepresentation and omission – despite the dispositive cautionary language accompanying the statement; and (4) an economically irrational suggestion that scienter is

8

somehow supported by Defendants' own *purchase* of Colonial stock throughout the proposed Class Period at the trumped-up prices their alleged scheme temporarily sustained.[2]

## I.   PLAINTIFFS' 10b-5 CLAIM CANNOT MEET ITS STATUTORY REQUIREMENTS.

In satisfying the first two elements of a 10b-5 claim (a (1) *misstatement* of a (2) *material* fact), a plaintiff must do more than generically identify the material misstatement or omission. *See, Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). To survive a motion to dismiss, a plaintiff must provide the court and the defendants the "who, what, when, where, and how" of each. *Garfield*, 466 F.3d at 1263.

### A.   PLAINTIFFS HAVE NOT IDENTIFIED THEIR ALLEGED MATERIAL MISSTATEMENTS WITH SPECIFICITY.

Plaintiffs' Opposition suggest they have identified specific misstatements through the use of the group pleading doctrine and the extensive quotation of some portion of virtually every one of Colonial's public filings during the proposed Class Period.[3] This

---

[2] Defendant Moody is due to be dismissed on the additional grounds that she left Colonial's employment before the proposed Class Period even began. *See* Compl., ¶ 387(n). Similarly, Defendant Miller passed away on July 11, 2009, *see* Suggestion of Death (filed July 14, 2009) (D.E. 159), and Defendants are unaware of any substitution being made. Accordingly, while Defendants are not responding on behalf of Defendant Miller, they again reserve the right to do so if and when that ever becomes necessary.

[3] The group pleading doctrine in securities litigation varies somewhat among the circuits, but it can be broadly characterized as a presumption of group responsibility for statements and omissions in order to satisfy the particularity requirements for pleading fraud under FED. R. CIV. P. 9(b). *See, Phillips v. Scientific-Atlanta*, 374 F.3d 1015, 1018 (11th Cir. 2004) (discussing but not adopting doctrine). Where allowed, it permits plaintiffs to satisfy the PSLRA's "who" requirement by attributing collective statements (such as press releases or SEC filings) to individuals with direct involvement in the everyday business of the company. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004) (rejecting doctrine post-PSLRA). While Plaintiffs' Opposition matter-of-factly states that "Plaintiffs are entitled to rely on the group pleading doctrine in this Circuit," *see,*

considerable "cut and paste," however, fails, at a minimum, to appropriately identify the specific "who," "what" and "why" requirements of the PSLRA.

### 1. Plaintiffs should be prohibited from using group pleading to identify the "who."

The "PSLRA requires plaintiffs to specify the role of *each defendant*, demonstrating *each* defendant's involvement in misstatements and omissions." *Winer Family Trust v. Queen,* 503 F.3d 319, 335-36 (3d Cir. 2007) (holding that group pleading did not survive the passage of the PSLRA) (emphasis added). Relying on the same defendant-specific requirements expressly outlined in the PSLRA and its legislative history, *see*, 15 U.S.C. § 78u-4(b)(1)-(2); H.R. Conf. Rep. No. 104-369, at 28 (1995), both the Fifth and Seventh Circuit have joined the Third Circuit in directly rejecting the group pleading doctrine post-PSLRA.[4] *See*, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 603 (7th Cir. 2006), *rev'd on other grounds,* 551 U.S. 308 (2007); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364 (5th Cir. 2004); Defendants' Motion to Dismiss, p. 56, n. 7 (providing string cite of district court decisions rejecting

---

Plaintiffs' Opposition, p. 45, n. 17, as explained, *infra*, that position is contrary to established law in the Third, Fifth and Seventh Circuit, as well as in conflict with those courts' interpretation of Eleventh Circuit precedent.

[4] The Tenth Circuit continues to allow the group pleading doctrine, although it has not explicitly discussed whether it survives the PSLRA. *See Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1254 (10th Cir. 1997). The Ninth Circuit seemingly allows for use of the doctrine, *see, Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1061-63 (9th Cir. 2000), although, post-*Tellabs*, "the majority of reported district court cases in the Ninth Circuit appear to hold that the doctrine is no longer viable." *In re New Century,* 588 F.Supp.2d 1206, 1223-24 (C.D. Cal. 2008) (internal citations omitted). Post-PSLRA, the First and Sixth Circuits have recently and expressly declined to decide the issue. *See, City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 689-90 (6th Cir. 2005); *In re Cabletron Sys., Inc.,* 311 F.3d 11, 40 (1st Cir. 2002). The Fourth Circuit has never addressed the issue. *See, Dunn v. Borta,* 369 F.3d 421 (4th Cir. 2004).

doctrine); *but see*, Plaintiffs' Opposition, p. 45, n. 45 (citing various district court cases applying doctrine).

In *Southland*, the Fifth Circuit rejected group pleading, holding that the "PSLRA references to 'the defendant' may only reasonably be understood to mean 'each defendant' in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone in several separate actions." 365 F.3d at 364. Likewise, the Seventh Circuit, citing *Southland,* rejected the group pleading doctrine as inconsistent with the PSLRA, holding that "plaintiffs must create this [required] inference with respect to each individual defendant in multiple defendant cases." *Tellabs,* 437 F.3d at 603.

While the Eleventh Circuit has not *expressly* abolished the doctrine, it has certainly suggested that group pleading did not survive the enactment of the PSLRA, acknowledging that "the most plausible reading in light of congressional intent is that a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating *each* defendant's state of mind regarding his or her alleged violations." *Phillips,* 374 F.3d at 1018. Notably, both the Third and Seventh Circuits cited *Phillips* as support for their rejection of the doctrine. *See, Winer,* 503 F.3d at 336-37 (finding that *Phillips* "suggested the group pleading doctrine [did] not survive the enactment of the PSLRA"); *Tellabs,* 437 F.3d at 603 (relying on reasoning in *Phillips* to reject doctrine).

Based on these decisions, and the clear suggestion in *Phillips*, Plaintiffs should be prohibited from using group pleading here. While they concede that group pleading cannot be used to prove scienter in "step three" of the Rule 10b analysis, *see*, Plaintiffs' Opposition, p. 61-62, n. 26, Plaintiffs doggedly maintain that the doctrine should

11

nonetheless be available in "step one." *See*, Plaintiffs' Opposition, p. 53, n. 23. This "some of the time" argument, however, is permanently flawed: "Where individual defendants are the target of the fraud allegations, it would be nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that 'the defendant' made the statement or omission." *D.E. & J Ltd. P'ship v. Conaway,* 284 F.Supp.2d 719, 731 (E.D. Mich. 2003). Most fundamentally, if Plaintiffs claim an ability to plead scienter as to each individual Defendant with the specificity required in the third step of the PSLRA analysis, they should not need to resort to the group pleading doctrine in attempting to satisfy the first. Accordingly, identically to the majority of circuit courts directly addressing the issue and the implicit instruction of the Eleventh Circuit, this Court should reject Plaintiffs' efforts to satisfy the PSLRA's specific and heightened pleading requirements via the group pleading doctrine. With such a prohibition, the vast majority of Plaintiffs' unattributed misstatements fall short.[5] *See*, Defendants' Motion to Dismiss, pp. 54-57.

> ### 2.   Plaintiffs' allegations remain prototypical "puzzle pleading" and provide no guidance as to the "what" or "why."

Plaintiffs agree that dismissal on "puzzle pleading" grounds is appropriate where a court is "unable to discern (1) *what* statements were alleged to be false and misleading; and (2) the alleged facts supporting *why* alleged misstatements are false." Plaintiffs' Opposition, p. 51 (internal citation omitted). As Plaintiffs' Complaint fails both these prongs, it is due to be dismissed. *See*, Defendants' Motion to Dismiss, pp. 58-60.

---

[5] Such a rejection would eliminate every allegation against Defendants Hicks and Moody. Plaintiffs' directly attribute but a single alleged misstatement to Defendant Moore, *see*, Compl., ¶ 311, and twenty-two to Defendant Lowder. *See, e.g.*, Compl., ¶¶166, 169, 171, 184, 187, 189, 191, 193, 195, 197, 199, 215, 217, 219, 222, 224, 242, 263, 266, 303, 305, 324. This direct attribution, however, is still insufficient for a variety of reasons. *See, infra*, Part I-A-2, Part I-B, Part I-C.

### a.    Plaintiffs cannot identify the "what."

Defendants' Motion to Dismiss cites two cases directly on point – *In re Novastar 2007 Securities Litigation*, 2009 WL 2747281 (8th Cir. 2009); and *Patel v. Parnes*, 253 F.R.D. 531 (C.D. Cal. 2008). In each of the cases, the district court dismissed securities class action complaint for failure to *specifically* to identify what statements within each partially reproduced company document were alleged to be false or misleading, despite the regular use of highlighting and italicizing.  Most appropriately summarizing this collective rationale, the Eighth Circuit, in affirming the *Novastar* dismissal, explained:

> In support of his contention, [plaintiff] directs our attention to a section of his complaint titled, 'Defendants' False and Misleading Statements Issued During the Class Period[.]' . . . This thirty-six page section reproduces, either in their entirety or lengthy excerpts from, press releases, SEC filings, and transcripts of conference calls made by [the corporate defendant] and the individual defendants during the class period. Absent from this section (and from every other section of the complaint), however, is any indication as to *what* specific statements within these communications are alleged to be false or misleading. This practice does not satisfy the PSLRA's requirement of pleading with sufficient particularity because it does not identify 'what' statements were allegedly false or misleading.

