**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re | ) | CIVIL ACTION NO. |
| COLONIAL BANCGROUP, INC. | ) | 2:09cv104-MHT |
| SECURITIES LITIGATION | ) | |

**UNDERWRITER DEFENDANTS' MOTION FOR**
**RECONSIDERATION OF THE DENIAL OF THEIR MOTION TO DISMISS**

COME NOW Defendants Banc of America Securities, LLC; Citigroup Global Markets, Inc.; Credit Suisse Securities (USA) LLC; Deutsche Bank Securities Inc.; Morgan Keegan & Company, Inc.; Morgan Stanley & Co., Inc.; RBC Dain Rauscher, Inc.; Stifel, Nicolaus & Company, Inc.; SunTrust Robinson Humphrey, Inc.; UBS Securities, LLC; and Wachovia Capital Markets, LLC (collectively, "Underwriter Defendants")[1] and respectfully move for reconsideration of the May 14, 2010 Order (Pacer Doc No. 317) that summarily denied the Underwriter Defendants' Motion to Dismiss (Pacer Doc. No. 246).[2]

In support of this Motion, the Underwriter Defendants state as follows:

**INCORPORATED MEMORANDUM OF LAW**

In their Motion to Dismiss, the Underwriter Defendants raised manifold issues necessitating dismissal of the Lead Plaintiffs' Consolidated Class Action Complaint

---

[1] Pursuant to the Court's March 19, 2010 Order, Defendants Bear Stearns Companies; Charles Schwab & Co., Inc; Fidelity Capital Markets; H&R Block Financial Advisors, Inc. (n/k/a Ameriprise Advisor Services, Inc.); J.J.B. Hilliard, W.L. Lyons, Inc.; Janney Montgomery Scott LLC; Keefe, Bruyette & Woods, Inc.; Oppenheimer & Co., Inc.; Raymond James & Associates; Robert W. Baird & Co. Incorporated; Sterne, Agee & Leach, Inc.; Wells Fargo Securities, LLC; B.C. Ziegler and Company; City Securities Corporation; Crowell, Weedon & Co.; D.A. Davidson & Co.; Davenport & Company, LLC; Doley Securities, LLC; Ferris, Baker Watts, Inc. (n/k/a RBC Capital Markets Corporation); Fixed Income Securities, LP (n/k/a Advisors Asset Management); Jefferies & Company, Inc.; Mesirow Financial, Inc.; Pershing LLC; Piper Jaffray & Co.; Samuel A. Ramirez & Co., Inc; Stone & Youngberg LLC; Wedbush Morgan Securities; and William Blair & Company, LLC have been dismissed from this action without prejudice. (Pacer Doc. No. 305).

[2] The Underwriter Defendants recognize that the current action is in the process of being reassigned, (*see* Pacer Doc. No. 363). However, to ensure the timeliness of this filing, the Underwriter Defendants respectfully present this motion understanding it will not be heard until the case has been reassigned.

("Complaint").  (*See* Memorandum of Law in Support of Underwriter Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (Pacer Doc. No. 247) ("Und. Br."); Underwriter Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Complaint (Pacer Doc. No. 294) ("Und. Reply Br.")). First and foremost, this Court lacks jurisdiction because Lead Plaintiffs do not have standing to pursue half of their claims against the Underwriter Defendants.  Moreover, even if jurisdiction were proper, the alleged claims founder as a matter of law because Lead Plaintiffs have failed to identify material misstatements and omissions that led to their losses.

