# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

|  |  |  |
|---|---|---|
| | **}** | |
| | **}** | |
| **In re COLONIAL BANCGROUP,** | **}** | **Case No.: 2:09-CV-00104-RDP-WC** |
| **INC. SECURITIES LITIGATION** | **}** | |
| | **}** | |
| | **}** | |
| | **}** | |

## MEMORANDUM OPINION

This matter is before the court on the remaining portion of PwC's Motion to Dismiss

Plaintiffs' First Amended Consolidated Class Action Complaint ("FAC") (Doc. # 436), and deals

with a claim asserted against PwC not addressed in the court's prior Order. (Doc. # 522).  That

particular claim arises under Section 10(b) of the Securities Exchange Act of 1934 (the "Act"),

which forbids:

> [A]ny person, directly or indirectly ... [from] ... us[ing] or employ[ing], in connection
> with the purchase or sale of any security registered on a national securities exchange
> ... any manipulative or deceptive device or contrivance in contravention of such rules
> and regulations as the Commission may prescribe as necessary or appropriate in the
> public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5, issued by the Securities Exchange Commission under Section 10(b)

of the Act, makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact
> necessary in order to make the statements made, in the light of the circumstances
> under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would
> operate as a fraud or deceit upon any person, in connection with the purchase or sale
> of any security.

17 C.F.R. § 240.10b-5.

**I.      Applicable Law**

Pursuant to Section 10(b) and Rule 10b-5, a securities fraud claim based on failure to reveal

information to investors has six required elements: "(1) a material misrepresentation or omission;

(2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the

misstatement or omission; (5) economic loss; and (6) a causal connection between the material

misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home*

*Depot, Inc.*, 544 F.3d 1230, 1236-37 (11th Cir. 2008) (quoting *Dura Pharms., Inc. v. Broudo*, 544

U.S. 336, 341-42 (2005)).

Securities fraud claims, like general fraud claims, must meet the heightened pleading

standard of Federal Rule of Civil Procedure 9(b), which requires that such claims be pled with

"particularity." Fed.R.Civ.P. 9(b). The requirements of Rule 9(b) are designed to notify defendants

of the "precise misconduct with which they are charged." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d

1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.

1988) but internal quotations omitted). In *Ziemba*, the Eleventh Circuit found that Rule 9(b) was

satisfied when the complaint states "(1) precisely what statements were made in what documents or

oral representations or what omissions were made, and (2) the time and place of each such statement

and the person responsible for making (or, in the case of omissions, not making) same, and (3) the

content of such statements and the manner in which they misled the plaintiff, and (4) what the

defendants obtained as a consequence of the fraud." *Id.* (quoting *Brooks v. Blue Cross and Blue*

*Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). Under Rule 9(b), "[m]alice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. C iv. P. 9(b).

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), which was intended to be "a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Upon its passage, the PSLRA was intended to impose stringent pleading requirements on securities fraud plaintiffs and made two important changes in the area of securities fraud class action pleading. First, a securities fraud class action complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b) (1)(B). Second, the PSLRA requires a securities fraud plaintiff to offer heightened pleading of scienter:

> in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). The Supreme Court has held that this "strong inference" of scienter is met when the inference is "more than merely plausible or reasonable – it must be cogent and *at least as compelling* as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314 (emphasis added). This inquiry should focus on whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 323.

The Eleventh Circuit has also addressed claims under Section 10(b) and Rule 10b-5 and has found that those provisions "require a showing of either an 'intent to deceive, manipulate, or

defraud' or 'severe recklessness.'" *Mizzaro*, 544 F.3d at 1238 (quoting *Bryant v. Avado Brands, Inc.*,

187 F.3d 1271, 1282 (11th Cir. 1999)).

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* Our court of appeals has explicitly rejected "the notion that allegations of motive and opportunity

to commit fraud, standing alone, are sufficient to establish scienter in this Circuit." *Bryant*, 187 F.3d

at 1285-86.

