IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Civil Action No. |
| COLONIAL BANCGROUP, INC. | ) | 2:09-CV-00104-RDP-WC |
| SECURITIES LITIGATION | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT WITH REMAINING DEFENDANTS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

I.      Description of the Litigation .................................................................................... 4

II.     Settlement Negotiations ........................................................................................... 6

ARGUMENT ............................................................................................................................. 6

I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 6

        A.      The Settlement is a Result of Good Faith, Arm's-Length Negotiations by
                Well-Informed and Experienced Counsel ................................................... 8

        B.      The Proposed Settlement is Well Within the Range of Reasonableness ................ 9

II.     THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE
        AND PLAN FOR PROVIDING NOTICE ........................................................... 10

III.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
        PURPOSES ................................................................................................... 12

        A.      The Requirements of Rule 23(a) are Satisfied ........................................ 13

                1.      The Settlement Class is Sufficiently Numerous ........................... 13

                2.      There are Common Questions of Law and Fact .......................... 14

        B.      The Proposed Class Representatives Claims are Typical ......................... 15

        C.      The Proposed Class Representatives Will Fairly and Adequately Protect
                the Interests of the Settlement Class ...................................................... 16

        D.      The Proposed Settlement Class Satisfies Rule 23(b)(3) ......................... 17

                1.      Common Questions of Law and Fact Predominate ..................... 17

                2.      A Class Action Is the Superior Method for Resolution .............. 18

CONCLUSION ...................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................12, 17

*Avery v. Uniroyal Tech. Corp.*,
   No. 02-2238, 2005 WL 1205607 (M.D. Fla. May 20, 2005)....................................14

*Barlow v. Marion Cnty. Hosp. Dist.*,
   88 F.R.D. 619 (M.D. Fla. 1980)................................................................................ 13

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) .....................................................................................7

*Borcea v. Carnival Corp.*,
   238 F.R.D. 664 (S.D. Fla. 2006)..........................................................................12, 13

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) .............................................................................16, 17

*Canupp v. Liberty Behavioral Health Corp.*,
   417 Fed. App'x. 843 (11th Cir. 2011) ..........................................................................8

*In re Carbon Dioxide Antitrust Litig.*,
   149 F.R.D. 229 (M.D. Fla. 1993)................................................................................16

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 654 (S.D. Fla. 2011)..................................................................................8

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003)..................................................................13, 14, 15

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) ................................................................................14

*Faught v. Am. Home Shield Corp.*,
   661 F.3d 1040 (11th Cir. 2011) ...................................................................................7

*Fresco v. Auto Data Direct, Inc.*,
   No. 03-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007)................................... 7

*In re HealthSouth Corp. Sec. Litig.*,
   213 F.R.D. 447 (N.D. Ala. 2003)................................................................13, 14, 15

*Kennedy v. Tallant*,
   710 F.2d 711 (11th Cir. 1983) ...................................................................................16

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ....................................................................16

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) ..................................................................15

*Kreuzfeld A.G. v. Carnehammar*,
   138 F.R.D. 594 (S.D. Fla. 1991) .................................................................18

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) .............................................................. 6

*In re OCA, Inc. Sec. and Derivative Litig.*,
   No. 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) .................................... 7

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 9

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ......................................................... 9

*In re Physician Corp. of Am. Sec. Litig.*,
   No. 97-3678, 2003 WL 25820056 (S.D. Fla. May 21, 2003).........................14, 18

*Powers v. The Stuart-James Co.*,
   707 F. Supp. 499 (M.D. Fla. 1989) ..............................................................18

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
   297 F.R.D. 683 (S.D. Fla. 2014) ..................................................................8

*Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.*,
   No. 99-6181, 2002 WL 34343944 (S.D. Fla. May 3, 2002).................................11

*Sher v. Raytheon Co.*,
   261 F.R.D. 651 (M.D. Fla. 2009) *vacated*, 419 Fed. App'x. 887 (11th Cir.
   2011) ...............................................................................................15

*In re Smith*,
   926 F.2d 1027 (11th Cir. 1991) ...................................................................7

*Smith v. Wm. Wrigley Jr. Co.*,
   No. 09-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010).........................6, 7, 9

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005)................................................................14

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..........................................................18

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) .......................................................................6

*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988) *aff'd*, 893 F.2d 347 (11th Cir. 1989) .............................9

**Statutes**

15 U.S.C. §§ 78j(b) .......................................................................................4

15 U.S.C. §§ 77k 77l(a)(2) ...........................................................................4

15 U.S.C. §§ 77(o) .......................................................................................4

15 U.S.C. §§78t(a) .......................................................................................4

17 C.F.R. § 240.10b-5 ..................................................................................4

**Rules**

Fed. R. Civ. P.Rule 23(a) ........................................................................13, 17