2009 WL 2747281, *5 (internal citations omitted).

While Plaintiffs seek to skirt *Novastar* by suggesting the case turned on a single three-page quote from a press release (*i.e.*, because some of Plaintiffs' citations are not quite as long, they are somehow more specific), a thorough review of the district court opinion and the underlying complaint make its direct application to this case clear. *See, In re Novastar 2007*, 2008 WL 2354367 (W.D. Mo. 2008). The *Novastar* complaint, identically to Plaintiffs' here, was littered with block quotes from various SEC filings and

13

press releases, many accompanied by highlighted text. *See*, Exh. B, *In re Novastar 2007*,

Consolidated Complaint for Violation of the Federal Securities Laws, pp. 34-89 (filed

October 19, 2007). The district court's dismissal of that complaint, and the Eighth Circuit's

affirmation, was not premised on a single, lengthy quotation of alleged misstatement. *See*,

2008 WL 2354367, *2-*4; 2009 WL 2747281, *5, n. 3 (citing three-page press release as

mere "example" of plaintiff's failure). Rather, it was based on the plaintiff's repeated

attempts in opposing the defendants' motion to dismissal to "pick isolated threads and

snippets from the Complaint to create an illusion of detail and insinuate the existence of

fraud, which in turn . . . made it exceedingly difficult for the Court to conduct the analysis

required by law." 2008 WL 2354367, *2.

*Patel* is equally on all fours here. There, the district court dismissed the complaint

as a classic example of prohibited puzzle-pleading where the plaintiffs quoted extensively

from public statements made by the defendants throughout the class period, but did so

without specifying the particular aspects within those statements that were purportedly

false or misleading, despite the fact that some of the quoted portions were italicized and in

bold typeface.[6] 253 F.R.D. at 551-52. In dismissing the complaint, the district court noted

that "[t]his style of pleading 'renders it exceedingly difficult to discern precisely which

statements are alleged to be misleading[]'" and, accordingly, held that the complaint failed

the PSLRA's exacting requirements.[7] *Id.* at 551 (quoting *In re Splash Tech. Holdings, Inc.*,

---

[6] Unlike Plaintiffs' half-hearted attempt to distinguish *Novastar*, Plaintiffs make no such effort to distinguish *Patel*, and rightfully so. Their tact here is all but identical to the tact taken there. *Compare*, Exh. C, *Patel*, Consolidated Class Action Complaint for Violation of Securities Laws, pp. 29-60 (filed January 23, 2008) *with* Compl., pp. 62-105.

[7] Both *Novastar* and *Patel* equally rejected their respective plaintiff's efforts in post-complaint briefing to attempt to identify and categorize particular statements from their

160 F.Supp.2d 1059, 1073 (C.D. Cal. 2001).[8]

Here, just as in *Novastar* and *Patel*, it is impossible to determine which allegations Plaintiffs allege are false. For example, taking the first allegation of misstatement cited in Plaintiffs' Opposition:

> ***The above nonperforming loans represent all material credits for which management has significant doubts as to the ability to the borrowers to comply with the loan repayment terms. Management also expects that the resolution of these problem credits will not materially impact future operating results, liquidity or capital resources.*** The balance of nonperforming assets can fluctuate due to changes in economic conditions, nonperforming assets obtained in acquisitions and the disproportionate impact of larger assets. Historically, Colonial has experienced favorable levels of nonperforming assets and other credit quality measures as a result of management's consistent focus on maintaining strong underwriting standards, collection activities, work-out strategies and risk management efforts.
>
> A loan is considered impaired, based on current information and events, if it is probable that the Company will be unable to collect the scheduled payments of principal or interest when due according to the contractual terms of the loan agreement. As mentioned previously, Colonial's credit risk

---

complaints' original smattering of quotations. *See, Novastar*, 2009 WL 2747281, *5 (stating that "[plaintiff] appears to recognize this [lack of "what"] defect, as his brief to this Court identifies specific statements within these communications and alleges that they are false or misleading. Identifying specifically the false or misleading statements for the first time on appeal, however, does not excuse a litigant's failure to comply with the pleading requirements under the PSLRA.") (internal citations omitted); *Patel*, 253 F.R.D. at 553 (holding that "[t]he organization [the] plaintiffs offer in their opposition brief does not cure the pleading deficiencies in their complaint. To the contrary, it highlights plaintiffs' failure to plead defendants' purportedly false and misleading statements with specificity as required by the PSLRA."). That logic and result should be applied with equal force here.

[8] *In re Splash* is equally on point, but Defendants were unable to secure a copy of that complaint. However, that decision makes clear that it suffered from the same ambiguities illustrated in *Novastar* and *Patel*. *See, In re Splash*, 160 F.Supp.2d at 1074 (rejecting plaintiffs' complaint where it was "left . . . up to defendants and the court to try to figure out exactly what the misleading statements [were], and to match the statements up with the reasons they [were] false or misleading.")

management area performs detailed verification and testing to ensure appropriate identification of impaired loans and that proper reserves are held against these loans. The recorded investment in impaired loans at March 31, 2007 and December 31, 2006 was $22.1 million and $9.9 million, respectively, and these loans had a corresponding valuation allowance of $3.4 million and $2.3 million, respectively.

Management, through its loan officers, internal credit review staff and external examinations by regulatory agencies, has identified approximately $168.2 million of loans which have been placed on a classified loan list excluding nonaccrual, other real estate, repossessions and loans that are contractually past due 90 days or more at March 31, 2007. The status of all material classified loans is reviewed at least monthly by loan officers and quarterly by BancGroup's centralized credit administration function. In connection with such reviews, collateral values are updated where considered necessary. If collateral values are judged insufficient or other sources of repayment are deemed inadequate, the amount of reserve held is increased or the loan is charged down to estimated recoverable amounts. As of March 31, 2007, substantially all of these classified loans are current with their existing repayment terms. Management believes that classification of such loans well in advance of their reaching a delinquent status allows the Company the greatest flexibility to correct problems and provide adequate reserves. ***Given the level of reserves and the demonstrated ability of the borrowers to comply with the existing repayment terms, management believes any exposure from these loans has been adequately addressed.***

Compl., ¶ 178 (emphasis in original).[9] This statement is alleged to be "false and misleading

because . . . Colonial's underwriting standards had deteriorated significantly, such that its

loan portfolio was increasingly made up of nonperforming loans to a material extent not

disclosed to the investing public, and that the Company's ALL was therefore improper and

---

[9] Plaintiffs' Opposition purports to cite and partially quote Paragraph 178 of their Complaint, although the portions highlighted in that Opposition vary materially from those originally emphasized in their Complaint. *Compare*, Compl. ¶ 178 *with*, Plaintiffs' Opposition, pp. 17-18. Defendants have duplicated here the version contained in Plaintiffs' Complaint.

inadequate" *Id.* at ¶ 179. From this mass, Defendants are provided no indication of what *specific* statement is allegedly false. Focusing on just the highlighted text – is the misstatement that the listed loans did not represent all the necessary material credits for which there was doubt; that management expected these problem credits to resolve; that that expected resolution could be achieved without material impact to future operating results; that the borrowers had the demonstrated  ability to comply with their repayment terms; *and/or* that any exposure from these loans had been adequately addressed? The ambiguity grows exponentially if Defendants are forced to consider the remaining, unemphasized statements. This lack of specific identification is the essence of puzzle pleading and the exact reason similarly structured complaints are routinely dismissed.

### b.        Plaintiffs cannot identify the "why."

In suggesting satisfaction of 10b's "why" requirement, Plaintiffs argue that "[i]mmediately following each misstatement, the Complaint provides *detailed* reasons for why each statement is false." Plaintiffs' Opposition, p. 53 (emphasis added). A detailed review of the Complaint, however, suggests that every single allegation of misstatement is followed by one of four rarely varied, generic allegations that the statement preceding it "was false and misleading because Defendants knew, or were reckless in not knowing, that":

> Colonial's underwriting standards had deteriorated significantly, such that its loan portfolio was increasingly made up of nonperforming loans, but failed to disclose this material information to the investing public.

*See, e.g.,* Compl., ¶ 167 (underline added).[10]

---

[10] Plaintiffs do offer at least three minor variations to this rote allegation. *See, e.g.,* Compl., ¶ 172 (replacing last "but failed . . . investing public" clause with "to a material extent not

> Colonial had originated subprime loans, and that Colonial's underwriting standards had deteriorated significantly, such that its loan portfolio was increasingly made up of nonperforming loans, but failed to disclose this material information to the investing public.