Because the Court summarily denied the Motion to Dismiss without a written opinion, the Underwriter Defendants present this Motion for Reconsideration as a request for guidance on these critical, threshold issues.  The Eleventh Circuit has opined that "[s]tanding is a doctrine that 'stems directly from Article III's "case or controversy" requirement,'" and thus it 'implicates [a court's] subject matter jurisdiction.'"  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)).  "In fact, standing is perhaps the most important jurisdictional doctrine, and, as with any jurisdictional requisite, [the Court is] *powerless to hear a case when it is lacking*."  *Id.* (internal quotation marks and citations omitted) (emphasis added).  Because the jurisdictional standing requirement is so vital, the Eleventh Circuit has instructed that "a court should inquire into whether it has subject matter jurisdiction at the *earliest possible stage* in the proceedings." *Id.* at 975 (emphasis added).  Therefore, at the motion to dismiss stage, the Court is obligated to test the allegations of the Complaint to determine whether the parties have standing to pursue their claims.  As discussed below, under the binding precedent of the Eleventh Circuit and the

United States Supreme Court, Lead Plaintiffs lack standing to bring their claims related to the 2008 Stock Offering, necessitating dismissal of those claims.

Because standing is a threshold issue that is critical to the forward progress of this litigation, the Underwriter Defendants respectfully request that the Court reconsider its order denying the Motion to Dismiss and "provide guidance to the parties" that will be helpful "through the future course of this litigation." *Beasley v. Ala. State Univ.*, 966 F. Supp. 1117, 1121 (M.D. Ala. 1997) (Thompson, J.). This Court has provided such insight in the past in response to a motion for reconsideration, *see id.*, and the Underwriter Defendants anticipate that such clarification will be equally beneficial in the instant litigation.

## STANDARD OF REVIEW

Within its broad discretion, a district court may, at any time before final judgment, reconsider and amend an interlocutory order, including an order denying a motion to dismiss. *See Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010); *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000); *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995). In exercising this plenary power to review an interlocutory order, the district court is "not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion." *Trujillo v. Bd. of Educ. of Albuquerque Public Sch.*, 212 F. App'x 760, 765 (10th Cir. 2007); *see also Toole*, 235 F.3d at 1315.

## ARGUMENT

## I.    LEAD PLAINTIFFS LACK STANDING.

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Maverick Media Group, Inc. v. Hillsborough County, Fla.*, 528 F.3d 817, 819 (11th Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). In the absence of

standing, "the court is powerless to continue," *id.* (internal quotation marks omitted), and must dismiss the claims. *Stalley ex rel. United States v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1235 (11th Cir. 2008). Because Lead Plaintiffs lack standing to bring Section 11 and 12 claims related to the April 2008 stock offering, dismissal of those claims is proper. (Und. Br. at 2-7; Und. Reply Br. at 2-6; *see* Complaint, Counts VI and VII).[3]

**To be clear: There is not a single named or lead plaintiff in this litigation that has standing to pursue claims against the Underwriter Defendants related to the 2008 Stock Offering, Counts VI and VII.** Under Section 11, standing is limited to the "narrow class of persons" who purchased stock directly traceable to the offering in question. *Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005) (internal quotation marks omitted); 15 U.S.C. § 77(a). Based on the allegations in the Complaint, *at most*, Lead Plaintiffs have alleged that (1) anonymous potential class members purchased stock traceable to the April 2008 Stock Offering and (2) named plaintiffs, The Horace F. Moyer and Joan M. Moyer Living Trust (the "Moyer Trust"), acquired notes in the 2008 Note Offering. (*See* Compl. ¶¶ 452, 461, 378). Under settled and binding precedent of this Circuit and the United States Supreme Court, *neither* of these allegations is sufficient to confer standing on the Lead Plaintiffs with respect to the 2008 Stock Offering. Because no named or lead plaintiff has standing to pursue stock-related claims under Sections 11 or 12, this Court lacks jurisdiction and dismissal of those counts is required.