To be sure, section 10(b) and Rule 10b-5 do not protect investors against negligence or

corporate mismanagement. *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,

537 F.3d 527, 539 (5th Cir. 2008). Furthermore, "[w]hile the consequences of [] fraud are dire

indeed, the PSLRA limits the extent to which outside auditors—only indirectly involved with any

wrongdoing—may be held accountable for investors' losses." *Iowa Public Employee's Retirement*

*System v. Deloitte & Touche LLP*, 919 F.Supp.2d 321, 326 (S.D.N.Y. 2013).

## II.    The Alleged Misstatements

Although the FAC alleges a number of alleged misstatements, Plaintiffs seek to hold PwC

liable only for certain of its opinions related to Colonial's financials. In particular, in their most

recent pleading, Plaintiffs allege that PwC made three false and misleading statements in its audit

reports issued in connection with Colonial's 2007 and 2008 year end consolidated financial

statements:

(1)    That Colonial's 2007 and 2008 financials were accurate and complied with GAAP;

(2)     PwC conducted its 2007 and 2008 audits of Colonial's financials in accordance with GAAS; and

(3)     Colonial maintained, in all material respects, effective internal control over financial reporting as of December 31 in 2007 and 2008.

(Doc. # 424 at ¶¶ 701-02).

## III.     Discussion

PwC argues that Plaintiffs' claims against it fail at the threshold for at least three reasons. First, PwC contends that Plaintiffs have failed to allege material misrepresentations. Second, PwC asserts that Plaintiffs have failed to adequately plead scienter. Finally, PwC argues that Plaintiffs have not plead loss causation. These contentions are addressed in turn below.

### A.     Plaintiffs Have Failed to Allege Material Misstatements

A review of Plaintiffs' pleadings makes clear that the alleged misstatements reflect PwC's *opinions* as to Colonial's financial reports. *See Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 2086607, at *2 (C.D. Cal. 2012) ("An auditor's report is a statement of professional opinion, not fact." (citing *In re Lehman Bros. Sec & ERISA Litig.*, 799 F.Supp.2d 258, 300-03 (S.D.N.Y. 2011) (holding that statements regarding compliance with GAAS and GAAP are inherently statements of opinion)); *see also Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F.Supp.2d 1210, 1228 n.17 (N.D. Ga. 2012) ("audit opinions are statements of opinion or belief about [a company's] financial results, the effectiveness of a company's internal controls, and compliance with accounting standards.").

"To state a § 10(b) claim against an issuer's accountant, a plaintiff must allege a misstatement that is attributed to the accountant 'at the time of its dissemination,' and cannot rely on the accountant's alleged assistance in the drafting or compilation of a filing." *Lattanzio v.*

*Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007) (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 174 (2d Cir. 1998)).   "If the statement is an opinion, it is actionable only if 'the complaint alleges that the speaker did not truly have the opinion at the time it was issued.'"  *Perry v. Duoyuan Printing, Inc.*,  2013 WL 4505199, at *5 (S.D.N.Y. 2013) (quoting *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F.Supp.2d 485, 494 (S.D.N.Y. 2010) and citing *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1131 (2d Cir. 1994)).  Alternatively, a complaint must allege facts that, if true, would permit a conclusion that the auditors knew that they had no reasonable basis for their opinion. *In re China Valves Technology Securities Litigation*, 2013 WL 5708570, at *10 (S.D.N.Y. 2013) (quoting *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F.Supp.2d 258, 293-94 (S.D.N.Y. 2011)).

In *Garfield*, the Eleventh Circuit provided us a common sense model to evaluate whether a securities plaintiff's allegations are sufficiently particularized.  There, the court noted that Rule 9(b) requires a plaintiff to plead "the who, what, when, where and how [of the alleged fraud]: the first paragraph of any newspaper story."  466 F.3d at 1262.  Plaintiffs' pleadings fall far short of *Garfield's* requirements.