Fed. R. Civ. P. Rule 23(a)(1) ..........................................................................13

Fed. R. Civ. P. Rule 23(a)(2) ....................................................................14, 15

Fed. R. Civ. P. Rule 23(a)(3) ..........................................................................15

Fed. R. Civ. P. Rule 23(a)(4) ..........................................................................16

Fed. R. Civ. P. Rule 23(b) .......................................................................13, 17

Fed. R. Civ. P. Rule 23(b)(3) ...................................................................13, 17

Fed. R. Civ. P. Rule 23(e) ..............................................................................6

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................17

**Other Authorities**

Dr. Renzo Comolli and Svetlana Starykh, *Recent Trends in Securities Class
   Action Litigation: 2014 Full-Year Review* (NERA, Jan. 20, 2015) ...........................9

Ellen M. Ryan & Lauren E. Simmons, *Securities Class Action Settlements: 2013
   Review and Analysis* (Cornerstone Research 2014).................................................10

*Manual for Complex Litigation* (4th ed. 2009) .................................................7

## PRELIMINARY STATEMENT

Lead Plaintiffs Arkansas Teacher Retirement System ("ATRS"), State-Boston Retirement System ("State-Boston"), Norfolk County Retirement System ("Norfolk"), and City of Brockton Retirement System ("Brockton") (collectively, "Lead Plaintiffs")[1] on behalf of themselves, Plaintiff The Horace F. Moyer and Joan M. Moyer Living Trust, Plaintiff City of Worcester Retirement System (collectively with Lead Plaintiffs, "Plaintiffs"), and the proposed Settlement Class, respectfully submit this memorandum of law in support of their motion for preliminary approval of a proposed Settlement with the remaining defendants in the Action.

Lead Plaintiffs respectfully request that this Court enter the proposed Preliminary Approval Order, annexed to the Stipulation and submitted separately herewith for the Court's convenience. The Preliminary Approval Order, among other things: (i) preliminarily approves the proposed Settlement; (ii) schedules a hearing (the "Settlement Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses; (iii) approves the forms and methods of disseminating pre-hearing notice to the Settlement Class, and directs that such notice be issued; (iv) appoints the Claims Administrator recommended by Lead Plaintiffs and Lead Counsel to administer the Settlement; (v) establishes procedures and a deadline for persons to request exclusion from the Settlement Class; (vi) establishes procedures and a deadline for objecting to the terms of the Settlement, Plan of Allocation, or requested attorneys' fees and expenses; and (vii) establishes

---

[1]   Capitalized terms not defined herein have the same meaning as that set forth in the Stipulation and Agreement of Settlement with Remaining Defendants, dated as of February 3, 2015 (the "Stipulation") and filed contemporaneously herewith as Exhibit 1 to the Declaration of James W. Johnson in Support of Lead Plaintiffs' Motion for Preliminary Approval of Settlement with Remaining Defendants, dated Feb. 18, 2015 ("Johnson Declaration"), filed herewith.  All references to "Ex. __" herein are exhibits to the Johnson Declaration.

procedures and a deadline for submitting Proofs of Claim for payments from the Net Settlement Fund.

Lead Plaintiffs and Lead Counsel have succeeded in obtaining a very favorable recovery for the Settlement Class of $7.9 million in cash.  The Settlement is in addition to a previously approved $10.5 million settlement with the former officer and director defendants in the Action (the "Colonial I Settlement").  The Settlement resolves *all* claims remaining in the Action, as set forth in the Stipulation.  Specifically, the Settlement would completely resolve all Released Claims against the Released Defendant Parties.  The Settlement represents a very favorable result for Lead Plaintiffs and the Settlement Class, who were facing a significant risk of no or a much smaller recovery after protracted litigation.