*See, e.g.,* Compl., ¶ 188.

> [T]he goodwill Colonial had recognized in connection with its bank acquisitions was impaired, but failed to disclose this material information to the investing public.

*See, e.g.,* Compl., ¶ 235.

> Colonial's underwriting standards had deteriorated significantly, such that the risk of losses was significantly increased, but failed to disclose this material information to the investing public.

*See, e.g.,* Compl., ¶ 252. In attempting to provide the required specifics as to "why" each of their alleged misstatements was misleading, the vast majority of Plaintiffs' Complaint does nothing more than regurgitate one of these generalized statements.[11] *See, New York State Teachers' Retirement Systems v. Fremont General Corp.*, 2009 WL 3112574, *6 (C.D. Cal. September 25, 2009) (finding basis for dismissal in plaintiff's failure to

---

disclosed to the investing public, and that this would eventually result in increased NCOs."); Compl., ¶ 179 (replacing last "but failed . . . investing public" clause with "to a material extent not disclosed to the investing public, and that the Company's ALL was therefore improper and inadequate."); Compl., ¶ 216 (replacing last "but failed    . . . investing public clause" with "to a material extent not disclosed to the investing public, resulting in the inflation of Colonial's earnings and assets.").

[11] By Defendants' count, 44 of Plaintiffs' 67 alleged misstatements fall victim to this fatal flaw. *See,* Compl., ¶¶ 169, 178, 180, 184, 187, 191, 193, 195, 197, 199, 203, 205, 207, 209, 211, 215, 217, 219, 222, 224, 228, 232, 234 236, 245, 247, 257, 260, 263, 266, 271, 274, 276, 278, 284, 290, 292, 294, 300, 313, 315, 321, 324, 325. The factual "support" for the 23 others all comes from generalized confidential witness testimony. *See,* Compl., ¶¶ 166, 171, 175, 189, 230, 240, 242, 249, 251, 253, 255, 257, 268, 280, 282, 287, 296, 298, 303, 305, 307, 311, 317, 319. Even if this purported "support" can be deemed sufficient to answer "why," it certainly fails for other reasons. *See, infra,* Part I-C-1 (outlining confidential witnesses' inability to satisfy scienter).

specifically plead which factual allegations were intended to establish falsity and scienter in relationship to each challenged misstatement). Accordingly, they are of no value.

Patel is again directly on point. In Patel, the court noted that all of the plaintiff's "why" allegations followed the same pattern:

> [F]or a particular time period, [the] plaintiffs cite one or more press releases, a conference call, and [company] SEC filings; they then allege that the positive statements, assurances and forecasts made' during the relevant period were false and misleading based on one or more of a handful of generic reasons: either the company's sales forecasts had no reasonable basis in fact; [and/or] its geographic diversification strategy was overstated; [and/or that the company's] actual sales results were not meeting projections; [and/or] loan sales had dropped; [and/or] that the company had experienced a significant increase in cancellation rates in Florida.

253 F.R.D. at 551-52; see also, Novastar, 2009 WL 2747281, *5 (8th Cir. 2009) (stating that the plaintiff's complaint failed because it "merely contain[ed] a litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false."). In rejecting the plaintiff's efforts and dismissing the complaint, the court determined that the allegations regarding falsity did not tie those reasons to particular statements; instead, the reasons appeared to apply generally to the statements quoted in the preceding paragraphs. Id. Plaintiffs' employment of an identically failing strategy warrants dismissal here.

**B.     PLAINTIFFS CANNOT IDENTIFY AN ACTIONABLE MISREPRESENTATION.**

**1.     Plaintiffs' alleged misstatements include non-actionable puffery.**

The second prong of the 10b inquiry requires that every alleged misrepresentation be one of *material* fact. 15 U.S.C. § 78u-5(c)(1). In order to be material, a statement cannot be one of mere corporate opinion or expectation. Rather, the alleged fraud must be based

upon a statement capable of "empirical verification[.]" *Next Century Commc'ns Corp. v.*

*Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003). Accordingly, "[s]ubjective characterizations of

a company's current performance or predictions about future performance, absent a false

misstatement of fact, are generally not actionable[:]"

> Thus, statements that a company's growth is currently or is
> expected to be 'strong,' . . . or that a company is 'recession-
> resistant,' . . . or that a company expects a '10% to 30%
> growth rate over the next several years' and is 'poised to
> carry the growth and success . . . well into the future,' . . . or
> that a company has 'the combination of people and products
> in place to be successful' and is 'now positioned to
> effectively compete,' . . . are insufficient as a matter of law to
> state a valid securities fraud claim.

*Amalgamated Bank v. Coca-Cola Co.*, 2006 WL 2818973, *3 (N.D. Ga. 2006) (internal

citations omitted). Courts have reasoned that such statements of "puffery" fail the

materiality requirement of Rule 10b-5. Stated differently, these kind of unverifiable

characterizations of corporate performance do not "alter the total mix of facts available to

an investor[.]" *Amalgamated Bank*, 2006 WL 2818973, *3 (citing *Basic, Inc. v. Levinson*,

485 U.S. 224, 246-47 (1988)); *Zerger v. Midway Games, Inc., et al.*, 2009 WL 3380653

(N.D. Ill. October 19, 2009) (dismissing securities case, in part, based on alleged

misrepresentations constituting puffery) (internal citations omitted). Thus, "even where a

statement is intentionally misleading as to the speaker's true opinion or prediction, it may

be held immaterial as a matter of law because no reasonable investor would rely upon it."

*Id.*

    In *Amalgamated Bank*, the district court dismissed the plaintiffs' complaint, in part,

after determining that many of the plaintiffs' allegations of misrepresentation constituted

non-actionable puffery. 2006 WL 2818973, *5 (internal citation omitted). These rejected

20

statements consisted of a variety of self-serving and unabashedly optimistic characterizations of the company's present and future fundamental operations, financial health, marketing, global operations and distributor relationships.[12] *Id.* at *5-*8. Some time later, however, at the end of the proposed class period, the defendants' alleged "house of cards" came crashing down when they revealed that the company did not have a winning business strategy and its management had not orchestrated a successful business turnaround. *Id.* at *5. Instead, investors learned that contrary to the defendants' false representations, the company was plagued with fundamental and highly negative business conditions that had never been corrected. *Id.*

In examining these statements, the district court held that there could be "little doubt" that these alleged misrepresentations were "no less the 'rosy affirmation[s] commonly heard from corporate managers and numbingly familiar to the marketplace' than the statements that were readily dismissed in . . . other cases examining the doctrine of immaterial puffery." *Id.* at *5 (internal citations omitted); *see also, Indiana State District Council of Laborers, et al. v. Omnicare, Inc., et al.*, 583 F.3d 935, 944 (6th Cir. October 21, 2009) (holding that vague predictions about positive results were "so banal and ubiquitous that [they] [could not] engender reliance by reasonably investors.") (internal citations omitted). Importantly, because the statements were not capable of empirical verification,

---

[12] Exemplar statements included those that the company (1) had "successfully returned [itself] to rapid and sustainable . . . growth"; (2) had "the right leadership" and was "confident [it] would meet its 11%-12% . . . growth target" in the "very bright future" ahead; (3) had a "crystal clear strategy" that was "being well-executed"; (4) "had achieved accelerated growth" in earnings by restoring the company's marketing system to "health"; (5) had "reasserted marketing innovation and excellence worldwide"; (6) had made "solid improvements" in marketing; (7) "had marketing at a much higher level in the first quarter" of 2003 than it had in the past; (8) "remain[ed] extremely well placed to take advantage of" market changes; and (9) was "taking the necessary actions to see growth". *Id.* at *5-*8.

the court held that they could not provide a basis for securities fraud, and the complaint was due to be dismissed. *Id.* at *7 (internal citations omitted).

Identically here, the majority of Plaintiffs' alleged misrepresentations (to the extent they can even be identified) must be rejected as a basis for liability because they merely state corporate optimism and would be impossible to objectively verify. Notably, Plaintiffs cite *Amalgamated Bank* in support of their claims, agreeing that subjective characterizations of fact are generally not actionable but maintaining – which Defendants do not dispute – that such statements *may* become actionable when accompanied by a misstatement of fact. *See*, Plaintiffs' Opposition, pp. 43-45. However, Plaintiffs confuse what constitutes a "fact." As *Amalgamated Bank* and any dictionary make clear, "facts" are those statements that can be objectively verified and empirically measured. While Plaintiffs cite to a number of "core misrepresentations and omissions . . . center[ing] on then-current and historical facts about Colonial's financial health," they improperly focus on the verb tense in the statements rather than the unverifiable information they relay, essentially suggesting that any statement of a present condition, no matter how subjectively it is relayed, is necessarily a "fact." For example, Plaintiffs emphasize the following in asserting them as "false statements of fact":

- "Colonial *has maintained* conservative underwriting . . . .";

- "The Company's credit risk management process *is centered* on comprehensive credit and underwriting policies and procedures";

- "[O]ur weighted loan-to-value rations in all categories *are* in very good shape";

- "Colonial's capital rations *remain* solid and *are* significantly above the well-capitalized minimums . . . the coverage represented by our excess capital reserves *are* very healthy."