Lead Plaintiffs cannot cloak themselves in standing with allegations about putative class members who purchased or acquired Colonial's common stock allegedly traceable to the Company's April 23, 2008 stock offering. (*See* Compl. ¶ 458; *see also id.* ¶¶ 436, 439, 450, 452, 456, 459). It is black-letter law that a named plaintiff cannot circumvent the standing

---

[3] At this particular point in the proceedings, the Underwriter Defendants are not challenging the standing of one Lead Plaintiff (The Horace F. Moyer and Joan M. Moyer Living Trust) to bring claims related to the February 2008 note offering. Obviously, the Underwriter Defendants reserve the right to make such a challenge at a later date.

requirement by purporting to represent absent class members who themselves might have standing, were they to sue as named plaintiffs. *See Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. July 16, 1981) (binding former Fifth Circuit decision holding that "[i]nclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue. *If the plaintiff has no standing individually, no case or controversy arises*.") (emphasis added); *accord Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal quotation marks omitted)); *Warth*, 422 U.S. at 501 (a "plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[T]he threshold question is whether the *named plaintiffs* have individual standing, in the constitutional sense, to raise certain issues.") (emphasis added); *see also Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677, 2000 WL 1886605 at *1 (S.D.N.Y. Dec. 28, 2000) ("If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.")

Courts have routinely rejected attempts by lead plaintiffs to bootstrap their way around the Section 11 standing requirement by pleading their case as a putative class action:

> [I]t is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class – that is, *a named plaintiff must have purchased shares traceable to the challenged offering*. . . . Nowhere in the complaint is it alleged that any named plaintiff meets this requirement. . . . [T]hey cite no portion of the voluminous complaint, or any

> document referenced in it, that establishes that any *named* plaintiff can trace his, her or its shares to that offering. . . . [A]bsent any such allegation, the named plaintiffs lack standing to assert a claim pursuant to section 11, and therefore to represent the class of purchasers of GC common stock traceable to that offering. Accordingly, Count XII must be dismissed as currently pled.

*In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207-08 (S.D.N.Y. 2003) (emphasis added); *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010) ("The fact remains, however, that plaintiffs have not alleged any injury traceable to the Certificates issued in those offerings.  In consequence, all claims arising from the eighty-eight offerings in which none of the plaintiffs purchased any securities are dismissed.").  Lead Plaintiffs were not faced an insuperable pleading obstacle:  Section 11 required only that they allege (with some measure of detail)[4] that their stock was traceable to the April 2008 offering. *Krim*, 402 F.3d at 495-96; 15 U.S.C. § 77(a); *see also* Und. Br. at 2-5.  Because they have not, and presumably cannot, meet even this low burden, Lead Plaintiffs lack standing to pursue any claims under Section 11 in connection to the April 2008 Stock Offering and their claims are due to be dismissed.

This pleading deficiency is also fatal to Lead Plaintiffs' standing under Section 12, which is "more narrow than section 11 standing." *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 159 (N.D. Tex. 2007).  Specifically, "[S]ection 12(2) of the 1933 Act does not apply to aftermarket transactions." *First Union Discount Brokerage Serv., Inc. v. Milos*, 997 F.2d 835, 843-44 (11th Cir. 1993); *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676 (N.D. Ala. 2005) ("[O]ur Circuit has squarely held that Section 12(a)(2) [formerly Section 12(2)] does not apply to after-market transactions."); *In re Friedman's, Inc.*, 385 F. Supp. 2d at 1367

---

[4] A Section 11 complaint must "suggest[] what evidence [the plaintiffs] intend to use to show that the particular shares purchased . . . can be traced to the [offering in question]." *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1376 (M.D. Fla. 2008).

("Only purchasers of stock in initial distributions to the public have standing to bring suit under Section 12(a)(2)."); *see also Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 693 (3d Cir. 1991) ("[S]ection 12(2) applies only to initial offerings and not to aftermarket trading."). Thus, to establish Section 12 standing, Lead Plaintiffs had to allege that they bought their Colonial stock *directly from the Underwriter Defendants in the April 2008 Stock Offering* (as opposed to buying it in the open market or during a prior stock offering).  They do not so allege. This Court is therefore powerless to entertain their claims associated with the April 2008 Stock Offering.  *See, e.g.*, *Stalley ex rel. United States*, 524 F.3d at 1235; *see also DiMaio*, 520 F.3d at 1301 (courts are not free to "speculate concerning the existence of standing.") (internal quotation marks omitted).  (*See also* Und. Br. at 4-5; Und. Reply Br. at 4-6).