In large measure, Plaintiffs rely on reports issued or events occurring after the fact to allege that PwC had no reasonable basis for its 2007 and 2008 clear audit opinions.  In the section of the FAC addressing "Material Misstatements by PwC," paragraph 701 alleges that PwC's statements in the 2007 and 2008 audit reports were "untrue for the reasons set forth in Section VII.FF above." (Doc. # 424 at ¶ 701).  Section VII.FF of the FAC is entitled "False and Misleading Statements Approved by PwC."  (Doc. # 424 at ¶¶ 584-85).  The allegations contained within that section are found in paragraphs 585 through 661.  Nowhere in those paragraphs do Plaintiffs allege that PwC

"did not truly have the [stated] opinion at the time it was issued.'" *Perry*, 2013 WL 4505199, at *5. (Doc. # 424 at ¶¶ 584-661).    Rather, Plaintiffs merely repeat allegations to the effect that "Defendants knew or were reckless in not knowing that *Colonial's* accounting practices [or underwriting standards] and controls were weak and resulted in inaccurate" measurements.  (*See, e.g.*, Doc. # 424 at ¶¶ 597, 604, 608, 610, 612, 616, 621, 635, 646, 650, and 653) (emphasis added)). In addition, these paragraphs fail to allege that PwC had no reasonable basis for its opinion.

This is "the classic fraud by hindsight case where a plaintiff alleges that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly." *Louisiana School Employees' Retirement System v. Ernst & Young, LLP*, 622 F.3d 471, 484 (6th Cir. 2010) (quoting *Konkol v. Diebold, Inc.*, 590 F.3d 390, 403 (6th Cir. 2009)).  To be sure, the financial failure of Colonial occurred during a historic recession.  But even in circumstances not involving such a recession, when an audited entity's financials turn out to be false, courts routinely have rejected this type of fraud-by-hindsight pleading directed at the auditor.  *See, e.g., Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.").  Hindsight allegations simply do not suggest fraud.  Without specific allegations that PwC either knew or recklessly disregarded the falsity of its own statements at the time the statements were made, the fact that the statements later turned out to be false is irrelevant to a cause of action under the PSLRA.  Plaintiffs have failed to allege facts sufficient to show that PwC either did not in fact hold the opinions stated in the audit reports, or that there was no

reasonable basis for those opinions.[1]   That is, Plaintiffs' allegations do not address whether

Colonial's 2007 financial statements were misstated when they were issued.  *See, e.g., In re Fannie*

*Mae*, 742 F.Supp.2d at 411 (finding that post-conservatorship write-down of securities did not

support allegations that impairment existed at the time the financial statements were issued).

Therefore, they have failed to adequately allege particularized facts that, if proven, would show that

PwC made any material misstatements of fact.

**B.   Plaintiffs Have Failed to Adequately Plead Scienter**

Some rules of law have developed in the securities area when a securities plaintiff's case

targets an outside accounting firm performing an audit.  "An outside auditor will typically not have

an apparent motive to commit fraud, and its duty to monitor an audited company for fraud is less

---

[1]   By way of example, Plaintiffs' allegations relating to goodwill are fairly typical of the FAC's fraud-by-hindsight approach.  Likewise, the FAC follows this same formula in challenging matters related to Colonial's allowance for loan losses and its valuation of its mortgage-backed securities. But, for reasons explained in Defendants' briefing (*see* Doc. # 437 at 35-37), Plaintiffs cannot sustain those claims on such theories.

GAAP sets forth a fact-intensive, two-part test for determining whether goodwill has been impaired (*i.e.*, worth less than the amount recorded).  By its very nature, this test requires a company to make subjective estimates, including projections related to its future cash flow and the future value of its assets and liabilities. (*See* Doc. # 424 at ¶ 241; Doc. # 437-6 at 21-22).  Colonial tested its goodwill for impairment in the third quarter of 2007, at the end of 2007, and throughout 2008.  On each of those occasions, it was determined that it did not need to reduce the recorded value of that asset.  (Note: The court acknowledges Plaintiffs' assertion that Colonial did not test for goodwill impairment between the third quarters of 2007 and 2008 (Compl. ¶ 251) is not only flat wrong, it is also inconsistent with other allegations in the FAC.  Colonial's public filings show that the Company tested for goodwill impairment during that period. *See* Doc. # 424 at ¶ 494 (quoting Colonial's SEC filings)).  In the fourth quarter of 2008, as the economic crisis reached a crescendo, the bank recorded a $575 million reduction to goodwill.  (*Id*. at ¶ 10).