The Settlement was reached only after extensive litigation and negotiations – including a lengthy in-person mediation session with Robert A. Meyer, a well-respected and highly experienced mediator and partner at Loeb & Loeb in Los Angeles.  Indeed, by the time the Settlement was reached, Lead Counsel had conducted a thorough investigation of the claims, defenses, and underlying events and transactions that are the subject of the Action.  This investigation included, among other things: (i) review and analysis of documents filed publicly with the Securities & Exchange Commission ("SEC"); (ii) review and analysis of press releases issued by or concerning the Company; (iii) review and analysis of research reports issued by financial analysts concerning Colonial Securities; (iv) review and analysis of news articles and media reports concerning Colonial's operations; (v) review and analysis of investigative findings by the Federal Deposit Insurance Corporation ("FDIC"); (vi) review and analysis of investigative findings of the Public Company Accounting Oversight Board; (vii) Lead Counsel's internal investigation, which involved the identification of more than 700 potential witnesses and contacting approximately 80 witnesses;

(viii) review and analysis of the applicable law governing the claims and potential defenses; (ix) consultations with experts; and (x) review and analysis of pleadings and materials filed in other actions that name certain Defendants or former defendants in the Action, including the October 31, 2012 FDIC complaint against PwC, the Taylor, Bean & Whitaker Plan Trust complaint filed against PricewaterhouseCoopers LLP ("PwC"), and transcripts from the trial of Lee B. Farkas. In addition, Lead Plaintiffs, through Lead Counsel, had: (i) filed a comprehensive Consolidated Complaint (ECF No. 134); (2) overcome defendants' motions to dismiss (ECF Nos. 314-18); (3) vigorously opposed defendants' motion for reconsideration (ECF No. 391); (4) filed an extensive Amended Complaint (ECF No. 424); and (5) defended against a second round of motions to dismiss filed by the Underwriter Defendants and PwC (ECF Nos. 434-39).

As discussed herein, Lead Plaintiffs obtained this excellent result despite facing significant risks in prosecuting this Action. Moreover, Lead Plaintiffs, all sophisticated institutional investors of the type favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), have closely monitored this litigation from the outset, were involved in the negotiation process that led to the Settlement, and recommend that the Settlement be approved. Further, Lead Counsel, who have extensive experience prosecuting securities class actions, have concluded that the Settlement, by providing an immediate and significant benefit and by eliminating the risks of continued litigation, is clearly in the best interests of the Settlement Class.

By this motion, Lead Plaintiffs respectfully request that the Court preliminarily approve the Settlement. Lead Plaintiffs and Lead Counsel – based upon their evaluation of the facts and applicable law, and their recognition of the substantial risks and expense of continued litigation – submit that the Settlement is in the best interests of the Settlement Class and provides an excellent recovery for the Settlement Class.

At the Settlement Hearing, the Court will have before it more extensive motion papers submitted in support of the Settlement, and will then make an ultimate determination of whether the Settlement is fair, reasonable and adequate under all of the circumstances surrounding the action. At this juncture, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that Notice of the Settlement may be sent to the Settlement Class and the Settlement Hearing may be scheduled.

## I.        Description of the Litigation

Beginning in February of 2009, several putative securities class action complaints were filed against Colonial BancGroup, Inc. ("Colonial" or the "Company") and certain of Colonial's officers/directors in the United States District Court for the Middle District of Alabama, Northern Division (the "Court"). The actions were consolidated and on June 22, 2009, Lead Plaintiffs filed a Consolidated Complaint against Colonial, Defendants, Tolled Defendants, and others, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5 and violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77(o). ECF No. 134. The Exchange Act claims alleged violations of the anti-fraud provisions of the securities laws arising from alleged misstatements and omissions made in connection with Colonial's publicly-filed financials and other alleged misstatements made by Colonial's senior officers. The Securities Act claims arose from a subordinated note offering and a stock offering conducted by the Company in March and April of 2008, respectively.

In September and December 2009, Defendants and Tolled Defendants filed motions to dismiss the Consolidated Complaint. ECF Nos. 232, 234, 236, 273.

In November 2009, Lead Plaintiffs entered into a tolling agreement with the Tolled Defendants and pursuant to this agreement, 28 of the 39 underwriter defendants were dismissed from the Action without prejudice.  ECF No. 304-1.

On May 14, 2010, the Court issued orders denying the motions to dismiss the Consolidated Complaint.  ECF Nos. 314-18.  On May 28, 2010, Judge Myron H. Thompson recused himself and the Action was stayed pending reassignment and all defendants moved for reconsideration of the denial of the motions to dismiss.  ECF Nos. 363-65, 368-69.  Following a status conference before the Court on December 15, 2010, the Court deemed the motions to reconsider moot and instructed Lead Plaintiffs to file an amended complaint.  ECF No. 408.  The Amended Complaint, filed with the Court on April 29, 2011, alleged claims against PwC under Section 10(b) of the Exchange Act and Section 11 of the Securities Act and claims against the Underwriter Defendants under Sections 11 and 12(a) of the Securities Act.[2]  ECF No. 424.  The Class Period alleged was April 18, 2007 through and including August 6, 2009.  Lead Plaintiffs added two additional plaintiff entities in the Amended Complaint that allegedly purchased either on the Note Offering or the Stock Offering.