Plaintiffs' Opposition, p. 44 (emphasis in original). However, puffery under the PSLRA is

22

not conditioned upon the optimistic statement being forward-looking and can certainly encompass optimistic statements dealing with past and present conditions. *See, e.g., Amalgamated Bank*, 2006 WL 2818973, *5, *8 (rejecting past tense verbiage such as had *"achieved* accelerated" growth in earnings and *"reasserted* marketing . . . excellence worldwide" and present tense statements such as "*taking* the necessary actions to see growth" as puffery); *see also*, Defendants' Motion, pp. 92-94.

Instead, the proper focus on Plaintiffs' cited misstatements should be on the subjective nature of the claims:

- "Colonial has maintained *conservative* underwriting . . . .";

- "The Company's credit risk management process is centered on *comprehensive* credit and underwriting policies and procedures";

- "[O]ur weighted loan-to-value rations in all categories are in *very good* shape";

- "Colonial's capital rations remain *solid* and are significantly above the well-capitalized minimums . . . the coverage represented by our excess capital reserves are *very healthy*."

As *Amalgamated Bank* makes clear, it is these types of unverifiable, rosy affirmations that courts routinely reject. Plaintiffs are completely unable to demonstrate how such statements are capable of empirical verification. While Plaintiffs' suggest, without any evidentiary support, that terms such as "underwriting and credit product standards" refer to "specific [(though unmentioned)] government-regulated benchmarks for commercial banks" and have "clear [though undefined)] meaning within the mortgage lending industry," no reasonable investor could consider such subjective characterizations important in deciding whether to purchase or sell a security.[13] *See, New York State*

---

[13] Banks are required by their regulations to maintain "well-capitalized minimums," but that determination is a purely factual one, and Defendants are unaware of any specific

*Teachers' Retirement Systems v. Fremont General Corp.*, 2009 WL 3112574, \*10 (C.D. Cal. September 25, 2009) (explaining that failure to provide an objective measure against which adequacy of underwriting standards employed could be measured rendered generalized statements insufficient under PSLRA). Defendants' statements did nothing more than publicly adopt a hopeful posture that its business strategies were and would pay off. Such preening for the financial community is classic puffery that courts routinely find insufficient to significantly alter the total mix of information available. *See, Zerger v. Midway Games, Inc., et al.*, 2009 WL 3380653, \*6 (N.D. Ill. October 19, 2009) (rejecting plaintiffs' offered misstatements as puffery). And so it should be here.

### 2. Plaintiffs' alleged misstatements are protected as forward-looking under the safe harbor doctrine.

Even statements that go beyond "corporate optimism" are non-actionable under the PSLRA's safe harbor provision if they are "forward-looking" and accompanied by meaningful cautionary language. 15 U.S.C. § 78u-5(c)(1)(A)(I).

#### a. Plaintiffs' offered statements are forward-looking.

In determining whether a statement is forward-looking, verb tense is not conclusive. *Tellabs*, 513 F.3d at 705. In fact, statements may include present-tense verbs while still being forward-looking. *Id.* For example, while the PSLRA provides protection for obvious forward-looking statements regarding projections of revenues, statements of the plans and objectives of management and ideas relating to future economic performance, *see*, 15 U.S.C. § 77z-2(I)(A)-(C), the statute also protects "statement[s] of the assumptions

---

allegation by Plaintiffs that Colonial's financials which reported that the Bank's capital ratios exceeded these minimum requirements were false. Equally important, Plaintiffs' allegations do nothing to change the subjective description applied to that standard and do not provide any objective measure to determine the "density" or "health" of Colonial's minimums.

underlying or relating to" those projections and plans. *See*, 15 U.S.C. § 77z-2(I)(D).

While discussed at length in Defendants' Motion to Dismiss, *Harris v. IVAX Corp.*, merits mentioning again. 182 F.3d 799 (11th Cir. 1999). There, present-tense statements made by the defendant company were found to be forward-looking statements sheltered by the PSLRA's safe harbor. 182 F.3d at 804-807. The court found that these statements, while technically statements of present condition, were intended to project future expectations of better times, making them exactly the kind of forward-looking statement the PSLRA's safe harbor was intended to shield. *Id.*; *see also*, *Ehlert v. Singer*, 245 F.3d 1313, 1316-18 (11th Cir. 2001) (determining that statement, "[t]he company is devoting significant resources to the development of enhancements to its existing products," although phrased in the present tense, was a statement with forward-looking connotations).

Just as in *Harris*, Plaintiffs argue that the safe harbor is inapplicable to their claims because their alleged misrepresentations were not forward-looking statements, but rather were misrepresentations of present business conditions. *See*, Plaintiffs' Opposition, pp. 36-41. For example, Plaintiffs contend that in Colonial's press releases and SEC filings during the proposed Class Period, the Company failed to disclose that its underwriting standards were not "stringent" and that its allowance for loan losses was inadequate.[14] *Id.* Specifically, Plaintiffs' allege Colonial went so far as to say that it "perform[ed] detailed

---

[14] By any recognized definition an "allowance for loan losses" is necessarily judgmental and forward looking: http://www.occ.treas.gov/handbook/alll.pdf, p. 1 ("The allowance for loan and lease losses . . . is an *estimate* of uncollectible amounts that is used to reduce the book value of loans and leases to the amount that is *expected* to be collected."); http://www.fdic.gov/regulations/laws/rules/5000-4700.html ("Determining the allowance for loan losses is *inevitably imprecise*, and an appropriate allowance falls within a range of *estimated* losses).

25

verification and testing" to ensure these standards and measures were adequate; that Defendant Lowder was "very comfortable" with where Colonial stood in that regard; and that the Company's coverage by excess capital reserves was "very healthy."[15] *Id.*, p. 38. Plaintiffs' argument is correct from a grammatical perspective only. While the statements outlining levels of comfort with loan loss allowances or the health of capital reserves could technically be read as statements of present condition, the meaning of such statements was clear enough: despite the recent rough period throughout the market and industry, Colonial felt positive about the times ahead. These are merely statements of the assumptions made by Colonial relating to its ongoing and overall business plan. Undoubtedly, the sufficiency of those allowances and reserves could not be conclusively determined as improper or inadequate until some point in the future, necessarily rendering them forward-looking. *See, Tellabs*, 182 F.3d at 805. Most simply, representations regarding the state of a business' current position in a changing market or the soundness of its growth strategies are necessarily forward-looking. *See, e.g., Isham v. Perini Corp.*, 2009 WL 3403131, *10 (D. Mass. October 07, 2009) (finding statements of company being "on track" or "on schedule" to be forward looking). These are exactly the kind of forward-looking statements that the PSLRA's safe harbor was intended to shield and should do so here. *See also*, Defendants' Motion to Dismiss, pp. 80-83, 90-92 (addressing PSLRA's safe harbor and its judicially created counterpart, "bespeaks caution" doctrine).

### b.   Plaintiffs cannot logically challenge the cautionary statements provided.

To be "meaningful," a cautionary statement accompanying a forward-looking

---

[15] As a threshold matter, optimistic statements of standards being "stringent," conditions being "very healthy" and management "very comfortable" are prototypical puffery. *See, supra*, Part I-B-1.

statement must identify "important factors" that might adversely affect the results discussed in the forward-looking statement. *See,* 15 U.S.C. § 78u-5(c)(1)(A)(I). However, it need not include all possible factors. *Harris,* 182 F.3d at 807 (holding that "when an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice. . . ."). Importantly, once a court determines that a statement is protected under the safe harbor, "the defendant's state of mind is irrelevant." *Id.* at 803; *see also, Goodman v. Jabil Circuit, Inc.,* 2010 WL 154519 (11th Cir. January 19, 2010) (holding that "an allegation of actual knowledge of falsity will not deprive a defendant of protection by the statutory safe harbor if his forward-looking statements are accompanied by meaningful cautionary language.").

Here, Plaintiffs do not address the sufficiency of the cautionary language but, instead, simply suggest that no level of cautionary language can provide protection for a current risk. *See,* Plaintiffs' Opposition, p. 41. Plaintiffs' argument ignores the reality that Colonial's significant and substantive cautionary language did not suddenly appear with the first allegedly false Form 10-Q. *See, Desai v. General Growth Properties, Inc.,* 2009 WL 2971065, *4 (N.D. Ill. September 17, 2009) (noting that "when plaintiffs invoke a fraud-on-the-market theory . . . they must acknowledge that *all* public information is reflected in the stock price.") (internal citation omitted) (emphasis in original). Just two months before Colonial's first allegedly false statement, Colonial issued a Form 10-K which, consistent with those that followed it during the proposed Class Period, contained a dedicated *Risk Factors* section and an express admission that it included "'forward-looking statements' within the meaning of the federal securities laws." *See,* Exh. D, Form 10-K, pp. 9-11, 17-18 (filed February 26, 2007). The next day, Colonial issued a Form 8-K that

reiterated the forward-looking nature of the document. *See*, Exh. E, Form 8-K, p. 3, Exh.