Nor may Lead Plaintiffs hide their lack of standing behind allegations related to their other claims, including claims under Sections 11 and 12 connected to the 2008 Note Offering. Although the named or Lead Plaintiffs may arguably have pleaded standing to assert other claims, they have not alleged that they have standing to assert claims under Sections 11 and 12 related to the 2008 Stock Offering because they do not assert *they themselves* own stock traceable to the that particular offering.[5]   As the Eleventh Circuit has made abundantly clear, it is not enough to allege standing for other claims.  Lead Plaintiffs must have standing for *each* claim they assert:

> Moreover, it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.

---

[5] The "traceability" requirement applies to claims under Section 11.  As shown above, Section 12 requires a direct transaction between a plaintiff and a defendant (*i.e.*, it does not reach aftermarket transactions).

*Griffin*, 823 F.2d at 1483.  This settled precedent echoes that of the Supreme Court.  *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").  Because Lead Plaintiffs have failed to identify a *single* Lead or named plaintiff that purchased Colonial stock directly traceable to, much less directly from, the April 2008 Stock Offering, they lack standing as to those claims, and, absent jurisdiction, Counts VI and VII must be dismissed.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE UNDERWRITER DEFENDANTS.

Even if they had standing to pursue all of their claims, Lead Plaintiffs have failed to allege facts sufficient to state a single claim against the Underwriter Defendants on which relief can be granted.  Lead Plaintiffs have not alleged an actionable misstatement or omission of material fact, the *sine qua non* of a viable claim under Sections 11 and 12.  *See In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1365 (N.D. Ga. 2005).  Absent an explanation from the Court, the Underwriter Defendants are left to speculate as to which specific statements Lead Plaintiffs have sufficiently alleged as misleading.  On this motion to reconsider, the Underwriter Defendants respectfully seek clarification from the Court as to the allegedly misleading statements in the 2007 10-K pleaded in the Complaint.  Such guidance as to which statements are potentially actionable based on the pleadings will frame the future course of the litigation and will focus the parties on the issues properly before the Court.

### A.    The Statements Indentified in the Complaint Are Not False or Misleading.

The Lead Underwriters are not alleged to have directly made any false or misleading statements.  Instead, Lead Plaintiffs rely on the following allegedly-actionable statements

contained in Colonial's 2007 Form 10-K that was incorporated by reference into the offering materials:

> (a) the goodwill impairment analysis for 2007 indicated that no impairment write-offs were required; (b) Colonial maintained "conservative underwriting" standards; (c) Colonial was "committed to the early recognition of problem loans and to ensuring an adequate level of allowance to cover inherent losses"; and (d) Colonial had collateral guidelines that required Loan-To-Value ("LTV") ratios of a certain minimum percentage in each loan sector.

(Compl. ¶ 368). Despite Lead Plaintiffs protestations, these four statements are a far cry from the materially false or misleading representations necessary to sustain a securities action. (*See* Und. Br. at 7-23; Und. Reply Br. at 6-10)

### 1.     *Goodwill Impairment*

The Complaint provides a single basis for concluding that Colonial's goodwill should have been written down in 2007: the fact that it was written down one year later, in 2008. (Compl. ¶ 394). It is rank speculation to infer a problem in 2007 from a problem in 2008. This is particularly true given the multi-faceted nature of the goodwill inquiry, a fact noted by Lead Plaintiffs. (*See* Compl. ¶ 131 n.1) (the fair market values used in goodwill analysis are based on an array of factors, including "discounted cash flow models derived from internal earnings forecasts," "future growth rates," "terminal values," and "weighted average cost of capital").