Rather than alleging particularized facts showing that the GAAP criteria for goodwill impairment required Colonial to reduce goodwill in its year-end 2007 financial statements, Plaintiffs allege merely that Colonial should have reduced its goodwill earlier because it eventually was required to take a large impairment charge at the end of 2008. (Doc. # 424 at ¶ 254).  But these type of allegations could be leveled against nearly any company following the credit crisis of last decade.  As one court explained in dismissing similar allegations:

> Instead of explaining why optimism [about goodwill] was unwarranted at each step of the way . . ., the amended complaint simply cites disappointing figures from the future as though these are evidence of fraud in the past.  If that were true, of course, we would have to conclude that almost every company in the fall of 2008 was run by fraudsters because their predictions would have been knocked down by the dramatic recession . . . .  It should go without saying that one could be mistaken in a prediction about the future without committing fraud.

*Iron Workers Local No. 25 Pension Fund v. OshKosh Corp.*, 2010 WL 1287058, at *17 (E.D. Wis. Mar. 30, 2010); *see also City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Group Public, Ltd.*, 655 F.Supp.2d 262, 272 (S.D.N.Y. 2009)("That Vodafone ultimately would take an impairment charge in 2006 does not in itself provide an actionable basis to claim that the failure to do so earlier was fraudulent.").  Further, that Colonial tested goodwill throughout 2007 and 2008 to determine whether an impairment existed disaffirms any notion of fraud, *see OshKosh*, 2010 WL 1287058, at *14-17, particularly when it is an auditor's actions that are at issue here.  When an auditor is the target of a Section 10(b) claim, "the plaintiff must plead that the market reacted negatively to some disclosure correcting the falsity in the . . . auditor's statements (not simply the underlying fraud)."  *Amoroso v. Ernst & Young LLP*, 682 F.Supp.2d 351, 363 (S.D.N.Y. 2010).  It is not enough for a plaintiff to allege that the market somehow learned that the auditor's client committed fraud—the disclosure must reveal that the auditor's opinion was false. *Id*.

demanding than the company's duty not to commit fraud. Thus, the failure of a non-fiduciary accounting firm to identify problems with a company's internal controls and accounting practices does not constitute recklessness." *In re Longtop Financial Technologies Ltd. Securities Litigation*, 939 F.Supp.2d 360, 377 (S.D.N.Y. 2013), citing *Stephenson v. PricewaterhouseCoopers, LLP*, 482 Fed.Appx. 618, 623 (2d Cir. 2012), in turn citing *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (internal quotations and alterations omitted). "In a common formulation, such recklessness must approximate an actual intent to aid in the fraud being perpetrated by the audited company." *In re Longtop Financial Technologies Ltd. Securities Litigation*, 939 F.Supp.2d at 377 (internal quotations omitted but quoting *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 Fed.Appx. 636, 639-40 (2d Cir. 2012) and in turn quoting *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000)); *accord Iowa Public Employee's Retirement System*, 919 F.Supp.2d at 344. It is simply not sufficient to allege that a defendant should have performed a better or more thorough investigation of the financials at issue or that the auditor had access to the information by which it could have discovered the fraud. *In re Longtop Financial Technologies Ltd. Securities Litigation*, 939 F.Supp.2d at 378. A plaintiff's section 10(b) claim may only survive "if no reasonable auditor, with access to the type of information present in [Colonial's] books and records, would have made the decision to issue a clean audit report." *Iowa Public Employee's Retirement System*, 919 F.Supp.2d at 336 (citing *In re Scottish Re Group Sec. Litig.*, 524 F.Supp.2d 370, 385 (S.D.N.Y. 2007)).