Following renewed motions to dismiss, which were fully submitted by October 28, 2011, on September 9, 2013, the Court issued a decision dismissing most of the Securities Act claims (except for the claims that relate to the mortgage warehouse lending division fraud at Colonial Bank).  ECF No. 520.  Six months later, on March 27, 2014, the Court issued a Memorandum Opinion dismissing the Exchange Act claims.  ECF No. 530.  The Court held that Lead Plaintiffs had failed to allege material misstatements, scienter, or loss causation.  Following the Court's March 2014 ruling on the final claim at issue (ECF No. 531), the Parties entered and the Court approved a scheduling order (ECF No. 535).

---

[2]   The claims against the other defendants named in the Amended Complaint were settled in the Colonial I Settlement.

## II.     Settlement Negotiations

In late June 2014, the Parties engaged Robert A. Meyer, a well-respected and highly experienced mediator, to assist them in exploring a possible resolution of the claims against Defendants and Tolled Defendants.   Following the exchange of comprehensive mediation submissions, the Parties met for an in-person mediation on September 10, 2014.  As a result of this mediation and continued arm's-length negotiations thereafter, the Parties reached a tentative agreement to settle the remaining claims in the Action for $7.9 million in cash.  A Memorandum of Understanding ("MOU") was entered on October 30, 2014.  The final terms of the Settlement were negotiated over the following three months and the Stipulation was executed as of February 3, 2015.

## ARGUMENT

## I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The public has a strong interest in resolving class action litigation.  The Eleventh Circuit has held that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits."  *In re U.S. Oil & Gas Litig.* 967 F.2d 489, 493 (11th Cir. 1992).[3]  Moreover, courts in this Circuit have found that this policy consideration applies specifically to class actions alleging securities fraud.  *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (holding "securities fraud class actions readily lend themselves to settlement").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims.  Judicial review of a proposed class action settlement consists of a "two-step process: preliminary approval and a subsequent fairness hearing."  *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  In the first step, the Court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the class.  *Id.*

---

[3]     Unless otherwise noted, internal citation and quotations are omitted, and emphasis is added.

"Preliminary approval is appropriate where the proposed settlement is the result of the parties

good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of

reason." *Id.*; *see also Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 WL 2330895, at *4

(S.D. Fla. May 14, 2007) ("[a] proposed settlement should be preliminarily approved if it is within

the range of possible approval or in other words, [if] there is probable cause to notify the class of the

proposed settlement").

At this preliminary approval stage, the standards are more relaxed than those applied upon a

motion for final approval.[4] *In re OCA, Inc. Sec. and  Derivative Litig.*, No. 05-2165, 2008 WL

4681369, at *11 (E.D. La. Oct. 17, 2008) ("As this motion is for *preliminary* approval of a class

action settlement, the standards are not as stringent as those applied to a motion for final approval.";

*see also Manual for Complex Litigation* §21.63 (4th ed. 2009) ("At the stage of preliminary

approval, the questions are simpler, and the court is not expected to, and probably should not, engage

in analysis as rigorous as is appropriate for final approval.").

The Parties here request only that the Court take the first step in the settlement approval

process and grant preliminary approval of the Settlement such that Notice of the Settlement can be

given to the Settlement Class.  The Settlement has no obvious deficiencies and is well within the

range of possible approval.

---

[4]    To finally approve the Settlement, the court "must find that it is fair, adequate and reasonable
and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982,
986 (11th Cir. 1984).  This inquiry is determined by consideration of: (1) the likelihood of success at
trial; (2) the range of possible recovery; (3) range of possible recovery at which a settlement is fair,
adequate and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the
opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.
*Id.*; *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011) (affirming
lower court's analysis under *Bennett*).  A district court's evaluation under the Bennett factors "will
be overturned only upon a clear showing of abuse of discretion."  *Id*.  In evaluating the settlement,
the court may rely on the judgment of experienced counsel in the case.  *See In re Smith*, 926 F.2d
1027, 1028 (11th Cir. 1991).

**A.    The Settlement is a Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See Canupp v. Liberty Behavioral Health Corp.*, 417 Fed. App'x. 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."). Accordingly, "a presumption of fairness" attaches to settlements negotiated at arm's length by informed and experienced class counsel.  *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011); *see also Saccoccio*, 297 F.R.D. at 692 ("There is a presumption of good faith in the negotiation process.").