99.1, p. 2 (filed February 27, 2007). Accordingly, no reasonable argument can be made that

Colonial's SEC materials lacked adequate cautionary language, particularly where, as here,

the included cautionary language warned of the exact risks that ultimately befell the

Company. *See also*, Defendants' Motion, pp. 83-90.

### C.    PLAINTIFFS DO NOT RAISE A STRONG INFERENCE OF SCIENTER.

In any Rule 10b-5 action, a plaintiff must show either an "intent to deceive,

manipulate, or defraud," or "severe recklessness."[16]  *Bryant v. Avado Brands, Inc.*, 187

F.3d 1271, 1282 (11th Cir. 1999).  An overlay of the PSLRA with the Eleventh Circuit's

interpretation of it yields the following "stringent standard":

> [T]to survive a motion to dismiss . . ., [a plaintiff] must (in
> addition to pleading all of the other elements of a § 10(b)
> claim) plead with particularity facts giving rise to a strong
> inference that the defendants either intended to defraud
> investors or were severely reckless when they made the
> allegedly materially false or incomplete statements.

*Id.* at 1283 (internal quotations omitted).

A "strong inference" of scienter means an inference that is cogent and at least as

compelling as any opposing inference one could draw from the facts alleged. *Tellabs*, 127

S. Ct. at 2509-10.

> To determine whether the plaintiff has alleged facts that give
> rise to the requisite 'strong inference' of scienter, a court
> must consider plausible nonculpable explanations for the
> defendant's conduct, as well as inferences favoring the

---

[16] The Eleventh Circuit has defined "severe recklessness" as "those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that represent a danger of misleading buyers or sellers which is either known of the defendant or is so obvious that the defendant must have been aware of it." *Bryant*, 187 F.3d at 1282, n. 18.

> plaintiff. . . . [T]he inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations.

*Tellabs*, 127 S. Ct. at 2510. "In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter cogent and at least as compelling as any opposing inference?" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (citing *Tellabs*, 127 S. Ct. at 2510).

In support of scienter here, Plaintiffs offer a mixed bag of circumstantial evidence they claim indicate intent to defraud, or at least Defendants' severe recklessness in failing to discover the fraud. This circumstantial proffer starts with a variety of confidential witnesses – none of whom are shown to be high-level, executive officers of the Company who likely would have had personal knowledge of the overall business of a large bank-holding company like Colonial BancGroup or can provide sufficient detail to support a conclusion that they had personal knowledge about the Defendants' allegedly improper state of mind. In an obvious attempt to surmount this recognized insufficiency, Plaintiffs next seek to invoke the "core operations" doctrine, despite its inconsistency with the heightened requirements of the PSLRA. Plaintiffs also attempt to attach unspecified GAAP and Sarbanes-Oxley violations to its showing of scienter, despite identical attempts being routinely rejected by courts across the country. Likewise, Plaintiffs' allege a specific, TARP-related misrepresentation and omission, despite the dispositive cautionary language accompanying the statement. Further, any semblance of scienter provided by these purported bases is undercut by the Defendants actual purchase of stock during the proposed Class Period. Ultimately, the allegations contained in Plaintiffs' Complaint do not create an inference of scienter that is at least as probable as a non-fraudulent explanation, namely

that each Defendant acted in good faith, attempting honestly – if imperfectly, in hindsight –

to deal with rapidly changing circumstances and market conditions never before seen.

### 1.    Plaintiffs' confidential witnesses do not support a finding of scienter.

A confidential witness' allegations can only help support an inference of fraud

where two requirements are met: (1) the allegations are supported by sufficient detail about

the confidential witness' position within the defendant company to provide a basis for

attributing facts reported by that witness to the witness' personal knowledge; and (2) those

statements which are reported by confidential witnesses with sufficient reliability and

personal knowledge are themselves be indicative of scienter.[17] *Mizzaro,* 544 F.3d at 1240;

*In re Medicis Pharmaceutical Corp. Sec. Litig.*, 2009 WL 4755406, *11 (D. Ariz.

December 2, 2009).

In *Medicis Pharmaceutical*, the district court analyzed in great detail the

confidential witnesses offered by the plaintiff before concluding that the collection failed to

sufficiently allege that the defendants acted intentionally, or with severe recklessness, in

defrauding investors. 2009 WL 4755406 at *11-*15. Among the lot, the plaintiffs were

able to offer allegations from their confidential witnesses that: there was some level of

---

[17] A number of courts have determined that, subsequent to *Tellabs*, district courts should discount the statements of confidential sources in determining whether plaintiffs have shown a strong inference of scienter, as securities-fraud claims require. *See Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Group, Inc.,* 537 F.3d 527, 535 (5th Cir. 2008) ("Following *Tellabs,* courts must discount allegations from confidential sources[,] [as] [s]uch sources afford no basis for drawing the plausible competing inferences required by *Tellabs* ."); *Higginbotham v. Baxter Int'l Inc.,* 495 F.3d 753, 756-57 (7th Cir. 2007) ("It is hard to see how information from anonymous sources could be deemed 'compelling'. . . . Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist."); *see also, Mizzaro,* 544 F.3d at 1240 (recognizing that courts may be skeptical of confidential sources but declining to adopt a *per se* rule refusing to credit allegations).

"indirect[]" reporting to one of the defendants; concerns over the allegedly improper accounting procedure being used were reported to a defendant several times; "creative accounting" was being used to the extent that "something shady was going on"; the company's accounting treatment was "easy, but not correct[;]" management consistently asked for the generation of financial reports regarding the company from specific company software; and that the company's accounting methodology was "always an issue" and a "point of contention between auditors and management[.]" *Id.*

In rejecting this proffer, the district court held that although some of the witnesses were likely familiar with the company's accounting methodology, they failed to provide "sufficient detail" to support a conclusion that they had personal knowledge about the defendants' improper state of mind – *i.e.*, the witnesses could not specify when any alleged conversation with the defendants took place nor could they provide details about the content of those conversations. *Id.* at *12 (internal citations omitted). In fact, not one of the confidential witnesses made any allegation that he or she worked closely with management or ever communicated with any of the defendants to a degree so as to provide them personal knowledge of the defendants' state of mind. *Id.* at *13. At best, the alleged conversation(s) with the unspecified defendant only established that that a defendant was aware of an employee concerned about and disagreeing with the accounting treatment and methodology. Such amorphous allegations, the court held, did not demonstrate that any defendant recklessly ignored a correct interpretation of GAAP or otherwise acted with scienter. *Id.* Certainly, not one confidential witness claimed to have specifically drawn any defendants' attention to the provisions of the methodology they considered appropriate or specifically pointed out the inapplicability of the methodology they were purportedly

31

instructed to use. *Id.* Furthermore, the district court held that even if any of these witnesses had done all of those things, it was unclear what qualified them to provide authoritative guidance with respect to a lengthy and relatively technical accounting provision. *Id.* The court also found nothing suspect about the defendants' requests for financial reports, as they contained the exact type of financial information used by management to more accurately predict pertinent company information, as they were required to do under the governing accounting requirements. *Id.*; *see also, Konkol v. Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. December 22, 2009) (holding that investors' reliance on general statements from their confidential witnesses – *i.e.*, that "the false invoicing scheme was perpetrated at a high level within the Company," "[i]t was very obvious what [the defendants] were doing," and "the false invoicing practice was openly known within the Company" – could not "substitute for *specific* facts through which a factfinder c[ould] strongly infer that the defendants themselves knew of or recklessly disregarded the falsity of the earnings statements, especially because the majority of the Confidential Witnesses [were] not identified as having *any* contact or interaction with any of the Defendants."); *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 2009 WL 4282940, *22 (S.D. Ind. December 1, 2009) (rejecting vague and general testimony of confidential witnesses because under PSLRA a plaintiff "must allege actual knowledge by the defendant, not some second-hand belief that such knowledge existed[.]").

 *Medicis Pharmaceutical* provides an ideal backdrop for the examination of Plaintiffs' confidential witnesses. Identically to that case, Plaintiffs' proffered witnesses here all fail to provide the "sufficient detail" required. 2009 WL 4755406, *12. While one witness does suggest lodging a "complain[t] to Defendants that it was [sic] sacrificing

'quantity over quality' but was ignored[,]" he or she failed to identify who she spoke with; "when [the] alleged conversations took place; nor d[id] [he or she] provide the details about the content of those conversations." *Id.* There certainly is no suggestion that the confidential witnesses drew any Defendant's attention to the specifics of what they considered a more appropriate underwriting methodology, much less the inappropriateness of the criteria they claim to have been forced to employ. Similar to *Medicis Pharmaceutical*, the strongest inference this generalized conversation allows is that there was a disagreement as to methodology between some of the confidential witnesses and some unidentified Defendant. While the confidential witnesses eagerly allege that the changes to Colonial's underwriting standards were "authorized" by Defendants, *see,* Plaintiffs' Opposition, p. 71, they cannot specifically identify when such a grant took place or any alleged conversation (even secondhand) that the Defendants were aware of, approved of or participated in this allowance. *See,* Compl., ¶¶ 43-45, 108.