"A court evaluates whether the statement or omission was misleading at the time it was made," *Zucker v. Quasha*, 891 F. Supp. 1010, 1014 (D.N.J. 1995), and the presence of an impairment in goodwill at the end of 2008 fails to show that an impairment existed in 2007 or that the statement in the Form 10-K that no write-off for goodwill impairment was required was false or misleading. "The mere fact that the [company] requested more information in fiscal year [2008] and that a writeoff occurred in the last quarter, standing alone, provides no evidence that

there was an accounting problem in [2007]." *In re Airgate PCS, Inc. Sec. Litig.*, 389 F. Supp. 2d 1360, 1377 (N.D. Ga. 2005).  *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1193 (11th Cir. 2002). Lead Plaintiffs' allegations about the goodwill impairment, which are based on nothing more than unsubstantiated supposition and hindsight, plausibly fail to allege an actionable false or misleading statement.  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  (*See* Und. Br. at 10-12; Und. Reply Br. at 7-8).

2.      *Conservative Underwriting Standards*

Lead Plaintiffs also challenge the truthfulness of statements in the 2007 10-K about Colonial's underwriting standards.  However, they fail to allege facts that, if true, would suggest that these general statements about Colonial's underwriting procedures were false or misleading when made.  (*See* Und. Br. at  12-20; Und. Reply Br. at 8-9).

For instance, Lead Plaintiffs suggest that statements in the 2007 10-K about Colonial's "strong and effective loan approval process" must be false because Colonial employees other than the loan operations personnel were allegedly permitted to review and approve loans. (Compl. ¶¶ 396-406).   However, the 2007 10-K does not specify the logistics of the loan approval process or suggest that any particular personnel were tasked with reviewing loan applications. The fact that personnel other than the loan operations team were (allegedly) responsible for approving loans does not imply that loans were unchecked or that the loan approval process was inefficient or employed lax standards.   In fact, the allegations in the Complaint suggest the opposite:  that more company personnel were reviewing the loan applications, providing greater oversight and a more effective review process. Because the allegations in the Complaint, while voluminous, do not allege facts to support Lead Plaintiffs'

10

claim that the statements in the 2007 10-K about Colonial's underwriting standards were false or misleading when made, the statements are not actionable under the securities laws. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 624 (1st Cir. 1996) ("The district court held that the Prospectus would not bear the characterizations plaintiffs sought to place on it, and that the allegedly actionable 'representations' were no more than unreasonable inferences drawn by plaintiffs and unsupported by the surrounding language.").

> 3. *Adequate Loss Allowances*

Lead Plaintiffs have also failed to plead facts sufficient to support their conclusory allegation that "Colonial had insufficient capital allowance to cover inherent losses in its loan portfolio." (Compl. ¶ 369). Other than a couple of passing references, Plaintiffs have failed even to identify the offending language regarding loan losses in the Form 10-K. (*Id.* ¶ 368, 409). Nor have they offered any factual basis to support their implied claim that Colonial did not have "an adequate level of allowance to cover inherent losses." (*Id.* ¶ 368).

At most, Lead Plaintiffs suggested in their briefing, that Colonial "experienced a groundswell of non-performing assets in its loan portfolio, which necessarily required a significant capital cushion" and led to the 2008 stock and note offerings. (*See* Pacer Doc. No. 282 at 22). But this allegation, which focuses on occurrences in 2008, not 2007, does not undermine the 2007 10-K statement that Colonial "was committed . . . to ensuring an adequate level of allowance to cover inherent losses." If anything, Colonial's issuance of new stock and notes suggests that it was furthering its commitment to an adequate level of loss allowance. Lead Plaintiffs' conclusory statements to the contrary are unconvincing and a far cry from plausibly suggesting that the 2007 10-K statements about loss coverage were false or misleading. (*See* Und. Br. at 9; Und. Reply Br. at 9-10).

Only when a plaintiff has identified the statements or omissions that are "specifically named in the complaint" and identified "the manner in which . . . the [statements are] false and misleading" has he properly stated a claim, *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 599 (E.D. Mich. 1985), and the cursory reference to loan levels does not satisfy even the minimal requirements of notice pleading, does not permit a proper response, and cannot form the basis of Plaintiffs' cause of action.  FED. R. CIV. P. 8.