Mere allegations of GAAP and GAAS violations are "insufficient to plead scienter against an outside auditor for the purposes of Section 10(b)." *In re Longtop Financial Technologies Ltd. Securities Litigation*, 910 F.Supp.2d 561, 576 (S.D.N.Y. 2012). However, in combination with allegations that an auditor ignored certain "red flags," a combination of such violations *may*

sufficiently state the requisite state of mind.  *Iowa Public Employee's Retirement System*, 919

F.Supp.2d at 336 (emphasis added) (citing *In re Scottish Re Group Sec. Litig.*, 524 F.Supp.2d at

385).

In the Eleventh Circuit, "[r]ed flags are 'those facts *which come to the attention of an auditor*

which would place a reasonable auditor on notice that the audited company was engaged in

wrongdoing to the detriment of its investors.' ...  'It is established, however, that the purported red

flags cannot simply "re-hash" the alleged GAAP violations.'"  *Garfield v. NDC Health Corp.*, 466

F.3d 1255, 1268 (11th Cir. 2006) (emphasis added and internal citations omitted).  A plaintiff

pleading scienter based on an "ignoring [a] red flag" theory must plead red flags that are more than

simply the "boilerplate 'red flags,' present in almost every securities fraud action, [such as] that the

audited company had weak internal accounting controls." *Reiger v. Price Waterhouse Coopers, LLP*,

117 F.Supp.2d 1003, 1009 n.5 (S.D. Cal. 2000) (citing *Novak*, 216 F.3d 300, 309 (2d Cir. 2000)).

Moreover, a securities fraud plaintiff must do more than allege that the auditor had *access* to

information which would have revealed to it the purported red flags:

> Notably, if an auditor is "not aware of facts indicating that a transaction was
> suspicious, or part of a fraud, the auditor's failure to investigate the
> transaction—even if negligent—does not provide a basis for a fraud claim." *In re*
> *CBI Holding Co., Inc.*, 419 B.R. 553, 566-67 (S.D.N.Y. 2009). In the context of red
> flags, courts have also noted that an auditor's access "to the information by which it
> could have discovered the fraud is not sufficient" to establish recklessness. *In other*
> *words, auditor access is not tantamount to auditor awareness. In re Tremont Sec.*
> *Law, State Law & Ins. Litig.*, 703 F.Supp.2d 362, 371 (S.D.N.Y. 2010) (citing *In re*
> *aaiPharma, Inc., Securities Litig.*, 521 F.Supp.2d 507, 513-14 (E.D.N.C. 2007) ("For
> example, merely because a person has broad access to every book in a library does
> not mean that the person has read and chosen to ignore facts contained in a particular
> book in the library. Merely alleging that [the auditor] had broad access to [the
> client's] operations at best supports an inference that [the auditor] was negligent, and
> more likely supports nothing at all.")).

*Iowa Public Employee's Retirement System*, 919 F.Supp.2d at 332.

The heart of the court's scienter analysis focuses on Plaintiffs' "red flag" allegations in the FAC since the scienter analysis turns on this issue. Rather than setting forth all of those allegations here—allegations which span twenty-six pages of the FAC—the court incorporates by reference those sections of Plaintiffs' FAC which set forth the "red flag" allegations and will address select items. (Doc. # 424 at ¶¶ 709-90).

The court has closely reviewed the "red flag" allegations in the FAC and finds the following deficiencies. The vast majority of the "red flag" section of the FAC recites auditing standards and regulatory investigations of Colonial. (Doc. # 424 at ¶¶ 709-90). This section also allege that "had PwC conducted its audits of Colonial in accordance with GAAS, PwC would have been alerted" to various alleged facts. In many instances, Plaintiffs cite evidence which only came to light after the fact – including certain regulatory reports and testimony in a criminal trial in 2011 – as evidence of PwC's scienter in 2007 and 2008. (Doc. # 424 at ¶¶ 782-87).