Here, the Settlement was achieved only after protracted arm's-length negotiations, including an in-person mediation session conducted under the auspices of a highly respected and experienced mediator, Robert A. Meyer, Esq.,[5] and included the active participation of the Court-appointed Lead Plaintiffs.  *See In re Checking Account Overdraft Litig.*, 275 F.R.D. at 662 (approving settlement that was "the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").  The mediation occurred on September 10, 2014.  During the mediation, Lead Counsel and representatives of Defendants and Tolled Defendants presented, among other

---

[5]    Robert A. Meyer, Esq. is a partner at Loeb & Loeb in Los Angeles, California.  Mr. Meyer is a Fellow of the American College of Trial Lawyers and represents both plaintiffs and defendants in securities litigation, class actions and derivative suits, intellectual property litigation (including copyright, trademark and right of publicity lawsuits), attorneys' and accountants' professional liability lawsuits and claims involving breach of contract and commercial fraud.  Among his distinctions, Mr. Meyer was recognized as the "Los Angeles Litigation – Securities Lawyer of the Year" by Best Lawyers for 2014.

things, their respective views regarding the merits of the Action, including the evidence adduced, Defendants' defenses, and issues relating to damages. Ultimately, after the in-person mediation session, the Parties entered the MOU. The Parties and their counsel were thus well-informed prior to reaching the agreement to settle the case.

Moreover, in determining the good faith of this settlement proposal, the Court should consider the judgment of Lead Counsel. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (holding that "[a] district court properly considers the judgment of experienced counsel when asked to approve a class action settlement"); *Smith*, 2010 WL 2401149, at *2 n.1 (citing *Elkins v. Equitable Life Ins. of Iowa*, No. 96-296, 1998 WL 133741, at *28 (M.D. Fla. Jan. 27, 1998)); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988); *aff'd*, 893 F.2d 347 (11th Cir. 1989); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Here, Lead Counsel is among the nation's leading class action litigation firms. *See* Johnson Declaration Ex. 2. Accordingly, its judgment that this Settlement is in the best interests of the Settlement Class should be given considerable weight. Consequently, the Court has ample evidence that this Settlement was negotiated in good faith and was not the product of collusion.

**B.      The Proposed Settlement is Well Within the Range of Reasonableness**

The Settlement's $7.9 million cash recovery is well within the range of reasonableness and compares favorably against other securities class action settlements in recent years. A recent study by NERA Economic Consulting reports that, since the passage of the PSLRA, median settlement amounts in securities class actions have ranged from $3.7 million to $6.5 million. *See* Dr. Renzo Comolli and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review*, at 28 (NERA, Jan. 20, 2015) (Ex. 3). Additionally, a recent study by Cornerstone Research

reported that approximately 56% of post-PSLRA settlements have settled for under $10 million.  *See Ellen M. Ryan & Lauren E. Simmons, Securities Class Action Settlements: 2013 Review and Analysis*, at 5 (Cornerstone Research 2014) (Ex. 4).

Further, the recovery is very favorable in light of the risks posed by continued litigation.  As will be explained in further detail in advance of the Settlement Hearing, further litigation of this Action presented significant risks for Lead Plaintiffs.  For example, Lead Plaintiffs expected that Defendants would continue to argue a number of legal and factual defenses, including asserting that the prices of Colonial Securities were not artificially inflated as a result of the alleged misstatements and omissions, challenging the economic models that would determine the amount of artificial inflation in the prices of Colonial Securities, whether the alleged misstatements and omissions were indeed material, false, misleading or otherwise actionable under the federal securities laws, and, even if liability could be established, whether total damages would be greater than zero dollars.  Given the complexities of the issues involved, Lead Plaintiffs' entitlement to recovery is uncertain.  In contrast, the proposed Settlement achieves the certainty of a substantial distribution to Settlement Class Members and warrants preliminary approval.

## II.    THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE

As outlined in the agreed-upon proposed Preliminary Approval Order, which was negotiated by the Parties, Lead Counsel will notify Settlement Class Members of the Settlement by mailing the Notice and Proof of Claim form to all Settlement Class Members who can be identified[6] no later than

---

[6]    *See* Exhibits 1 and 2 to the Preliminary Approval Order.  Notice will be provided to Settlement Class Members by using information provided in connection with the Colonial I Settlement.  The Claims Administrator will also use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons or entities that purchased Colonial Securities as record owners by, *inter alia*, using information provided in connection with the Colonial I Settlement and asking such nominees to update the information they provided.  Importantly, if a Settlement Class Member

ten (10) business days after entry of the Preliminary Approval Order.