Taken in their entirety and in the light most favorable to Plaintiffs, these allegations arguably point to evidence of mismanagement, but they are wholly insufficient to substantiate Plaintiffs' allegations of scienter. *See, In re Huntington Bancshares, Inc. Sec. Litig.,* 2009 WL 46664555 (S.D. Oh. 2009) (noting that "a shared opinion among confidential witnesses does not necessarily indicate . . . falsity . . . if the allegations themselves are not specific enough[.]"). At best, Plaintiffs' confidential witnesses affirm nothing more than changes to the underwriting guidelines, some undefined level of managerial oversight over these guidelines, a software program that allowed for the review of some undefined loan data and some level of concern among lower-level employees. Most directly, not one of the confidential witnesses can point to a *specific* communication

to *any* Defendant on *any* of these issues. See, *Isham v. Perini Corp.*, 2009 WL 3403131 (D. Mass. October 07, 2009) (finding a lack of scienter, in part, based on confidential witness' inability to provide specific information on defendants). Not one provides specific testimony that Defendants were aware of or approved any alleged underwriting changes. See, *Zisholtz v. SunTrust Banks, Inc.*, 2009 WL 3132907, *5 (N.D. Ga. September 24, 2009) (noting that none of plaintiffs' confidential witnesses mentioned a single, specific communication or directive from corporate officials relating to the alleged fraud, the absence of which weighed strongly against scienter). Not one can speak to the reasoning behind the alleged changes to these guidelines or the ultimate fallout, if any, attributable to them. See, *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 2009 WL 4282940, *13 (S.D. Ind. December 1, 2009) (confidential witnesses were "wholly inadequate" where their claims were uncorroborated and vague as to timing and significance of alleged material events). And not one can testify that Defendants utilized the available software program or, if they did, the purpose for and frequency of such use. See, *In re Huntington Bancshares Inc. Securities Litig.*, 2009 WL 4666455 (S.D. Oh. 2009) (noting courts' rejection of scienter based on allegations that defendant could track data contradicting company forecasts).

Put another way, while the allegations in Plaintiffs' Complaint may be sufficient to establish that the various confidential witnesses have personal knowledge of the work *they* did, the reports *they* made, and their *own* experiences as Colonial employees, such allegations are too weak and convoluted to establish that any of the confidential witnesses were in a position to gain personal knowledge of what *Defendants* saw, knew, or thought. Plaintiffs cannot overcome these fundamental inadequacies by volume, as "[t]he sheer

34

[number] of confidential sources cited cannot compensate [for a lack of specifics]. . . . Cobbling together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA." *Cal. Pub. Emp. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004); *see also*, *Stevens v. Inphonic, Inc.*, 2009 WL 3248222, *8 (D. D.C. October 9, 2009) (recognizing that allowing an inference of scienter based on alleged magnitude of fraud "would eviscerate the principles that accounting errors alone cannot justify a finding of scienter.") (internal citations omitted). Absent such detail, Plaintiffs would have this Court speculate as to the basis for Plaintiffs' allegations about the alleged misstatements and the knowledge of Defendants. It should decline to do so.[18] *See also*, Defendants' Motion, pp. 64-71.

### 2.    The "core operations" doctrine offers Plaintiffs no relief.

In apparent concession of their confidential witnesses' absolute inability to attach any level of detail to their general and conclusory allegations, Plaintiffs seek to rely on the "core operations" doctrine to overcome the PSLRA's scienter requirement.[19] However,

---

[18] Defendants recognize the challenge presented to the trial court when confronted with what appear to be specific facts from unidentified "confidential witnesses." Suspicions are inevitably raised – one trial judge opted to require the plaintiffs, prior to launching massive discovery based upon such, to produce those witnesses for depositions. *See, Campo v. Sears Holding Corp., et al.*, 635 F.Supp.2d 323, 330, n. 54 (S.D. N.Y. 2009) (denying motion to dismiss without prejudice in ordering confidential witnesses to be deposed "in order to determine whether they supported the allegations in the Complaint and whether [the court] should have granted defendants' motion to dismiss."). Once they appeared and were examined, the total weakness of what they offered to support an alleged major securities fraud was exposed and the case ultimately dismissed. *Id.* at 335-36.

[19] Prior to the passage of the PSLRA, the "core operations" doctrine allowed scienter to be imputed to individual defendants, even in the absence of specific information contradicting their public statements, where the subject matter of the alleged misstatement was proven to be sufficiently significant to the corporate defendant. *See, In re ESpeed, Inc. Sec. Litig.*, 457 F.Supp.2d 266 (S.D. NY. 2006) (discussing doctrine but calling its post-PSLRA availability into question in dismissing plaintiffs' securities fraud complaint). Post-PSLRA,

because the doctrine is incompatible with various courts' rejection of the group pleading doctrine and, alternatively, because Plaintiffs have wholly failed to establish mortgage lending (much less the development and evaluation of underwriting guidelines) as a "core operation" at Colonial, their argument fails.

> ### a.    The doctrine is incompatible with the PSLRA's heightened pleading requirements.

In enacting the PSLRA, Congress intended to impose heightened pleading requirements for plaintiffs bringing fraud actions and, in doing so, to erect a hurdle that would protect against unmeritorious litigation. *See, Tellabs,* 127 S.Ct. at 2508. If courts were to allow use of the "core operations" doctrine, plaintiffs would be able to skirt these heightened pleading standards by making generalized allegations surrounding corporate activity and imputing inferences from that activity to other, individual defendants. Such a position, however, would be in contravention to the logic surrounding courts' nearly uniform rejection of group pleading. *See, In re Pegasus Wireless Corp. Sec. Litig.,* 657 F.Supp.2d 1320, 1325 (S.D. Fla. September 21, 2009) (holding that the "the group pleading doctrine . . . does not apply to the Reform Act's scienter requirement.") (internal citations omitted); *see also,* Plaintiffs' Opposition, p. 61, n. 26 (conceding same).

As the Fifth Circuit has noted, the PSLRA requires plaintiffs to "distinguish among those they sue and enlighten *each* defendant as to his or her particular part in the alleged fraud." *Southland,* 365 F. 3d at 364-65 (holding that "PSLRA references to 'the defendant' may only reasonably be understood to mean 'each defendant' in multiple defendant cases[.]"). Accordingly, to accept a plaintiff's core business argument would be to

---

this doctrine has been "exceedingly rare[ly] used[.]" *Stevens v. Inphonic, Inc.,* 2009 WL 3248222, *17, n. 8 (D. D.C. October 9, 2009) (stating that doctrine has "not been recognized by this Circuit and the Court declines to recognize it here.")

"contravene the express directives of the PSLRA requiring Plaintiff to allege facts sufficient to meet its pleading burden." *In re NDHealth Corp., Inc. Sec. Litig.*, 2005 WL 6074918, *8, n. 10 (N.D. Ga. 2005) (rejecting core operations evidence in holding that to prove scienter, a plaintiff must still allege particular details to tie each defendants' respective position to the allegedly misstated information from the company); *Durgin v. Mon*, 2009 WL 3055216, *12 (S.D. Fla. September 21, 2009) (noting that allegations that defendants, because of their position within the company, "must have known" a statement was false or misleading were "precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.").

As this precedent makes clear, it would be inappropriate for Plaintiffs to conclusorily allege that because Defendants "routinely hyped the Company's conservative underwriting, low credit risk and high loan quality," *see*, Plaintiffs' Opposition, p. 56, knowledge of the alleged falsity of that information can be imputed to each of them via the "core operations" doctrine. Such an attempt would be in direct contravention to the PSLRA's well-developed requirement that plaintiffs "distinguish among those they sue and enlighten *each* defendant as to his or her particular part in the alleged fraud." *Southland*, 365 F. 3d at 364-65. It is not enough for Plaintiffs to make generalized allegations that Defendants had access to the "true facts" in order to demonstrate scienter, particularly where their Complaint fails to allege which Defendant knew what, when or how they knew it. As outlined, *supra*, the proffered confidential witnesses certainly are not in a position to offer that connection, never once levying a specific allegation against a specific Defendant. Most simply, there is no evidence – other than their titles within the Company – to connect the allegedly false information to Defendants. Absent such a tether, Plaintiffs' claims fail.

37

### b.    Alternatively, Plaintiffs insufficiently plead the doctrine.

Even if this Court determines that the "core operation" doctrine is viable and

applies here, Plaintiffs have failed to sufficiently plead it. In *In re ESpeed*, the court

allowed the application of the doctrine but ultimately held that the plaintiff insufficiently

plead it because he did not allege that the purported "core operation" was so vital to the

company that its top officers must have known of the extent of its failure.[20] 457 F.Supp.2d

266, 293-94 (S.D. NY. 2006). In reaching this conclusion, the court relied on allegations

from the plaintiffs that the alleged "core operation" was merely "one of many factors

affecting projections of [the company's] future performance" and that it was simply one of

the various "core products" offered by the company. *Id.* at 294, n. 208.