### 4.    *Collateral Guidelines*

Lead Plaintiffs have also failed to plead sufficient facts to support their allegation that statements in the 2007 10-K about Colonial's collateral guidelines were false or misleading. (*See* Und. Br. at 20-23; Und. Reply Br. at 10).  For instance, Lead Plaintiffs have not alleged that the standard procedures referenced in the 2007 10-K, including loan-to-value ratios, were unchecked by other personnel at Colonial.  (Und. Br. at 21-22).  In fact, the 2007 10-K identifies a variety of personnel within Colonial that were responsible for oversight and monitoring of collateral values. (*Id.* at 22).  Lead Plaintiffs have pleaded no facts to suggest that these individuals abdicated their duties and were not monitoring collateral values and underwriting standards. Instead, they take a snapshot of the practices of a single team of six people at an undetermined point in time and seek to extrapolate their behavior to an entire company.  This implausible leap fails to satisfy even the modest pleading standard of Rule 8.  *See Iqbal*, 129 S. Ct. at 1949-50; *Oxford*, 297 F.3d at 1188.

### B.    **The Complaint Does Not Identify An Actionable Omission.**

Nor do Lead Plaintiffs identify an actionable omission in the offering materials. Although Lead Plaintiffs suggest that certain facts were allegedly omitted from Colonial's statement about its collateral guidelines, the Complaint is devoid of any facts to support their

assumption that the information included in the 2007 10-K was inaccurate or incomplete.  (Und. Br. at 22-23; Und. Reply Br. at 10-11).   Moreover, Lead Plaintiffs have cited no changed circumstances that would give rise to a duty to disclose. (*See* Und. Br. at 22-23).  *See generally Oxford*, 297 F.3d at 1190-92.  As such, Lead Plaintiffs' claims premised on alleged omissions are fatally deficient.

>        **C.    Any Alleged Misrepresentations or Omissions Are Immaterial and Non-Actionable.**

Even if the statements identified in the Complaint can be construed as false or misleading, that alone is not enough to sustain Lead Plaintiffs' claims under Sections 11 and 12.  *See SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1323 (11th Cir. 1982).  The statements must also be material. To be material, the misrepresentation must be one that a reasonable investor would attach importance to in determining his course of action. *See id.*; *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 658 (S.D.N.Y. 2004).

The alleged misrepresentations identified in the Complaint are anything but material. They are either statements of present or historical fact; or constitute mere puffery; or are vague statements that relate to Colonial's general business practices that would be wholly unimportant to the objective investor.  (Und. Br. 18-23).  *See In re AMDOCS Sec. Litig.*, 390 F.3d 542, 548 (8th Cir. 2004) ("Alleged misrepresentations can be immaterial as a matter of law if they: 1) are of such common knowledge that a reasonable investor can be presumed to understand them; 2) present or conceal such insignificant data that, in the total mix of information, it simply would not matter; 3) are so vague and of such obvious hyperbole that no reasonable investor would rely upon them; or 4) are accompanied by sufficient cautionary statements."); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1360 (N.D. Ga. 2002).  Because these statements about underwriting standards, collateral guidelines, loss allowances, and goodwill impairment would

not "have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," they are immaterial as a matter of law and cannot form the basis for a securities action.  *See In re WorldCom*, 346 F. Supp. 2d at 658.

Moreover, the extensive cautionary language contained in the prospectuses negates any potential that the general business statements could be construed as materially misleading.  *See In re AMDOCS Sec. Litig.*, 390 F.3d at 548; *Zucker v. Quasha*, 891 F. Supp. 2d 1010, 1014 (D.N.J. 1995). The warnings provided to investors in the prospectuses were abundant, explicit, and aimed at the exact risks that Lead Plaintiffs allege ultimately caused their losses.  (Und. Br. at 23-25).  In short, no reasonable investor would have been misled in the light of the extensive disclosures throughout the prospectus.  (*Cf.* Und. Br. at 23-26); *see generally In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 255 (S.D.N.Y. 2004) ("When a prospectus contains detailed disclosures of the relevant risks involved, general statements concerning the state of the industry, such as the ones made here, are immaterial as a matter of law.").