Many of the paragraphs in the "red flag" section of the FAC merely set forth GAAS and GAAP requirements. (Doc. # 424 at ¶¶ 712, 714, 717-23, 765, 781). Those allegations which cite to auditing standards are just repackaged versions of Plaintiffs' allegations that PwC violated GAAS and GAAP and do not support an inference of scienter. *See Garfield*, 466 F.3d at 1268 ("the purported red flags cannot simply re-hash the alleged GAAP violations") (internal quotation marks omitted).

As to other alleged "red flags," Plaintiffs merely allege that PwC was "bound to know," "bound to review," or "knew or was reckless in not knowing" information contained in certain regulatory materials. (Doc. # 424 at ¶¶ 715, 726, 727, 729, 730, 733-35, 738, 740, 742, 746, 748,

749, 752, 753).  However, allegations that an auditor had *access* to information which would have revealed to it the purported red flags is *insufficient* to establish scienter.  "[A]uditor access is not tantamount to auditor awareness." *Iowa Public Employee's Retirement System*, 919 F.Supp.2d at 332, citing *In re Tremont Sec. Law, State Law & Ins. Litig.*, 703 F.Supp.2d 362, 371 (S.D.N.Y. 2010), and in turn citing *In re aaiPharma, Inc., Securities Litig.*, 521 F.Supp.2d 507, 513-14 (E.D.N.C. 2007).  Red flags are facts which *actually* come to the attention of an auditor.  *Garfield*, 466 F.3d at 1268.  Plaintiffs have failed to allege that these investigatory materials actually came to PwC's attention during its audits.

Moreover, only some of the regulatory materials Plaintiffs allege "were bound to" have come to PwC's attention during its 2007 and 2008 audits were even created before PwC issued the relevant audit reports.  The OIG Report heavily relied upon by Plaintiffs (Doc. # 424 at ¶¶ 711, 724, 729, 734(a)-(j), 738 (a)-(e), 739, 743 (a)-(g), 744, 745, 749-51, 755, 773, 779, 780) was issued in 2010.  The FDIC June 2008 Examination Report also relied upon by Plaintiffs was issued in May 2009.  (Doc. # 437-5 at 4-5).  Moreover, notably, nowhere do Plaintiffs allege when any other such reports came to PwC's attention, or even that they actually did so.  These allegations amount to nothing more than an allegation that PwC had access to documents which should have alerted them to the fraud, which is insufficient to support a finding of the requisite scienter.  *See, e.g., Garfield*, 466 F.3d at 1268; *Iowa Public Employee's Retirement System*, 919 F.Supp.2d at 332.  Certainly, these allegations fail to give rise to a "strong inference" of scienter which is at least as compelling as the opposing inference of non-fraudulent intent.  *See Tellabs*, 551 U.S. at 314.

Furthermore, the after-the-fact 2010 OIG Report in no way criticizes (or even assesses) the quality of PwC's 2007 and 2008 audit opinions, let alone concludes that PwC committed fraud. (*See*

*generally* Doc. # 437-5 - OIG Report).  Indeed, even the regulatory reports that Plaintiffs allege were

"bound to have" been noticed by PwC before it issued one or both of its audit opinions would not

have alerted PwC to any fraud.  Those reports do not suggest that the regulators suspected fraud.

(*See, e.g.,* Doc. # 437 at 15, 20, 29).   To be sure, the regulators whose reports Plaintiffs allege

should have put PwC on notice of fraud did not take any action with regard to Colonial's finances

until they entered into a December 15, 2008 Memorandum of Understanding, and at that stage the

actions taken were designed to "tak[e] steps which [were] expected to improve [Colonial's] asset

quality and capital ... ."  (Doc. # 437-4 at 7).  They did not indicate any suspicion of fraud.