The Notice advises Settlement Class Members of the essential terms of the Settlement, of information regarding Lead Counsel's Fee and Expense Application, and of the proposed Plan of Allocation for distributing the Settlement proceeds among Settlement Class Members.  It also sets forth the procedure for objecting to the Settlement, the Plan of Allocation, or the Fee and Expense Application, or opting out of the Settlement Class, and provides specifics on the date, time, and place of the Settlement Hearing.  The proposed Preliminary Approval Order further requires Lead Counsel to cause the Summary Notice (Ex. A-3 to the Preliminary Approval Order) to be published in *Investor's Business Daily* and transmitted over PR Newswire.  Lead Counsel believes that, because the Notice and Summary Notice fairly apprise Settlement Class Members of their rights with respect to the Settlement, they represent the best notice practicable under the circumstances and should be approved by the Court.  *See Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.*, No. 99-6181, 2002 WL 34343944, at *2 (S.D. Fla. May 3, 2002) (approving similar notice program).

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, for opting out of the Settlement Class, or for objecting to the Settlement.  If the Court grants preliminary approval of the Settlement, Lead Plaintiffs respectfully propose the following schedule for the settlement approval process:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Settlement Class Members | 10 business days after entry of the Preliminary Approval Order ("Notice Date") |
| Deadline for publishing Summary Notice | 14 calendar days following the Notice |

submitted a Proof of Claim in connection with the Colonial I Settlement by February 28, 2014, that claim and transactional information will be used to determine eligibility for payment under this Settlement.  Thus, a Settlement Class Member who submitted a claim by February 28, 2014 in connection with the Colonial I Settlement need not resubmit a Proof of Claim again.

|  | Date |
|---|---|
| Deadline for filing with the Court briefs in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's Fee and Expense Application | 35 calendar days before the Settlement Hearing |
| Deadline for requests for exclusions and objections | 21 calendar days before the Settlement Hearing |
| Deadline for filing of reply memorandum in response to any objections | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At the Court's convenience but no earlier than 80 days following the Notice Date |
| Deadline for submitting Proofs of Claim | 120 calendar days after the Notice Dates for those Settlement Class Members who did **not** previously submit a claim in connection with the Colonial I Settlement by February 28, 2014 |

## III.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

For purposes of the Settlement, the Parties have stipulated that the Court may certify this Action as a class action on behalf of the Settlement Class, certify Plaintiffs as the Class Representatives for the Settlement Class, and appoint Lead Counsel as Class Counsel for the Settlement Class.  *See* Stipulation ¶ 3.

This Court may choose to certify a class "solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (quoting *Woodward v. Nor-Am Chem. Co.*, No. 94-0780, 1996 WL 1063670, at *14 (S.D. Ala. May 23, 1996)).  In making this determination, the Court "need not inquire whether the case, if tried, would present intractable management problems, under Rule 23(b)(3)," because "a settlement class action obviates a trial." *Borcea*, 238 F.R.D. at 671-672 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Rather, the Court need only find that the class meets the four prerequisites set forth in Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and that the class meets one of the three requirements

in Rule 23(b).  *See Borcea*, 238 F.R.D. at 672.  The Parties agree that, for purposes of the Settlement, the Settlement Class should be certified as satisfying each of the requirements set forth in Rule 23.

### A.        The Requirements of Rule 23(a) are Satisfied

#### 1.        The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  For purposes of Rule 23(a)(1), however, "[i]mpracticable does not mean impossible; plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class."  *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 457 (N.D. Ala. 2003).  Indeed, "[c]ourts generally presume that plaintiffs establish numerosity when the claims involved securities traded nationally."  *Id*.  In order to satisfy Rule 23(a)(1), "[p]laintiffs must show some evidence of or reasonably estimate the number of class members."  *Barlow v. Marion Cnty. Hosp. Dist.*, 88 F.R.D. 619, 625 (M.D. Fla. 1980).  It is not necessary that the precise number of class members be known. *See id*. at 625.

Here, Colonial issued $250 million worth of Subordinated Notes due in 2038 in connection with the Note Offering.  Amended Complaint ¶ 912.  The notes were traded as debt securities on the New York Stock Exchange ("NYSE"), with a daily average over the Class Period of 74,250.  *Id*. ¶ 916.  Moreover, more than 152 million shares of common stock were outstanding during the Class Period.  *Id*. ¶ 831.  Beneficial holders of Colonial Securities are believed to number in the thousands and are geographically located throughout the United States, thus making joinder impracticable.  *Id*. Colonial's securities were listed and actively traded on the NYSE, an open and efficient market. Thus, the numerosity element is satisfied.[7]

---

[7]     *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (finding numerosity prong satisfied without a precise or estimated number of class members in a securities class action where there are thousands of record holders of a common stock and millions of outstanding shares); *HealthSouth*, 213 F.R.D. at 457.