Here, Plaintiffs make absolutely no effort to establish mortgage lending as a "core

operation" of Colonial. Instead, they conclusorily state that "as a mortgage lender, loan

underwriting was at the heart of the Company's core business, loan origination." Plaintiffs'

Opposition, p. 57. Plaintiffs offer no support for this position and, just as in *ESpeed*, ignore

their own allegations that Colonial is a "general commercial banking business." Compl., ¶

2. Indisputably, mortgage lending was only a *part* of the Company's "general" banking

business, with other portions of Colonial dedicated to standard retail and commercial

banking, wealth management services and insurance products. *See*, Form 10-K, Subsidiary

---

[20] Notably, the district court's decision to apply the doctrine was based on a decision from the Second Circuit that "precede[d] the PSLRA by six years, and [recognized] that post-PSLRA decisions in other Circuits have cast doubt on whether scienter can be pleaded" using the "core operations" doctrine. *Id.* at 294, n. 208 (internal citations omitted).

Bank, p. 1 (previously submitted as Exh. 17 to Defendants' Motion to Dismiss).

Accordingly, identically to *ESpeed*, Colonial's mortgage lending division was just one of

many factors affecting projections of the Company's future performance and was simply

one of the various areas of business offered by it. *Id.* This is certainly not the case, as

Plaintiffs seemingly argue, of a business focusing *exclusively* on mortgage lending. *See,*

Plaintiffs' Opposition, pp. 55-56 (citing *In re New Century*, 588 F.Supp. 2d 1206 (C.D.

Cal. 2008) (alleging claims against business *exclusively engaged* in subprime mortgage

lending); *Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008)

(same); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F.Supp.2d 1142 (S.D. Cal.

2008) (alleging claims against business *exclusively engaged* in selling subprime

mortgages)). Accordingly, as Colonial was indisputably diversified and no evidence exists

to establish mortgage lending as a "core operation" of its multi-faceted business model, the

doctrine provides no relief here, even if applicable. *See, Plumbers and Pipefitters Local*

*Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 2009 WL 4282940, *22 (S.D. Ind.

December 1, 2009) (where plaintiffs "h[ave] not alleged that the [activities at issue] were

'critical' to [the company's] 'core operations,' . . . no inference of scienter [could] be

permissibly drawn from Defendants' positions in the company.").

### 3. Plaintiffs' claimed GAAP and Sarbanes-Oxley Act violations do not support scienter.

As noted in their original Motion to Dismiss, even a clearly alleged GAAP violation

is not sufficient to state a claim of fraud unless it is coupled with specific facts surrounding

the violation that describe "the who, what, when, where and how." *See*, Defendants'

Motion to Dismiss, pp. 71-75 (internal citations omitted) Similarly, a Sarbanes-Oxley

("SOX") certification is only probative of scienter if the person signing the certification

39

had reason to know, or should have suspected due to the presence of glaring accounting

irregularities or other "red flags," that the financial statements contained material

misstatements or omissions. Defendants' Motion to Dismiss, pp. 75-76 (internal citations

omitted).

Since the filing of the instant Motion to Dismiss, courts have continued to reject

both of these alleged violations where, as here, they are insufficiently supported.[21] *See*,

Defendants' Motion to Dismiss, pp. 71-76 (outlining Plaintiffs' pleading deficiencies); *see*

*also*, *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 2010 WL 154519, *6

(11th Cir. January 19, 2010) (recognizing that GAAP violation was not probative of scienter

when unaccompanied by specific "red flags"); *Konkol v. Diebold, Inc.*, 590 F.3d 390 (6th

Cir. December 22, 2009) (holding that a finding of scienter based on alleged SOX

violations would be equivalent to "classic fraud by hindsight case where a plaintiff alleges

that the fact that something turned out badly must mean the defendant knew earlier that it

would turn out badly."); *In re Huntington Bancshares Inc. Securities Litig.*, 2009 WL

---

[21] While Plaintiffs' deficiencies are outlined in greater detail in Defendants' Motion to Dismiss, the "short story" on each is as follows: (1) GAAP violations – Plaintiffs fail to identify a specific GAAP violation and offer nothing more than unsubstantiated allegations of fraud, failing in every way to demonstrate how or when each defendant became aware of the allegedly improper accounting practices and the extent of each Defendants' contribution or involvement, *see. e.g.*, *New York State Teachers' Retirement Systems v. Fremont General Corp.*, 2009 WL 3112574, *10 (C.D. Cal. September 25, 2009) (rejecting alleged GAAP violation as probative of scienter where it was clear that values were inflated because, other than utilizing hindsight, plaintiff identified no objective means for determining whether defendant's valuation was fraudulently inflated at the time the reports were signed); and (2) SOX violations – Plaintiffs make no real effort to link statements in internal and disclosure controls to the alleged accounting issues and fail to allege facts suggesting that Defendants acted with fraudulent intent. *See, e.g.*, *Durham v. Whitney Information Network, Inc.*, 2009 WL 3783375, *18 (M.D. Fla. November 10, 2009) (holding that absent a specifically alleged and glaring accounting irregularity or other 'red flag' that financial statements contained material misstatements or omissions, a SOX certification could not be severely reckless).

4666455, *20 (S.D. Oh. 2009) (citing cases not finding a GAAP violation where "nobody –

not the SEC, [the company's] auditors, or anyone else – has suggested [the company]

should or must restate its financial reports."); *Plumbers and Pipefitters Local Union 719

Pension Fund v. Zimmer Holdings, Inc.*, 2009 WL 4282940, *23 (S.D. Ind. December 1,

2009) ("[I]f an allegation that a mandatory [SOX] certification was later proved to be

inaccurate [was] sufficient to give rise to the requisite strong inference, 'scienter would be

established in every case where there was an accounting error or auditing mistake by a

publicly traded company, thereby eviscerating the pleading requirements for scienter set

forth in the PSLRA."); *In re Medicis Pharmaceutical Corp. Sec. Litig.*, 2009 WL 4755406,

*15 (D. Ariz. December 2, 2009) (rejecting inference of scienter where plaintiffs sought to

impute alleged GAAP violations to corporate defendants); *Durham v. Whitney Information

Network, Inc.*, 2009 WL 3783375 (M.D. Fla. November 10, 2009) (finding GAAP

allegations insufficient); *New York State Teachers' Retirement Systems v. Fremont General

Corp.*, 2009 WL 3112574 (C.D. Cal. September 25, 2009) (rejecting evidence of GAAP

compliance and internal controls in dismissing case) (internal citations omitted).

Neither Plaintiffs' Complaint nor their Opposition alters this reasoned and

substantial body of precedent. *See*, Defendants' Motion to Dismiss, pp. 71-76.

### 4.    Plaintiffs' TARP allegations do not support scienter.

Defendants' failure to disclose the $300 million capital raise requirement associated

with its preliminary TARP approval fails to provide any evidence in support of scienter.

*See, Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (holding that "to fulfill the

materiality requirement there must be a substantial likelihood that the disclosure of the

omitted fact would have been viewed by the reasonable investor as having significantly

41

altered the 'total mix' of information made available.") (internal citation omitted).  To

suggest otherwise would be to ignore the "total mix" of information Plaintiffs' cited Form

8-K contained – namely, its unambiguous explanation that the approval was

"preliminarily" and unequivocally "subject to certain conditions[.]" *See*,  Form 8-K, p. 2

(signed December 2, 2008) (previously submitted as Exh. 10 to Defendants' Motion to

Dismiss). The Form 8-K also cautioned readers "*not to place undue reliance*" on the

"preliminary" nature of the approval and expressly listed "*an inability to raise additional*

*capital on terms and conditions that are satisfactory*" and a "*failure to receive final*

*approval and actual funding from the U.S. Treasury Department's capital purchase*

*program*" as express factors that "*could cause actual results to differ materially*[.]" *Id.* at p.

3 (italics in original). Accordingly, it would be inappropriate to allow a properly cautioned,

non-misleading statement to support scienter.

### 5.    Defendants' lack of stock sales negate scienter.

Contrary to Plaintiffs' suggestion otherwise, courts routinely consider defendants'

trading histories, even where insider trading is not alleged, in examining scienter. *See, e.g.,*

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004) (considering absence of

insider stock sales to work against an inference of scienter); *In re K-tel Int'l, Inc. Sec.*

*Litig.,* 300 F.3d 881, 894 (8th Cir. 2002) (finding that "evidence that the individual

defendants abstained from trading may undercut allegations of motive"); *In re Huntington*

*Bancshares Inc. Securities Litig.*, 2009 WL 4666455 (S.D. Oh. 2009) (utilizing information

contained in submitted Forms 4 filed at the motion to dismiss stage as factor cutting against

scienter); *In re Medicis Pharmaceutical Corp. Securities Litig.*, 2009 WL 4755406, at *17

(D. Ariz. December 2, 2009) (using absence of stock sales as cutting against scienter);

*Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 2009 WL 4282940 (S.D. Ind. December 1, 2009) (recognizing stock purchases during class period as negating scienter); *New York State Teachers' Retirement Systems v. Fremont General Corp.*, 2009 WL 3112574, *14 (C.D. Cal. September 25, 2009) (noting that allegation of insider trading as to just one of multiple defendants undercut allegations of scienter as to the non-participating defendants).