## CONCLUSION

For the reasons set forth above, the Underwriter Defendants respectfully request that the Court reconsider its previous Order and grant the Motion to Dismiss.

By: /s/ Carl S. Burkhalter
A. Inge Selden, III
iselden@maynardcooper.com
Carl S. Burkhalter (BUR086)
cburkhalter@maynardcooper.com
Alan F. Enslen
aenslen@maynardcooper.com
Steven L. McPheeters
smcpheeters@maynardcooper.com

*Attorneys for Underwriter Defendants*

**<u>OF COUNSEL</u>:**

**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Samuel H. Franklin
sfranklin@lightfootlaw.com
James F. Hughey
jhughey@lightfootlaw.com
Enrique "Henry" J. Gimenez
hgimenez@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE,
LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200

Robert D. Segall
segall@copelandfranco.com
COPELAND, FRANCO, SCREWS &
GILL, PA
44 South Perry Street
P.O. Box 437
Montgomery, Alabama 36101-0347

Thomas A. Dubbs
tdubbs@labaton.com
James W. Johnson
jjohnson@labaton.com
Angelina Nguyen
anguyen@labaton.com
Alan Ellman
aellman@labaton.com
Christopher J. Keller
ckeller@labaton.com
Stefanie Sundel
ssundel@labaton.com
Thomas G. Hoffman
thoffman@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005

Tyrone C. Means
tcmeans@tmgslaw.com
H. Lewis Gillis
hlgillis@tmgslaw.com
Gerald C. Brooks
gcbrooks@tmgslaw.com
THOMAS, MEANS, GILLIS & SEAY, PC
3121 Zelda Court
Montgomery, Alabama 36106

Larry B. Childs
larry.childs@wallerlaw.com
WALLER LANSDEN DORTCH & DAVIS
LLP
1901 Sixth Avenue North
Suite 1400
Birmingham, Alabama 35203

Tabor R. Novak, Jr.
tnovack@ball-ball.com
E. Ham Wilson., Jr.
hwilson@ball-ball.com
BALL, BALL, MATTHEWS & NOVAK,
P.A.
P.O. Box 2148
Montgomery, Alabama 36102-2148

Elizabeth V. Tanis
etanis@kslaw.com
Dan S. McDevitt
dmcdevitt@kslaw.com
Shelby S. Guilbert, Jr.
sguilbert@kslaw.com
G. Patrick Montgomery
pmontgomery@kslaw.com
KING & SPALDING, LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309-3521

Kimberly A. Sanders
kas@chimicles.com
Steven A. Schwart
sas@chimicles.com
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041

Ira M. Levee
ilevee@lowenstein.com
Michael Etkin
metkin@lowenstein.com
LOWENSTEIN SANDLER PC
65 Livingston Ave
Roseland, NJ 70680
973-597-2500

Geoffrey M. Ezgar
gezgar@kslaw.com
KING & SPALDING, LLP
333 Twin Dolphin Dr. Suite 400
Redwood Shores, CA 94065
650-590-0700
650-590-1900 (fax)

Michael Dampier
stevedampier@bellsouth.net
VICKERS, RIIS, MURRAY AND
CURRAN, LLC
P.O. Box 2568
Mobile, Alabama 36652-2568
251-928-9160
251-928-2834 (fax)

Walter Edgar McGowan
wem@glsmgn.com
GRAY LANGFORD SAPP MCGOWAN
GRAY, GRAY & NATHANSON PC
P.O. Box 930239
Tuskegee, Alabama 36083-0239
334-727-4830
334-727-5877 (fax)

Sheila Watters Sawyer
Sheila.sawyer@wallerlaw.com
WALLER LANSDEN DORTCH &
DAVIS, LLP.
511 Union Street
Nashville, Tennessee 37219
615-850-8949

/s/ Carl S. Burkhalter
OF COUNSEL