Plaintiffs' FAC is replete with allegations that PwC would have learned the truth as to

Colonial's fraud if PwC had performed the due diligence it promised.  But these allegations are

simply not sufficient to allege scienter.  *Dobina v. Weatherford Int'l Ltd.*, 909 F.Supp.2d 228, 256

(S.D.N.Y. 2012).  Judge Scheindlin's words in *In re Longtop Financial Technologies Ltd. Securities

Litigation* ring true here:

> At bottom, the Complaint alleges fraud by hindsight, a claim that is accorded the
> same respect in this Circuit today as it was when Judge Friendly gave it a name.
> Fraud is always obvious in retrospect, but it is not reckless to lack clairvoyance.
> Apart from its exhaustive recitation of auditing standards and purported red flags, the
> Complaint does little more than allege that, had [PwC] performed a better audit,
> [Colonial's] fraud would have been uncovered sooner. Considering the allegations
> in the Complaint as a whole, the strongest inference is that [PwC] was duped by
> [Colonial and TBW], not that it recklessly enabled them. Accordingly, the Complaint
> fails to adequately plead scienter.

910 F.Supp.2d at 579.

Additionally, Plaintiffs have brought to the court's attention two Complaints filed against

PwC related to its dealings with Colonial and argue that those Complaints support the conclusion

that PwC acted with the requisite scienter.  (Docs. # 461-1 and 488-1).  However, neither of those

Complaints alleges that PwC engaged in fraudulent conduct.  At worst, they allege claims of negligence and breach of contract against PwC. (Docs. # 461-1 and 488-1).  Moreover, they each emphasize the fact that the fraud committed here was committed by Colonial's largest mortgage banking customer, Taylor Bean & Whitaker Mortgage Corp ("TBW"), not PwC. (Docs. # 461-1 and 488-1).  The FDIC's 2012 Complaint alleges that TBW  "committed a massive, multi-year fraud against Colonial ... ." (Doc. # 488-1 at 1).  The allegations against PwC assert that it fell short in its duties by *failing to uncover* fraud, not that PwC participated in any such fraud.  (Docs. # 461-1 and 488-1). Therefore, these related Complaints have no bearing on the court's scienter analysis.

After careful analysis, the court finds that Plaintiffs' allegations of scienter are not as cogent or as compelling as the opposing inference of nonfraudulent intent.  The court finds that all of the facts alleged, taken collectively, do not give rise to the required strong inference of scienter. *Tellabs*, 551 U.S. at 314, 323.

### C.       Plaintiffs Have Failed to Plead Loss Causation

Pursuant to the PSLRA, Plaintiffs must also shoulder the burden of proving that each alleged misrepresentation or omission caused the loss for which Plaintiffs seek to recover damages. *See* 15 U.S.C. § 78u-4(b)(4). That is, Plaintiffs must plead "a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro*, 544 F.3d at 1236-37 (quoting *Dura Pharms., Inc.*, 544 U.S. at 341-42).  The loss causation element requires that a defendant's fraud be both the "but-for" and proximate cause of a plaintiff's later losses. *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1300 (11th Cir. 2012).  "[L]oss causation describes the link between the defendant's misconduct and the plaintiff's economic loss." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997).  However, where the

allegations of a complaint establish that plaintiffs sold all of their stock prior to a corrective

disclosure, those allegations fail to adequately allege loss causation. *See Dura Pharms., Inc.*, 544

U.S. at 342-43 (if the purchaser sells his stock before the relevant truth begins to leak out, the

misrepresentation will not have caused his loss).

"[Al]though § 10(b) is designed to protect against fraud, it is not a prophylaxis against the

normal risks attendant to speculation and investment in the financial markets, and loss causation

therefore ensures that private securities actions remain a scalpel for defending against the former,

while not becoming a meat axe exploited to achieve the latter." *Meyer v. Greene*, 710 F.3d 1189,

1196 (11th Cir. 2013). "A plaintiff may demonstrate loss causation circumstantially, by:

> (1) identifying a "corrective disclosure" (a release of information that reveals to the
> market the pertinent truth that was previously concealed or obscured by the
> company's fraud); (2) showing that the stock price dropped soon after the corrective
> disclosure; and (3) eliminating other possible explanations for this price drop, so that
> the factfinder can infer that it is more probable than not that it was the corrective
> disclosure—as opposed to other possible depressive factors—that caused at least a
> "substantial" amount of the price drop.