## 2.    There are Common Questions of Law and Fact

The commonality requirement is satisfied where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts in the Eleventh Circuit have held that "[c]ommonality is not a high threshold to meet." *In re Physician Corp. of Am Sec. Litig.*, No. 97-3678, 2003 WL 25820056, at *4 (S.D. Fla. May 21, 2003). Commonality does not mean that all class members must make identical claims and arguments. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986). Rather, "[c]ommonality may be established where there are allegations of common conduct or standardized conduct by the defendant directed toward members of the proposed class." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 695 (M.D. Fla. 2005). "If there is at least one issue affecting all or a significant number of proposed class members, then the requirement of commonality is met." *Physician Corp.*, 2003 WL 25820056, at *4.

Here, the remaining Securities Act claims contain numerous questions of law and fact common to all Settlement Class Members. In similar cases alleging a common scheme that impacts investors, courts in the Eleventh Circuit have concluded that the commonality requirement of Rule 23(a)(2) is readily satisfied. *See Avery v. Uniroyal Tech. Corp.*, No. 02-2238, 2005 WL 1205607, at *3 (M.D. Fla. May 20, 2005); *see also Cheney*, 213 F.R.D. at 490 ("[w]here a common scheme is alleged, common questions of law or fact will exist").

The questions common to the Settlement Class include whether: (a) the federal securities laws were violated by Defendants' alleged acts; (b) Colonial's publicly disseminated statements during the Class Period omitted and/or misrepresented material facts; (c) Defendants breached any duty to disclose material facts or to correct material facts previously disseminated; (d) Colonial Securities' prices during the Class Period were artificially inflated due to the alleged material omissions and/or misrepresentations; and (e) the members of the Settlement Class have sustained damages and, if so, what is the appropriate measure of damages.

Because the core contention of all Settlement Class Members is that they purchased and/or acquired Colonial Securities at inflated prices, and suffered damages as a result of the alleged securities violations, the commonality requirement of Rule 23(a)(2) is satisfied. *See Cheney*, 213 F.R.D. at 491 ("the commonality requirement of 23(a)(2) is met here because there are a substantial number of questions of fact and law noted above that are common to the class").

### B.    The Proposed Class Representatives Claims are Typical

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Sher v. Raytheon Co.*, 261 F.R.D. 651, 664 (M.D. Fla. 2009) *vacated*, 419 Fed. App'x. 887 (11th Cir. 2011). "Typicality may be presumed when the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members.'" *Id*.; *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (finding that typicality is established "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory"). The named representatives and the class members need not be identically situated. *See HealthSouth*, 213 F.R.D. at 460. "The important inquiry is whether the proposed class representative's claims have the same essential characteristics as those of the proposed class." *Id*. at 458.

Here, Plaintiffs' claims are identical to those of other members of the Settlement Class. They, like all members of the Settlement Class, purchased Colonial Securities at artificially inflated prices during the Settlement Class Period and suffered damages because of Defendants' alleged material misstatements and omissions. Accordingly, the legal theories and evidence Plaintiffs will advance to prove their claims will simultaneously advance the claims of all Settlement Class Members. Since Plaintiffs seek to prove that Defendants "committed the same unlawful acts in the

- 15 -

same method against an entire class . . . all members of this class have identical claims," the typicality requirement is satisfied. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

### C.     The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4), the adequacy of representation requirement, involves "two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008). The Rule 23(a)(4) requirement is met where, as here: (1) the proposed representatives have interests in common with, and not antagonistic to, the interests of the class; and (2) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).

Here, Plaintiffs' interests are coextensive with those of other Settlement Class Members and, like all members of the Settlement Class, possess claims under the federal securities laws against Defendants in connection with their purchase or acquisition of Colonial Securities during the Class Period. Plaintiffs, like all Settlement Class Members, were also injured by Defendants' alleged wrongful acts, including Defendants' alleged misrepresentations in connection with the sale of Colonial Securities. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages caused by Defendants' alleged wrongful conduct. *See In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 233 (M.D. Fla. 1993) (certifying class where there was no indication that "the interests of the representative parties differ in any way from the other class members").

Plaintiffs also respectfully submit that they have retained counsel who is qualified, experienced and fully capable of prosecuting this litigation on behalf of the Settlement Class.

- 16 -

Labaton Sucharow has a proven track record in the prosecution of complex class actions, both in this judicial district and nationwide, and through their efforts in this litigation have obtained a settlement of $7.9 million for the benefit of the Settlement Class, in addition to the Colonial I Settlement of $10.5 million.  Plaintiffs, therefore, satisfy the Rule 23(a) adequacy requirements.[8]

### D.    The Proposed Settlement Class Satisfies Rule 23(b)(3)

### 1.    Common Questions of Law and Fact Predominate

In addition to the four requirements of Rule 23(a) addressed above, a class must also satisfy one of the three subparts of Rule 23(b).  Here, Plaintiffs have demonstrated that questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members and a class action is superior to other available methods.  *See* Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc.* 521 U.S. at 623.  The Supreme Court expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Id*. at 625.

In order to satisfy the predominance requirement, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1324.  Here, the common questions of law and fact described above predominate over any individual questions.  The same set of operative facts applies to each Settlement Class Member (*i.e.*, each Settlement Class Member purchased and/or acquired Colonial Securities during the Settlement Class Period at prices alleged to be artificially inflated as a result of Defendants' alleged false and misleading statements and/or omissions) and each Settlement

---

[8]    Lead Plaintiffs also respectfully request that the Court-appointed Lead Counsel, Labaton Sucharow, be appointed Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1)(A).

Class Member was allegedly harmed when the undisclosed facts came to light.[9]  Accordingly, the "predominance" requirement is satisfied.

**2.**      **A Class Action Is the Superior Method for Resolution**

With respect to the superiority of a class action to other methods, "[s]ecurities [] actions are considered especially appropriate for class action treatment because they often involve a large number of Plaintiffs with relatively small claims."  *Kreuzfeld*, 138 F.R.D. at 603 (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).  In light of the number of potential claimants against Defendants and the size of their claims, class action treatment is particularly suitable here.

Further, certification of the Settlement Class for the purpose of effecting the Settlement is the superior method to facilitate the resolution of the Settlement Class's claims against Defendants. Without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement.  Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 584 (S.D.N.Y. 2008).  Resolution of the Settlement Class's claims against Defendants through the Settlement is superior to any other available method of resolution.  For all of the foregoing reasons, the Settlement Class meets the class certification requirements of both 23(a) and 23(b).

---

[9]   *See Physician Corp.*, 2003 WL 25820056, at *9 ("[E]ven if class members purchase stock based upon different misrepresentations within the relevant class period, so long as the misrepresentations were part of one continuous scheme to defraud, typicality is not eliminated."); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 603 (S.D. Fla. 1991) (finding in an action alleging Rule 10b-5 violations that common questions of law and fact, including issues of reliance and intent, predominate over any individual questions); *Powers v. The Stuart-James Co.*, 707 F. Supp. 499, 504 (M.D. Fla. 1989) (finding predominance because "[t]he core of this case is the alleged scheme carried on by Defendants to manipulate the value of securities in various companies resulting in the artificial inflation of market value").

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, certify the proposed Settlement Class for settlement purposes, and enter the accompanying proposed Preliminary Approval Order.

DATED:  February 18, 2015                    LABATON SUCHAROW LLP

                                             */s/ James W. Johnson*
                                             JAMES W. JOHNSON

                                             THOMAS A. DUBBS
                                             JAMES W. JOHNSON
                                             NICOLE M. ZEISS
                                             140 Broadway
                                             New York, NY  10005
                                             Telephone:  212/907-0700
                                             212/818-0477 (fax)
                                             tdubbs@labaton.com
                                             jjohnson@labaton.com
                                             nzeiss@labaton.com

                                             *Attorneys for Lead Plaintiff*

                                             MEANS, GILLIS LAW, LLC
                                             TYRONE C. MEANS (MEA003)
                                             H. LEWIS GILLIS (GIL011)
                                             3121 Zelda Court
                                             Montgomery, AL  36106
                                             Telephone:  334/270-1033
                                             334/260-9396 (fax)

                                             *Liaison Counsel*

                                             CHIMICLES & TIKELLIS LLP
                                             STEVEN A. SCHWARTZ
                                             TIMOTHY N. MATHEWS
                                             One Haverford Centre
                                             361 W. Lancaster Avenue
                                             Haverford, PA  19041
                                             Telephone:  610/642-8500
                                             610/649-3633 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
PAUL J. GELLER
JACK REISE
DOUGLAS S. WILENS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
jreise@rgrdlaw.com
dwilens@rgrdlaw.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2015, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record who are registered on the CM/ECF system.


*/s/ James W. Johnson*
_____
JAMES W. JOHNSON