In *In re Medicis Pharmaceutical Corp. Securities Litig.*, the court noted the "[p]laintiffs d[id] not allege that any of the [individual defendants] manipulated revenues to sell their own stock at an inflated price" before holding that, "[n]evertheless, the absence of a personal benefit supplying a motive can create an inference that a defendant did not act with scienter." 2009 WL 4755406, at *17 (D. Ariz. December 2, 2009) (citing *Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008) (holding that fact that "defendants are not alleged to have sold the stock at . . . inflated prices," and the fact "that they stood to lose a lot of money if the value of [the company's] stock fell" supported an inference against scienter)).

Ignoring this logic, Plaintiffs suggests that an "equally or more compelling inference arising from the Defendants' retention or purchase of stock is that they believed they could continue their fraudulent scheme." Plaintiffs' Opposition, p. 65. However, in *Plumbers and Pipefitters*, the court discussed the defendant's participation in a stock repurchase program during the class period as a "[c]onsideration [d]iminishing an [i]nference of [s]cienter":

> Finally, the evidence discloses, without controversy, that [the individual defendant] engaged in an extensive stock repurchase program during the class period. . . . Plaintiff attempts to construe this action as proof of Defendants'

43

> malicious intent, arguing that the stock repurchase was
> intended to further inflate [the] stock further, but we view
> such an inference as that as contrary both to controlling legal
> principles and common sense. '[S]tock repurchase programs
> actually *negate* a finding of scienter.'

2009 WL 4282940, *23-*24 (S.D. Ind. December 1, 2009) (quoting *In re Tibco Software,*

*Inc.,* 2006 WL 1469654, *21 (N.D. Cal. 2006) (citing *Mathews v. Centex Telemanagement,*

*Inc.,* 1994 WL 269734, *8 (N.D. Cal. 2004) ("It would have made no sense to purchase

[the] stock if defendants knew the prices to be inflated.")). Concluding, the court held that

the plaintiff's "inability to establish that [the] [d]efendants' actions were deceitful or

contrary to common sense, based on [his] stock repurchase program, negate[d] any

inference of scienter." *Id.*; *see also, Zerger v. Midway Games, Inc., et al.*, 2009 WL

3380653, *6 (N.D. Ill. October 19, 2009) ("'[I]ndulging ready inferences of irrationality

would too easily allow the inference that ordinary business reverses are fraud. One who

believes that another has behaved irrationally has to make a strong case.'") (quoting *DiLeo*

*v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir. 1990)).

    Further debunking Plaintiffs' novel theory is the fact that Colonial's financial

condition was deteriorating throughout the proposed class period. In *New York State*

*Teachers' Retirement System,* the court held that, in light of the company's downward

spiral during the proposed class period, "the theory that the individual [d]efendants sought

to personally profit from a fraudulent scheme by misleading investors is largely, if not

wholly, inconsistent with a continued intentional or reckless pursuit of a course that would

inevitably result in the demise of the company." 2009 WL 3112574, *14 (internal citation

omitted).

    Here, Plaintiffs' scienter theory defies economic reason. It would be patently

44

unreasonable to suggest that Defendants thought they would enhance their financial positions by perpetrating a fraud when they knew or should have known it was a recipe for economic disaster which, in fact, came to pass.[22] *See also*, Defendants' Motion to Dismiss, pp. 62-63.

*      *      *

Simply put, Plaintiffs' factual allegations are neither sufficient, nor sufficiently particularized, to satisfy the pleading standard for the PSLRA's falsity requirement, nor do they articulate facts sufficient to give rise to the requisite strong inference that one or more Defendants made the challenged statements with the requisite level of scienter. Stated otherwise, although the allegations in Plaintiffs' Complaint set out a viable case for arguing – particularly in hindsight – that Colonial's underwriting was inadequate and that some or all Defendants could have taken different approaches in implementing policies and procedures in an attempt to halt the Bank's downward spiral, the few factual allegations in the Complaint are not sufficient to substantiate Plaintiffs' conclusions that each Defendant, knowingly or with severe recklessness, made statements (or omissions) that were, in fact, materially misleading at the time. Rather, even taking all the factual allegations in the

---

[22] Plaintiffs also suggest that Defendants' alleged failure to present a competing inference of scienter bolsters their own. *See*, Plaintiffs' Opposition, pp. 80-81. It does not. In, *Konkol v. Diebold, Inc.*, the Sixth Circuit rejected this exact argument, stating that there is no law requiring a securities-fraud defendant to proffer a non-fraudulent explanation. 590 F.3d 390, 402 (6th Cir. December 22, 2009). Rather, "[t]he PSLRA and the Supreme Court's opinion in *Tellabs* make clear that the burden of proof, at this stage of the proceedings, rests with the investors." *Id.* Regardless, Defendants' papers make clear that their actions are more consistent with their confronting a rapid and unforeseen collapse of the economy and finding themselves unable to effectively shield Colonial from it than they are with a company and its executives recklessly deceiving the investing community to the incredible detriment of not only their shareholders, but themselves.

45

Complaint as true, they are less likely to support an inference of securities fraud than they are to support an inference of innocently misguided corporate mismanagement.

## II.    PLAINTIFFS' OPPOSITION ADDS NOTHING TO THEIR REMAINING CLAIMS.

As an afterthought, Plaintiffs' Opposition suggests liability under Sections 11, 12, 15 and 20(a) of the various securities acts. *See*, Plaintiffs' Opposition, pp. 88-90. Defendants  adopt and incorporate in full the argument and authority contained in their Motion to Dismiss in opposition to these claims. *See*, Defendants' Motion to Dismiss, pp. 100-104.

### CONCLUSION

While Plaintiffs' Complaint is alive with adverbs, adjectives and general hortatory content, it falls fatally short of meeting the PSLRA's demanding requirements. Offering nothing more than fanciful labels, conclusions and a formulaic recitation of the elements of each cause of action, Plaintiffs' naked allegations are devoid of the specificity and factual enhancement demanded by the PSLRA and warrant dismissal here.

WHEREFORE, Defendants Robert E. Lowder, Sarah H. Moore, T. Brent Hicks and Sheila Moody respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.[23]

Respectfully submitted,

*/s/Enrique J. Gimenez*
One of the Attorneys for Defendants Robert E. Lowder, Sarah H. Moore, T. Brent Hicks, and Sheila Moody

---

[23] Plaintiffs have shown nothing to suggest an amended complaint would be anything but futile.

OF COUNSEL:

Samuel H. Franklin (FRA006)
sfranklin@lightfootlaw.com
James F. Hughey III (HUG044)
jhughey@lightfootlaw.com
Enrique "Henry" J. Gimenez (GIM001)
hgimenez@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
Telephone: (205) 581-0700
Facsimile:  (205) 581-0799

*Attorneys for Robert C. Lowder, Sarah H. Moore,
T. Brent Hicks and Sheila Moody*

Robert D. Segall
Segall@copelandfranco.com
COPELAND, FRANCO, SCREWS & GILL, P.A.
44 South Perry Street
P. O. Box 437
Montgomery, Alabama  36101-0347
Tel: 334-834-1180
Fax: 334-834-3172

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas A. Dubbs, Esq.
James W. Johnson, Esq.
Angelina Nguyen, Esq.
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005

Tyrone C. Means, Esq.
H. Lewis Gillis, Esq.
Gerald C. Brooks, Esq.
THOMAS, MEANS, GILLIS & SEAY, PC
3121 Zelda Court
Montgomery, Alabama 36106

Larry B. Childs, Esq.
WALLER LANSDEN DORTCH
 & DAVIS LLP
1901 Sixth Avenue North
Suite 1400
Birmingham, Alabama 35203

Tabor R. Novak Jr., Esq.
Edward H. Wilson, Jr., Esq.
BALL, BALL, MATTHEWS
 & NOVAK, P.A.
P.O. Box 2148
Montgomery, Alabama 36102-2148

A. Inge Selden, III, Esq.
Carl S. Burkhalter, Esq.
Alan F. Enslen, Esq.
Steven L. McPheeters, Esq.
MAYNARD COOPER & GALE PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, Alabama 35203

Elizabeth V. Tanis, Esq.
Dan S. McDevitt, Esq.
George P. Montgomery, Esq.
Shelby S. Guilbert, Jr., Esq.
KING & SPALDING, LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309-3

/s/Enrique J. Gimenez
OF COUNSEL

48