*Meyer*, 710 F.3d at 1196 (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1311-12

(11th Cir. 2011). "'To be corrective, [a] disclosure need not precisely mirror the earlier

misrepresentation, but it must at least relate back to the misrepresentation and not to some other

negative information about the company.'" *Meyer*, 710 F.3d at 1196 (quoting *In re Williams Sec.*

*Litig.—WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)).  In other words, "'did the relevant

truth eventually come out and thereby cause the plaintiffs to suffer losses?'" *Meyer*, 710 F.3d at 1197

(quoting *FindWhat*, 658 F.3d at 1312).  "[A] corrective disclosure must 'reveal[ ] to the market the

falsity of [a] prior misstatement [ ].'" *Meyer*, 710 F.3d at 1200 (quoting *FindWhat*, 658 F.3d at 1311

n. 28).

Plaintiffs' FAC identifies five purportedly corrective disclosures that Plaintiffs say revealed the "truth" about PwC's alleged misrepresentations. The court addresses them in turn.

The first alleged partial disclosure was an October 22, 2008 Form 8-K issued by Colonial (Doc. # 424 at ¶ 840) which came after PwC's 2007 audit, but before its 2008 audit. The October 22, 2008 Form 8-K reported that Colonial's non-performing assets, net charge offs, and non-performing loans had increased significantly. Of course, this information is not corrective as to the 2007 audit report because it reported subsequent financial data occurring in 2008, after the 2007 audit report was issued. Nor was it corrective as to the 2008 audit report because it predated that report which was issued on March 2, 2009. Finally, it was not corrective as to any alleged misstatements by PwC; it merely reported negative financial results which were worse than estimated. Therefore, it could not have been a corrective disclosure as to PwC's audit reports. These results "may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharms., Inc.*, 544 U.S. at 343.

The second alleged partial disclosure was a January 27, 2009 announcement by Colonial of its fourth quarter 2008 and fiscal year 2008 results. In this announcement, Colonial communicated a net loss of $825 million for fourth quarter 2008 and $880 million for the year ended December 31, 2008, including $575 million attributable to impairment of goodwill. (Doc. # 424 at ¶ 841). This is not corrective as to PwC's 2007 audit report because it reported subsequent financial results occurring in 2008, after the 2007 audit report was issued. Nor was it corrective as to the 2008 audit

report because it predated that report which was issued on March 2, 2009. Therefore, it could not have been a corrective disclosure as to PwC's audit reports.

The remaining three alleged corrective disclosures are the only ones post-dating PwC's 2008 audit, and those occurred on June 9, 2009, July 31, 2009, and August 7, 2009 respectively. (Doc. # 424 at ¶¶ 842-44). None of the named Lead Plaintiffs owned their stock at the time of these remaining alleged corrective disclosures. (Doc. # 437 at 10, 11, 12, 13). Therefore, these Plaintiffs cannot establish loss causation. Moreover, the Moyer Trust is not a Section 10(b) Plaintiff; rather, it is only an additional named Plaintiff with regarding to the Section 11, 12, and 15 claims. (Doc. # 424 at ¶¶ 19-23, 871). Finally, the Moyer Trust only held Colonial notes to which the Section 10(b) claims do not apply. (Doc. # 424 at ¶¶ 840-44, 871). Therefore, none of the Section 10(b) Plaintiffs have adequately alleged loss causation.

## III.    Conclusion

Plaintiffs have failed to adequately plead three essential elements of their Section 10(b) claim: a material misstatement, scienter, and loss causation. Even a single failure to allege one of these elements is fatal to a securities plaintiff's fraud claim. But here, there is even a greater failure. Plaintiffs have failed to adequately allege all three. Therefore, Plaintiffs' Section 10(b) claim against PwC is due to be dismissed for failure to state a claim. A separate order will be entered.

**DONE** and **ORDERED** this _____27th_____ day of March, 2014.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE